**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

_____

THE UNITED STATES OF AMERICA,    )
                                      )

        Plaintiff,                 )

                                        )

        v.                          )

                                        )  Civil Action No: 3:16cv622CWR-FKB

THE STATE OF MISSISSIPPI,        )

                                        )

        Defendant.              )

_____)


## UNITED STATES' MEMORANDUM OF LAW IN SUPPORT OF ITS RESPONSE IN OPPOSITION TO MOTION FOR CONSOLIDATION

Mississippi's mental health system has failed both adults and children and has resulted in unnecessary and widespread placement of adults and children in institutional settings where they are isolated from their families and communities in violation of Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12131 *et. seq.* But the two lawsuits seeking to remedy these civil rights violations – one for adults and one for children – are and should remain, distinct. The facts that give rise to these violations are distinct and the cases involve different plaintiffs and legal issues. Consolidation would unduly prejudice the United States by delaying the proceedings in *United States v. Mississippi* and would not reduce costs and judicial resources. Accordingly, the State of Mississippi's Motion to Consolidate *United States v. Mississippi*, 3:16cv622-CWR-FKB, with *Troupe v. Barbour*, 3:10cv153HTW-MTP, should be denied.

*United States v. Mississippi* involves thousands of adults with mental illness in Mississippi who lack access to adequate mental health services in their communities.  Because community services are insufficient, adults with mental illness often find themselves placed in the state-run psychiatric hospitals ("State Hospitals") for months, and in some cases, years.  Before entering the State Hospitals, they may wait for days, weeks, or months in county jails and local hospitals.  Or, they struggle on the streets and in homeless shelters, often seeking temporary relief in local hospital emergency rooms and acute in-patient units.  If they manage to connect with a community mental health provider, services are often inadequate and in short supply.

Six years ago, four children filed a putative class action, *Troupe v. Barbour*, to vindicate their rights under the Medicaid Act to obtain medically necessary mental health services and under the ADA and the Rehabilitation Act of 1973 to avoid unnecessary institutional placement in mostly privately owned residential treatment facilities, group homes, foster care shelters, and youth detention facilities.  Ex. 1, *Troupe* Compl. ¶¶ 3, 43-70.  Mississippi's inadequate provision of legally required home- and school-based services for children has left families with no alternative but to place children in segregated facilities outside of their family homes.  The United States has filed two statements of interest in the case to clarify existing federal law, but is *not* a party to *Troupe*.  *See* Statement of Interest of the United States (Dkt. #41), No. 3:10cv153 (filed April 8, 2011) and Statement of Interest of the United States (Dkt. #57), No. 3:10cv153 (filed Sept. 6, 2013).   The *Troupe* plaintiffs are not parties to the lawsuit filed by the United States, nor could they be because they are children.

**BACKGROUND**

**I.     TITLE II OF THE ADA PROHIBITS UNNECESSARY
         INSTITUTIONALIZATION OF INDIVIDUALS WITH DISABILITIES**

Congress enacted the ADA in 1990 "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1). Congress found that, "historically, society has tended to isolate and segregate individuals with disabilities" and that "individuals with disabilities continually encounter various forms of discrimination, including . . . segregation." 42 U.S.C. §§ 12101(a)(2) and (5). Congress determined that "the Nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, *independent living*, and economic self-sufficiency for such individuals." 42 U.S.C. § 12101(a)(7) (emphasis added). Title II of the ADA prohibits disability discrimination in public services: "[N]o qualified individual with a disability shall, by reason of such disability . . . be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Congress directed the Attorney General to promulgate regulations to implement Title II. 42 U.S.C. § 12134.

Pursuant to this authority, the Attorney General issued the integration regulation: "A public entity shall administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities." 28 C.F.R. § 35.130(d). The most integrated setting is "a setting that enables individuals with disabilities to interact with nondisabled persons to the fullest extent possible." 28 C.F.R. pt. 35, app. B at 690 (2015). The Attorney General also required that a public entity "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7).

