IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

THE UNITED STATES OF AMERICA　　　　　　　　　　　　　　　　　PLAINTIFF

VS.　　　　　　　　　　　　　　CIVIL ACTION NO.: 3:16CV622-CWR-FKB

THE STATE OF MISSISSIPPI　　　　　　　　　　　　　　　　　　　　DEFENDANT

**REBUTTAL MEMORANDUM IN SUPPORT
OF MOTION FOR CONSOLIDATION**

## Introduction

The standard for consolidation under FRCP Rule 42(a) is simply that two or more actions involve a common question of law or fact, and that consolidation will avoid unnecessary costs or delay. This standard is easily satisfied here for at least three reasons.

First, the United States cites the first-to-file rule as the procedural rule governing consolidation, but that rule has nothing to do with consolidation. Instead, Local Rule 42 is the procedural rule that governs consolidation.

Second, this matter (DOJ Lawsuit) involves common issues of fact and law with *Troupe, et. al. v. Barbour, et. al.*, No. 3:10cv153, (S.D. Miss., March 10, 2010). Both lawsuits involve nearly identical *Olmstead* challenges against the State of Mississippi under the same statute and its "integration mandate." The United States opposed consolidation in part because *Troupe* involved a claim not present in the DOJ Lawsuit and discovery was stayed in *Troupe*. Since that time, the claim in *Troupe* that was not present in the DOJ Lawsuit has been dismissed, and the discovery stay in *Troupe* has been lifted. The United States' primary reasons for opposing consolidation no longer exist.

Third, consolidation will avoid unnecessary costs or delay. The target defendants in both lawsuits are the same two State agencies. The discovery, witnesses, and documents in both cases

substantially overlap. Absent consolidation, much duplicate discovery will be conducted. These cases should be consolidated.

I.      **The United States Misstates The Procedure For Consolidation.**

The United States incorrectly claims that consideration of consolidation is a two-step process – *i.e.*, the judge in the second-filed action determines whether there is substantial overlap between the two cases sought to be consolidated. If so, then the court in the first-filed case determines whether consolidation is warranted. (DOJ Lawsuit, Dkt. 14 at 5). This is stunningly wrong for at least two reasons.

First, Local Rule 42 expressly states how consolidation is determined in this Court: "the action bearing the lower or lowest docket number will control the designation of the district or magistrate judge before whom the motion to consolidate is noticed." *Accord*, *Robinson v. Roxy Investments, L.P.*, 2008 WL 3165834 at *3 n. 6 (S.D. Miss, Aug. 1, 2008). Here, the action bearing the lower or lowest docket number is *Troupe*. The United States' discussion of how motions to consolidate are decided in this Court completely overlooks Local Rule 42.

Second, the authorities cited by the United States regarding the alleged two-step process for consolidation discuss the first-to-file rule.[1] (DOJ Lawsuit, Dkt. 14 at 5). "Under the first-to-file rule, when related cases are pending before two federal courts, the court in which the case was last filed may refuse to hear it if the issues raised by the cases substantially overlap." *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 603 (5th Cir. 1999) (citations omitted). *Troupe* is the first-filed case and the DOJ Lawsuit is the last-filed case. The State is not asking the Court to refuse to hear the DOJ Lawsuit, so the first-to-file rule has no application here.

---

[1] The United States cited the following authorities: *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 603 (5th Cir. 1999); *Int'l Fid. Ins. Co. v. Sweet Little Mex. Corp.*, 665 F.3d 671 (5th Cir. 2011); *W. Gulf Mar. Ass'n v. ILA Deep Sea Local 24*, 751 F.2d 721, 728-29 (5th Cir. 1985); *Crest Audio Inc. v. QSC Audio Prods.*, 2016 WL 3249217 (S.D. Miss. March 4, 2016).

2

Instead, the State asks that *Troupe* and the DOJ Lawsuit be consolidated. The authorities cited by the United States do not suggest in any respect that the first-to-file rule has any application whatsoever to a request for consolidation under Rule 42. Under Local Rule 42, a motion to consolidate is decided by the judge in the action bearing the lowest docket number. That action is *Troupe*.

## II.     The DOJ Lawsuit And *Troupe* Involve Common Issues Of Fact And Law.

In responding to the State's Motion for Consolidation, the United States drew rigid distinctions between adults and children regarding mental health services, remedies for alleged violations, and available causes of action. (DOJ Lawsuit, Dkt.14 at 6-10). These rigid distinctions did not exist in the United States' December 2011 letter which initiated the process that led to the DOJ Lawsuit, and have not existed in the extensive negotiations between the United States and the State of Mississippi which sought a comprehensive resolution for both adults and children.