3

In *Olmstead*, the Supreme Court held that, under the ADA and its regulations, "unjustified institutional isolation of persons with disabilities is a form of discrimination." *Olmstead v. L.C.*, 527 U.S. 581, 600 (1999). The Court reasoned that "institutional placement of persons who can handle and benefit from community settings perpetuates unwarranted assumptions that persons so isolated are incapable or unworthy of participating in community life." *Id.* The Court also reasoned that "confinement in an institution severely diminishes the everyday life activities of individuals, including family relations, social contacts, work options, economic independence, educational advancement, and cultural enrichment." *Id.* at 601. The Court held that public entities are required to provide community-based services to persons with disabilities when (a) such services are appropriate; (b) the affected persons do not oppose community-based treatment; and (c) community-based services can be reasonably accommodated, taking into account the resources available to the entity and the needs of others who are receiving disability services from the entity. *Id.* at 607.

## LEGAL STANDARD

Random case assignment is the default. *See* District Court for the Southern District of Mississippi, Internal Rule 1, *Assignment of Cases and Magistrates* (September 1, 2015). However, when separately filed actions "involve a common question of law or fact," a court "may" do one of three things: (1) join for hearing or trial any or all matters at issue in the actions; (2) "consolidate" the actions; or (3) issue any other orders to avoid unnecessary cost or delay. FED. R. CIV. P. 42(a)(1)-(3); *see also Mills v. Beech Aircraft Corp., Inc.* 886 F.2d 758, 761-62 (5th Cir. 1989) ("A trial court has broad discretion in determining whether to consolidate a case pending before it."). "The party seeking consolidation bears the burden of establishing

that judicial economy outweighs the risk of delay or potential prejudice to the opposing party." *Varnado v. Leblanc*, 3:13-00348-JWD-EWD, 2016 WL 320146, at \*2 (M.D. La. Jan. 24, 2016).

Consideration of consolidation is a two-step process. *See The Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 605 (5th Cir. 1999) (quoting *Mann Mfg., Inc. v. Hortex Inc.*, 439 F.2d 403, 408 (5th Cir. 1971)). The judge in the second-filed action (here, *United States v. Mississippi*) first determines whether there is a "likelihood of substantial overlap between the two suits." *Id.* In making the substantial overlap determination, the court must consider "the extent of overlap, the likelihood of conflict, the comparative advantage and the interest of each forum in resolving the dispute." *Int'l Fid. Ins. Co. v. Sweet Little Mex. Corp.*, 665 F.3d 671, 678 (5th Cir. 2011) (quotations omitted). Other relevant factors include "(1) whether the actions are pending before the same court, (2) whether common parties are involved in the cases, (3) whether there are common questions of law and/or fact." *Crest Audio Inc. v. QSC Audio Prods.,* 2016 WL 3249217 at \*2 (citation omitted). The underlying rationale is to avoid duplication, rulings that "may trench upon the authority of sister courts," and "piecemeal resolution of issues that call for a uniform result." *W. Gulf Mar. Ass'n v. ILA Deep Sea Local 24*, 751 F.2d 721, 728-29 (5th Cir. 1985). If substantial overlap does not exist, the second action remains under the jurisdiction of the court in which it was filed. *Int'l Fid. Ins. Co.*, 665 F.3d at 678 (retention proper when "core issues" not the same).

It is only when the second court determines a likelihood of substantial overlap exists that the first-filed court determines whether consolidation is warranted. To make that determination, the court in the first-filed case balances judicial economy, the costs of separate litigation, and the risk of prejudice, confusion, or unfair advantage. *Cadle Co.*, 174 F.3d at 605 ("balancing act is reserved only for the first-filed court"); *see also Crest Audio Inc.,* 2016 WL 3249217 at \*2.

Critical to this analysis is whether consolidation "would prevent delay or the expenditure of unnecessary costs." *Jones v. Singing River Health Servs. Found.*, 1:14-cv-447-LG-RHW, 2015 WL 12672726 at *3 (S.D. Miss., June 5, 2015) (quoting *Miller v. U.S. Postal Serv.*, 729 F.2d 1033, 1036 n.6 (5th Cir. 1984)).

## ARGUMENT

The two cases at issue do not substantially overlap because the cases arise from different facts, have different plaintiffs, and present different legal issues. To the extent that the court in *Troupe v. Barbour* considers consolidation, it also is not warranted because it will not expedite resolution of the matter, result in substantial judicial economy, or reduce expenditures. Instead, it will prejudice the United States by delaying a decision in the United States' case and complicating the issues for the courts and parties.