From the outset, the United States' investigation has focused on how the State's mental health programs operate collectively to serve both adults and children. In the December 2011 letter, the United States repeatedly took the position that Title II of the ADA, the Civil Rights of Institutionalized Persons Act (CRIPA), and related statutes apply to *individuals* with disabilities. (Exh. 1 at 1-2). The United States did not draw the rigid distinctions between adults and children it is now asserting in opposition to consolidation.

In December 2011, the United States asserted that the State's alleged violation of the ADA "has led to the needless and prolonged institutionalization of *adults* and *children* with disabilities who could be served in more integrated settings in the community with adequate services and supports." (Exh. 1 at 2) (emphasis added).

3

In December 2011, the United States noted that it was "accompanied by a team of experts in serving children and adults in integrated community settings" when it conducted onsite reviews at a number of the State's mental health facilities. (Exh. 1 at 5). The notion that community-based services must be exclusively for children or exclusively for adults is incorrect, as the United States has acknowledged.

The State and the United States both recognize that the mental health programs for adults and children, as well as the United States' claims regarding those programs, are interrelated. The State and the United States both signed an August 29, 2014 letter that outlined the parameters of the parties negotiations before litigation based on the "mutual goal of ensuring that *persons* with disabilities live in the most integrated setting." (Exh. 2 at 1) (emphasis added). The letter acknowledges that any "comprehensive" resolution would involve both adults and children. *Id*. at 4-5. As illustrated in the letter, the negotiations focused more on specific issues relating to children (which is the subject matter of *Troupe*) than with adults, but it is clear that addressing both adults and children was necessary given the overlap of the two. *Id*. Two years later, in announcing that it was filing the DOJ Lawsuit, the United States stated it was "evalut[ing] its options with regard to its claims related to children with mental health conditions and individuals with intellectual and developmental disabilities." (DOJ Lawsuit, Dkt. 8-1; *Troupe*, Dkt., 112-1). That the United States continues to actively participate in *Troupe* while pursuing the DOJ Lawsuit demonstrates the interrelated nature of both actions.

The United States claims that simply because *Troupe* and the DOJ Lawsuit have an ADA cause of action, that does not mean there are common questions of law or fact in the two cases. (DOJ Lawsuit, Dkt. 14 at 9). The United States misses the point. The core claim in both cases is that individuals are being improperly institutionalized. *Troupe* involves children and the DOJ Lawsuit involves adults, but the core issue in both cases is deinstitutionalization. The

deinstitutionalization issue creates common issues of law and fact which are more than sufficient to warrant consolidation of *Troupe* and the DOJ Lawsuit. The United States cannot – and does not – allege that the elements of a deinstitutionalization claim for adults is somehow different from the elements of a deinstitutionalization claim for children.

The United States argues that *Troupe* and the DOJ Lawsuit "together involve five different statutes. The *Troupe* case involves Medicaid claims under the EPSDT mandate that are only available to children and, indeed, the litigation on that case since 2010 has been largely focused on the resolution of that claim …. These issues are not before the court in the [DOJ Lawsuit] because the United States did not bring a claim under the Medicaid Act." (DOJ Lawsuit, Dkt. 14 at 10).

In fairness to the United States, there was an EPSDT claim in *Troupe* when the United States filed its Response, but that claim was dismissed on November 7, 2016. (*Troupe*, Dkt. 120). At this time, there is no EPSDT claim in *Troupe* or the DOJ Lawsuit. The Complaint in *Troupe* asserted two causes of action. Count I was the EPSDT claim, which has now been dismissed. Count II asserts claims under the ADA and Section 504 of the Rehabilitation Act. The Complaint in the DOJ Lawsuit asserts only one cause of action, and that claim is an ADA claim.[2] Both cases have an ADA claim, and in both cases the ADA claim is for deinstitutionalization.

Key to both the DOJ Lawsuit and *Troupe* is the fact that the ADA and Section 504 of the Rehabilitation Act both contain an "integration mandate." "The 'integration mandate' of Title II of the American with Disabilities Act … and Section 504 of the Rehabilitation Act …, as expressed in federal regulations and *Olmstead* …, requires that when a state provides services to individuals with disabilities, it must do so 'in the most integrated setting appropriate to their

---

[2] The United States alleges that it was authorized to initiate the DOJ Lawsuit under CRIPA.