I. **THE CASES DO NOT SUBSTANTIALLY OVERLAP BECAUSE THEY INVOLVE DIFFERENT FACTS, PARTIES, AND LEGAL ISSUES**

A. **The Cases Do Not Involve Common Issues of Fact Because the Population at Issue and the Facilities and Community-Based Services Relevant to Each Lawsuit are Different**

These two cases are factually distinct and will require separate discovery, dispositive motions, factual findings, trial, and remedies. The United States' case concerns adults who are institutionalized in four State Hospitals, Ex. 2, Compl. ¶ 1, whereas *Troupe* relates to children in mostly private psychiatric residential treatment facilities, youth detention facilities, group homes, foster care shelters, and psychiatric hospitals. Ex. 1, *Troupe* Compl. ¶¶ 43-62.

The community-based mental health services for adults and children that would serve as the remedy for these cases are different. In the instant case, the remedies would include expansion of adult mental health services such as Assertive Community Treatment, permanent supported housing, and adult clinical services. These are evidence-based services tailored to the

needs of adults with mental illness.  Ex. 3, Mississippi Department of Mental Health, *Think Recovery* 1, 6-7 (2015).  Remedies for children with disabilities, however, include therapeutic foster care, family education and training, behavioral support services, and child and family teams.  Ex. 1, *Troupe* Compl. ¶ 36.

Mississippi also has identified the distinct needs of children and adults in its public mental health system and how improvements in its mental health system should address those needs.  Ex. 4, Mississippi Department of Mental Health, *FY 2016-2017 State Plan*.  For children, Mississippi recognizes the need to ensure "equity and quality of services" through "county health offices, teachers, foster care workers, and juvenile justice workers;" and the lack of sufficient workforce, "particularly psychiatric/medical staff at the local community level, specializing in children's services."  *Id.* at 20.  For adults, Mississippi identifies the need to develop supported employment; supported housing; crisis response teams; and to improve transitions from institutions to home-based settings.  *Id.* at 23.  For purposes of litigation, Mississippi cannot now deny what its mental health system already recognizes:  the need for pediatric services versus adult services.

The information that is likely to be sought in discovery and presented in each case is also distinct, with different custodians, search parameters, deponents, and requests for production.  Also, few experts or witnesses could effectively testify in both cases because of the significant differences in the relevant institutions and services for each population.  In this case, witnesses may include adults with mental illness and their families, adult service providers, the Director of the Division of Adult Services at the Department of Mental Health, State Hospital staff, and experts in providing and administering services for adults with mental illness.  *Troupe* witnesses may include children with mental illness and their families, children's service providers,

children's institutional staff, the Director of the Division of Children & Youth Services at the Department of Mental Health, officials and staff from the State's foster care and juvenile justice systems, and experts in providing and administering services for children with mental illness. That a few state agency employees, such as the Mental Health Director and the Medicaid Director, who oversee both service systems may be called in both cases to testify about issues related to each respective system does not justify transfer or consolidation, particularly when it is unlikely to reduce the overall testimony time for trials likely to last over a month.

As a result of the significant differences in the systems that serve adults and children with mental health conditions, no substantial factual overlap exists, and transfer and consolidation is not warranted.

### B. The Cases Do Not Involve the Same Parties Because the Plaintiffs are Different

The United States alone filed *United States v. Mississippi*, and *Troupe* plaintiffs have no involvement in the United States' case. The United States is not a plaintiff in *Troupe*. The United States has filed two statements of interest in *Troupe* to clarify existing federal law, like it has in over 30 cases related to *Olmstead*, but that does not transform the United States into a plaintiff or justify consolidating an independent case brought by the United States on different facts. As a non-plaintiff, the United States will not be propounding or responding to discovery, taking depositions, or filing motions in *Troupe*.[1] The Attorney General of the United States authorized litigation in *United States v. Mississippi*; a children's mental health complaint is not currently authorized.