5
PD.20406390.1

needs.'" *Disability Advocates, Inc. v. Paterson*, 598 F.Supp.2d 289, 292 (E.D.N.Y. 2009). Because the "integration mandate" is central to both the DOJ Lawsuit and *Troupe*, they involve common questions of law and fact.[3]

The United States claims that the DOJ Lawsuit and *Troupe* should not be consolidated because the remedies in the two cases would be different. (DOJ Lawsuit, Dkt. 14 at 6). The issue of remedies favors consolidation because the expansive remedies sought in both cases implicate the State's finite resources. Spending additional funds on mental health services for children implicates the amount of funds the State has available for adults, and vice versa.

Finally, it is telling that the *Troupe* plaintiffs have not joined the United States' opposition to consolidation.

Because there are common questions of law and fact between the DOJ Lawsuit and *Troupe*, those cases should be consolidated.

**III. Consolidation Will Avoid Unnecessary Costs or Delay.**

The United States contends that this case is ready to move forward with discovery, but that discovery is stayed in *Troupe*. (DOJ Lawsuit, Dkt. 14 at 12). The discovery stay in *Troupe* was lifted after the United States filed its Response. (*Troupe*, Dkt. 121). Discovery is now ready to move forward in both the DOJ Lawsuit and *Troupe*.

The United States notes that, in anticipation of the case management conference, it and the State have agreed to meet and confer on multiple dates. (DOJ Lawsuit, Dkt. 14 at 12). The United States requested that seven such meet and confer calls be scheduled. The State believes that seven meet and confer calls is excessive, but agreed to the United States' proposal in the spirit of cooperation. In return, the United States has used the State's cooperation against the

---

[3] The United States identifies four cases pending in Illinois for the unremarkable proposition that cases brought under *Olmstead* can be factually and legally distinct. (DOJ Lawsuit, Dkt. 14 at 10). But none of the Illinois cases involve the United States suing a State, and the United States failed to disclose whether a motion to consolidate was filed in any of the Illinois cases.

6
PD.20406390.1

State to oppose consolidation.  If the State had known that the United States would offensively use the State's agreement to meet and confer against it, then the State would not have agreed to meet and confer seven times.  Regardless, the State's agreement to meet and confer is hardly a factor against consolidation, but instead shows the State's good faith willingness to meet and confer with any party, including the United States and the *Troupe* plaintiffs, to discuss case management issues.

The United States contends that "consolidating these cases will add confusion and complexity both for the parties and the Court," (DOJ Lawsuit, Dkt. 14 at 12), but fails to explain why that would purportedly be the case.  The State agencies at issue in both cases are the same – *i.e.*, the Department of Mental Health and the Division of Medicaid.  The United States concedes that "the Mental Health Director and the Medicaid Director … oversee both service systems" − *i.e.*, the service systems for both children and adults.  (DOJ Lawsuit, Dkt. 14 at 8).  Because the same agencies are involved, the discovery, witnesses, and documents will substantially overlap.  If these cases are not consolidated, a substantial amount of discovery will be done twice.  Consolidation will avoid unnecessary costs and delay.

**Request for Relief**

The DOJ Lawsuit and *Troupe* should be consolidated.

THIS, the 17th day of November, 2016.

    Respectfully submitted,

    PHELPS DUNBAR LLP


BY:  */s/ R. Gregg Mayer*
    Reuben V. Anderson, MB 1587
    W. Thomas Siler, MB 6791
    James W. Shelson, MB 9693
    R. Gregg Mayer, MB 102232
    A. Martin Edwards, IV, MB 104677

7

4270 I-55 North
Jackson, Mississippi 39211-6391
Post Office Box 16114
Jackson, Mississippi  39236-6114
Telephone: 601-352-2300
Telecopier: 601-360-9777
Email:  andersor@phelps.com
       silert@phelps.com
       shelsonj@phelps.com
       gregg.mayer@phelps.com
       martin.edwards@phelps.com

Harold Pizzetta, III, Esq., MB 99867
Assistant Attorney General
General Civil Division
Walter Sillers Building
550 High Street
Jackson, MS 39201

Attorneys for the State of Mississippi

## CERTIFICATE OF SERVICE

I certify that on November 17, 2016, I electronically filed this document with the Clerk of the Court using the ECF system, which sent notification of such filing to all ECF counsel of record in this action.

       */s/ R. Gregg Mayer*
       R. GREGG MAYER