---

[1] The Defendant's speculation regarding the United States' involvement in *Troupe* has no bearing on the present Motion. *Cf.* Def.'s Br. Consol. 6, ECF 9. In the unlikely event that the United States amends its complaint "to add children," as Defendant speculates, consolidation could be revisited at that time. Courts may invoke Rule 42(a) *sua sponte*. *See Miller*, 729 F.2d at 1036 (5th Cir. 1984).

**C. The Legal Claims and Issues are Substantially Different Because *Troupe* Involves a Claim Available Only to Children and the Legal Issues Posed by the ADA Claim Are Different**

The legal issues presented in these cases are different because they arise from a different set of facts. Simply because both cases have an ADA cause of action does not result in overlap because the facts and legal issues that arise from those facts are not the same. *See, e.g.*, *Varnado*, 2016 WL 320146, at *3 ("[C]onsolidation is not warranted merely because two separate plaintiffs allege distinct claims under the same general theory of law or statute.") (citation omitted); *Comeaux v. Mackwani*, 124 Fed. App'x 909, 911 (5th Cir. 2005) (finding no common question of fact or law under Federal Rule of Civil Procedure 42(a) merely because the plaintiff alleged Eighth Amendment violations in two otherwise unrelated civil rights claims). Indeed, whether children with mental health conditions who are in psychiatric residential treatment facilities are appropriate for community-based care and whether they oppose such care has no bearing on whether adults in the State Hospitals are appropriate for community-based care and do not object to such care.

Mississippi fails to establish that beyond both having Title II integration claims, these cases overlap in the facts or legal issues that arise under the Title II claim. Under Mississippi's logic, all slip and fall cases against a large grocery store chain would need to be consolidated because they involve a similar legal theory, even if the claims are brought by different plaintiffs, whose injuries occurred at different stores, and who seek separate remedies. "The ultimate inquiry is not whether the same substantive law applies, but whether the separate actions require determinations of common questions of law or fact." *Johnson v. Des Moines Metro. Wastewater Reclamation Auth.*, 814 N.W.2d 240, 247(Sup. Ct. Iowa 2012). Here, no such determinations are before the Court because the claims arise under a different set of facts, involve different persons and raise different legal issues.

It is not unusual for *Olmstead* cases to proceed simultaneously before different judges because they are factually and legally distinct even if they involve the same defendant. For instance, there are four existing *Olmstead* cases in the Northern District of Illinois in front of four different judges. *Compare Colbert v. Rauner*, 07-CV-4737 (N.D. Ill. August 22, 2007) (case before Judge Valdez related to adults with disabilities in nursing facilities) *with Ligas v. Maram*, 05-CV-04331 (N.D. Ill. 2005) (case before Judge Holderman related to individuals with intellectual and developmental disabilities) *with Williams v. Quinn*, 05-CV-4673 (N.D. Ill. 2005) (case before Judge Hart related to adults with mental illness) *with Hampe v. Hamos*, 10-CV-3121 (N.D. Ill. 2010) (case before Judge Hibler related to medically fragile children with disabilities). These cases were all brought under Title II of the ADA and *Olmstead* but, like here, are focused on different populations and/or facilities.

Moreover, this case and *Troupe v. Barbour* together involve five different statutes. The *Troupe* case involves Medicaid claims under the EPSDT mandate that are only available to children and, indeed, the litigation on that case since 2010 has been largely focused on the resolution of that claim. The *Troupe* case will involve questions of whether the services requested are "medically necessary." *See* 42 U.S.C. § 1396. These issues are not before the court in the United States' case because the United States did not bring a claim under the Medicaid Act.

The cases should not be consolidated simply because they share a single underlying statutory claim arising from entirely different facts.

### D. There Is No Risk of Inconsistent Results if the Cases Are Not Consolidated

Mississippi argues that "[t]here is a risk . . . of inconsistent results" because "one court may find in the State's favor, [and] another may find otherwise," Def.'s Br. Consol. 7, ECF 9,

but that different cases might have different outcomes is fundamental to the rule of law.  If, in the event Mississippi were successful in one case, and not the other, it would be of no consequence.  Simply put, Mississippi could be unnecessarily institutionalizing adults but not unnecessarily institutionalizing children, thus requiring remedies for adults and not children.

Further, the framework for a Title II *Olmstead* claim is settled, so the decisions in these cases are unlikely to establish conflicting precedent.  *Cf. Entergy Miss. v. Marquette Transp. Co., LLC*, 2013 WL 3778436, at *2 (S.D. Miss. July 17, 2013) (consolidating cases for "the proper adjudication of the *jurisdictional question*" (emphasis added)).  Rather, the outcome of each of the two cases will be driven by the *facts* and application of the law to those facts, which are distinct as to children and adults in Mississippi.

## II.     IF SUBSTANTIAL OVERLAP IS FOUND, CONSOLIDATION IS NOT WARRANTED

### A.  Consolidation Would Not Conserve Judicial Resources or Save Costs

Consolidation would result in no savings, whether in time or money.  It will not "eliminate duplicate motions on the same issues" or "multiple hearings and trials" because the facts and legal issues in each case are different.  *Cf. Washington v. Univ. of Miss. Med. Ctr.*, No. 3:11cv484-TSL-MTP, 2011 WL 5117129, at *1 (S.D. Miss. Oct. 25, 2011).  In fact, over the past six years the *Troupe* litigation has been largely focused on the resolution of the children's Medicaid claim—which is not at issue here.

Although a few witnesses may be called to testify in both cases, even if consolidated, the witnesses would not be spared from repeat duty.  They will need to testify separately in order to address issues specific to children and adults.

### B. Consolidation Will Prejudice The United States by Causing Unnecessary Delay and Complexity

Consolidation will lead to delay and unnecessary complexity. First, the procedural posture of each case is not aligned. Consolidating this case with *Troupe* will prejudice the United States by potentially delaying this case in the interests of resolving the current pending motions in *Troupe* and the *Troupe* plaintiffs' class certification process. This case is ready to move forward with discovery. In anticipation of the scheduled case management conference on December 8, 2016, the parties have multiple dates to meet and confer scheduled—beginning on November 8, 2016—to discuss case management issues and a draft protective order and Rule 26(f) stipulation. On the other hand, *Troupe* was filed on March 10, 2010, and has been stayed since May 27, 2010 pending a motion to dismiss. There is no scheduling order and discovery has not started. Even after the pending motions are resolved, the sometimes lengthy class certification process would only begin, putting discovery on the merits well beyond the current opening of discovery in the United States' case. Any delay of the United States' case would be prejudicial, particularly when considering the gravity and scope of the civil rights violations at issue.

Second, consolidating these cases will add confusion and complexity both for the parties and the Court. Both cases will involve dozens of witnesses, hundreds of exhibits, and substantial discovery, that is not overlapping. The testimony in the cases would involve few, if any, overlapping issues, and requiring witnesses and experts to testify in a joint deposition or trial would only add confusion and complexity for both the parties and the court.

To combine these two distinct cases into a single case will be unduly burdensome and will risk unnecessary confusion of the issues.

# CONCLUSION

For the reasons stated above, Mississippi's Motion for Consolidation should be denied.

Respectfully submitted,

**FOR THE UNITED STATES PLAINTIFF:**

GREGORY K. DAVIS
United States Attorney
Southern District of Mississippi

VANITA GUPTA
Principal Deputy Assistant Attorney General
Civil Rights Division

MITZI DEASE PAIGE
Assistant United States Attorney

EVE L. HILL
Deputy Assistant Attorney General
Civil Rights Division

STEVEN H. ROSENBAUM
Chief
Special Litigation Section

REGAN RUSH
Deputy Chief
Special Litigation Section

Date: Nov. 7, 2016

*/s/ Elizabeth C. Kelley*
ELIZABETH C. KELLEY [VA Bar #80255]
C. ADRIENNE MALLINSON
DEENA FOX
Trial Attorneys
Special Litigation Section
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Avenue, N.W. - PHB
Washington, DC 20530
Telephone: (202) 514-0460
Beth.Kelley@usdoj.gov

## CERTIFICATE OF SERVICE

I, Elizabeth C. Kelley, Attorney for the United States, hereby certify that I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to all parties.

**THIS** 7th day of November, 2016.

/s/ *Elizabeth C. Kelley*
Elizabeth C. Kelley (VA Bar #80255)