# Exhibit B

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Plaintiff, | : | |
| | : | Civil Action No. |
| v. | : | 3:16-CV-622-CWR-FKB |
| STATE OF MISSISSIPPI, | : | |
| | : | |
| Defendant. | : | |

## JOINT STIPULATION REGARDING DISCOVERY

Plaintiff United States and Defendant State of Mississippi (collectively, "Parties") enter into this Stipulation to govern discovery obligations in this action.

The Parties stipulate as follows:

## SECTION 1:  DEFINITIONS

1. Definitions:

    a. <u>Backup system</u> means backup tapes, continuity of operations systems, data or system mirrors or shadows, and other systems that are: 1) used for the purpose of system recovery or information restoration; and 2) routinely purged, overwritten, or otherwise made not reasonably accessible in accordance with an established, documented, and routine system maintenance policy.

    b. <u>Counsel</u> means counsel of record in this action and attorneys, supervisors, and legal staff (whether employees or contractors) of their law offices.

    c. <u>Effective date</u> means the date that all of the Parties execute this Stipulation.

    d. <u>ESI</u> means electronically stored information.

    e. <u>Near Native Format</u> means the default format of a data file created by its associated software program with some formatting provided for "container files" such as zip or email.  For example, Microsoft Excel® produces its output as ".xls" files by default, which is the native format of Excel.  Microsoft Word® produces native files with a ".doc" extension, which is the native format of Word.  Container files consist of one or more individual files that are organized and/or compressed into a single file, the most common of these are embedded files in Microsoft Word®, WinZip® files and email files.  The formatting that is applied to container files in a near native production opens the container so that each individual file that was originally in the container is produced as its

     own document.  Attachments or embedded files are also extracted and produced outside of the container file.

   f. <u>Party</u> means Plaintiff United States Department of Justice ("United States"), and Defendant State of Mississippi ("State").

   g. <u>Producing Party</u> refers to the Party that is providing documents responsive to a document request.

   h. <u>Requesting Party</u> refers to the Party that has made a request for a specified category of documents.

   i. <u>State</u> means the Mississippi Division of Medicaid and the Mississippi Department of Mental Health.

   j. <u>Web Page</u> means any internet and intranet pages.

**SECTION 2:  PRODUCTION OF HARD COPY DOCUMENTS**

 2. The Parties agree to maintain their hard copy production files and to allow, during the pending litigation, reasonable access, at times mutually agreed upon, to the other Party for additional inspection and/or selection for reproduction.

 3. Hard copy documents will be produced in a TIFF format.  The Parties will confer as to any types of documents that require a different format.

 4. Each hard copy page will be scanned using a resolution of 300 dpi, black & white as single page, Group IV, TIFF format.  Image and database load files will capture the physical document boundaries and smallest binding element as the attachment range.

 5. Regarding color documents, the Parties will honor reasonable requests for either the production of the original document for inspection and copying or production of any color image of the document.

 6. Documents with pages that contain fixed notes (e.g., post-it notes) will be scanned in their entirety both with and without the notes.  Those pages will be treated as part of the same documents.

 7. All images will be saved in a directory named IMAGES.

2

8. For all scanned hard copy documents, or electronic documents that exist as native files for which native text is not available (e.g., graphic files and some PDFs), the Parties will produce corresponding Optical Character Recognition ("OCR") text files, regardless of whether the document is being produced in native form. The OCR and extracted text files will be produced in ASCII text format and will be labeled and produced on Production Media in accordance with the provisions of Paragraph 29 below. These text files will be named with the unique Bates Number of the first page of the corresponding document followed by the extension ".txt." The OCR and extracted text files will be produced in a manner suitable for importing the information into Relativity. OCR and extracted text files will be saved in a directory named TEXT. All documents should have an accompanying text file even if zero size.

9. The Parties agree to produce all hard copy documents with a legible, unique page identifier ("Bates Number") electronically "burned" onto each page in the lower right hand corner or at a location that does not obliterate, conceal, or interfere with any information from the source document.

### SECTION 3: PRESERVATION, COLLECTION, AND SEARCH OF ELECTRONICALLY STORED INFORMATION (ESI)

10. Absent a showing of good cause by the Requesting Party, the Parties shall not be required to modify the procedures used by them in the ordinary course of business to back-up and archive data; provided, however, that the Parties shall preserve all relevant ESI in their possession, custody, or control, except for ESI that is not required to be maintained or preserved pursuant to Section 4. As used in this Paragraph 10 with respect to email, the term "all relevant ESI" means the email of the custodians listed on Attachments A and B.

11. Subject to Paragraph 32, the Parties agree to limit the collection and search of non-email ESI to non-email ESI that is created or received on or after January 1, 2011, except as follows: the State will limit the search and collection of non-email ESI to non-email ESI created

3

or received on or after January 1, 2000, related to the following: Mississippi Department of Mental Health annual reports, strategic plans, and federal block grant applications; Joint Committee on Performance Evaluation and Expenditure reports; and the Mississippi Access to Care ("MAC") documents and plans. In addition, should a Party claim that non-email ESI or email created or received prior to January 1, 2011, other than the "except as follows" non-email ESI identified in the preceding sentence, is relevant, the Parties will meet and confer regarding the discovery of such ESI. The Parties reserve the right to seek a court order to obtain such ESI, and to object to same.

12. Subject to the provisions of Paragraph 32, the Parties agree that the collection and search of the State's email (and corresponding attachments) shall be limited to email that is sent or received on or after January 1, 2011, and to:

    a. the custodians listed on Attachment A, as well as any custodians added to Attachment A according to the process set forth in Paragraph 13; and

    b. the custodians listed on Attachment B, as well as any custodians added to Attachment B according to the process set forth in Paragraph 13, only for emails relevant to individuals in the United States' sample of State Hospital clients.

13. The United States may request to add additional custodians to Attachment A or Attachment B should it become aware that such individuals have information relevant to the case. If the State objects to additional custodians, the United States reserves the right to seek a court order to add custodians. The State agrees to notify the United States when any employees are hired into any of the positions of custodians in Attachment A or Attachment B.

### SECTION 4: PRESERVATION NOT REQUIRED FOR CERTAIN DOCUMENTS, THINGS, AND ESI

14. The Parties agree that they need not preserve, continue to preserve, produce, or provide a privilege log for the following categories of ESI:

    a. Voicemail messages on Counsel's voicemail system;

    b. Electronic mail messages on Counsel's electronic mail system;

    c. Temporary or cache files, including internet history, web browser cache and cookie files, wherever located;

    d. Server, system, or network logs;

    e. Data from photocopiers, printers, or fax machines;

    f. Auto-saved copies of electronic documents;

    g. Delivery or read receipts of electronic mail;

    h. Logs of calls made to or from mobile devices;

    i. Deleted, slack, fragmented, or other data only accessible by forensics; and

    j. Electronic data (e.g., email, calendars, contact data, and notes) sent to or from mobile devices (e.g., iPhone, iPad, Android, and Blackberry devices), provided that a copy of all such electronic data is routinely saved elsewhere (such as on a server, laptop, desktop computer, or cloud storage).

15. ESI on backup systems will not be preserved provided that duplicate copies of the ESI have been preserved in another reasonably accessible location. If relevant ESI exists only on a Party's backup system, the Party will preserve ESI on the backup system until the Parties can agree on how and when the ESI will be preserved or produced. If the Parties cannot reach agreement, they will seek a ruling from the Court.

16. The Parties agree not to preserve, continue to preserve, produce, or create a privilege log for any document, things, or ESI that were: 1) created by, and exchanged solely among Counsel of the United States Department of Justice; or 2) created by, and exchanged solely among Counsel of the State or Counsel of the State and its outside Counsel (e.g., Phelps Dunbar).

17. Communication between Counsel and any witness required to provide a report under FRCP 26(a)(2)(B) shall be protected from disclosure and shall not be produced in discovery regardless of the form of the communication, nor shall a privilege log be produced for such communications, except to the extent that the communications are discoverable pursuant to FRCP 26(b)(4)(C).

5

18. The Parties agree not to seek discovery of documents, things, and ESI that they have agreed not to preserve or to make subject to discovery pursuant to Section 4. If any discovery request is susceptible of a construction which calls for the production of documents, things, or ESI covered by Section 4, the responding Party is not required to produce or identify such information on a privilege log. However, if a Party preserves relevant documents, things, or ESI covered by Section 4, and intends to use any such information to support a claim or defense in this case, the Party will produce such information or identify it on a privilege log notwithstanding the provisions of Section 4.

19. The Parties agree that by preserving documents, things, and ESI for the purpose of this litigation, they are not conceding that such material is discoverable, nor are they waiving any claim of privilege.

20. Each Party agrees not to seek sanctions pursuant to the FRCP, the contempt powers of the Court, or any other authority, against another Party for the failure to preserve documents, things, or ESI that are not required to be maintained or preserved pursuant to Section 4.

### SECTION 5: PRODUCTION OF ELECTRONICALLY STORED INFORMATION (ESI)

21. In recognition of the volume of irrelevant data that is generated by the Parties in the ordinary course of business, the Parties agree to work together to narrow the documents, things, and ESI that are collected, processed, and ultimately reviewed in accordance with this Stipulation.

22. Within 10 business days of FRCP 34 discovery requests being electronically served, the Parties will meet and confer regarding search terms and a process for identifying responsive and discoverable ESI. The Parties will continue to cooperate throughout the discovery period in revising the search terms, custodians, and date ranges as appropriate. Search terms may include specific Boolean expressions and/or may call for "searches within searches." The Parties shall have 40 days from the service of requests for production to respond to the requests for

production.  The Parties will meet and confer regarding any modifications to this schedule, including in connection with rolling productions.

23. The Parties agree to discuss search terms that resulted in a high proportion of non-responsive ESI.

24. The Parties will meet and confer regarding the production of databases, Web Pages, and any file formats that are not Microsoft or Corel-suite compatible.  All other ESI will be produced as native files in a Near Native production format.  File names and other metadata shall be preserved in database load files.  Each individual file will be renamed using a unique item identifier (similar to a Bates Number but on a file-by-file basis versus a page-by-page basis).

25. ESI will be deduplicated on a global basis.  For email, this means that any single email and any attachments will be provided in one instance regardless of the number of other custodians who sent, received, or were copied on the email.  Each Party will include a production field ["DupCustodian"] that identifies each of the custodians who originally had the file in their data collection.  The Parties agree to use MD-5 Hash values or Conversation Index for de-duplication and to calculate those values for all ESI at the time of collection or processing.  Email attachments and files will not be deduplicated against each other.  Duplicate attachments to emails will not be eliminated from the parent email.

26. In the event that a Party needs to redact a portion of a document, that document will be produced in TIFF format with the redacted portion clearly defined and burned into the image.

27. Agreed upon load files will be provided with each production.  Load files must preserve the original document unitization.  Native files will be saved in a directory named NATIVE.

28. All metadata will be produced in an ASCII delimited database load file and will include the metadata identified in Exhibit 1.  Attachment associations to email and other

7

documents (e.g., embedded files) will be preserved as attachment number range fields. Attachments should be numbered consecutively following the parent file. If the native email application cannot provide attachments as contemplated in this Paragraph, email attachments shall be provided in a reasonably useable format.

29. The Parties agree to produce documents and ESI on CD-ROM, DVD, or external hard drive (collectively, "Production Media"), depending on the volume of the production. Parties agree to label each piece of Production Media with: (1) case name, (2) Producing Party's name, and (3) production date. In addition, the Parties will include on the production media label or in an accompanying letter the type of materials (e.g., documents) and the unique item identifier range(s) of the materials produced.

30. The Parties agree not to produce documents, things, or ESI using FTP, SFTP, hosted or other commercially available services (e.g., Dropbox.com) without written agreement of all Parties.

31. The Parties will use their best efforts to remove encryption or password protection for all ESI produced. In the alternative, the Parties will use their best efforts to provide passwords and assistance needed to open encrypted files. If software is required to open encrypted files, the Parties will meet and confer regarding the cost of such software and whether it is necessary to use the software. The State reserves the right to object to the use of such software.

**SECTION 6: NON-WAIVER AND OBJECTIONS PRESERVED**

32. This Paragraph 32 applies over any contrary provisions of this Joint Discovery Stipulation. Nothing in this Stipulation waives any Party's right to object to and withhold the production of material, documents, or ESI for any reason allowed under the FRCP or applicable law. Nothing in this Stipulation enlarges the scope of discovery permitted by FRCP 26(b)(1). Nothing in this Stipulation creates an obligation to produce any material, documents, or ESI.

Nothing in this Stipulation is a representation or confirmation that any particular document, or category of documents, or ESI, or category of ESI, exists or is otherwise available for production. The Parties reserve the right to object to any discovery requests or any requested search for any reason permissible under the FRCP or other applicable law, and to seek cost-shifting under the FRCP or other applicable law.  Prior to production, documents and ESI identified by search processes may be reviewed for privilege, confidentiality, responsiveness, or any other purpose permitted by the FRCP or applicable law.

## SECTION 7:  PRIVILEGE LOG

33. The Parties agree that for each document, thing, or ESI withheld from production based on an asserted claim of privilege or protection, the Party asserting the privilege or protection must produce a privilege log which contains the information specified by Local Rule 26(e), except as provided in Section 4.  The privilege log will be provided to opposing counsel 25 days after the date agreed upon by the Parties for exchange of ESI, or in the case of rolling productions, 15 days following the last production.

## SECTION 8:  INADVERTENT DISCLOSURE OF PRIVILEGED OR PROTECTED INFORMATION

34. The Parties agree that a disclosure of information contained within documents, things, and ESI that is protected by attorney-client privilege, work product protection, or governmental privileges, including the deliberative process privilege, does not operate as a waiver in this case or in any other federal or state proceeding.  This Stipulation will be interpreted to provide the maximum protection allowed by FRE 502(d).  Any privileged information that is inadvertently disclosed or produced by any Party in any manner will remain privileged or protected.

35. Information produced in discovery that is protected as privileged or work product shall be immediately returned to the Producing Party, and its production shall not constitute a

9

waiver of such protection if: (i) such information appears on its face to have been inadvertently produced or (ii) the Producing Party provides notice within 14 days of discovery by the Producing Party of the inadvertent production. In addition, the following provisions apply:

a. Any Party receiving material it believes may have been inadvertently produced that includes privileged or protected information will promptly notify the Producing Party. Within 14 days after such notification, the Producing Party may request in writing that such materials be returned or destroyed. Upon such written request, and except in the event that the Requesting Party disputes the claim of privilege or protection, any materials which the Producing Party deems to contain inadvertently disclosed materials will be promptly returned to the Producing Party or destroyed at the Producing Party's option. This includes all copies, electronic or otherwise, of any such materials.

b. If privileged or protected information is contained within an item of otherwise discoverable material, the Parties recognize that the Requesting Party may not be able to destroy only the portion of the item of the disclosed material that is privileged or protected; instead, the Requesting Party may need to destroy the privileged or protected information along with all of the otherwise discoverable material within that item. Whenever that is the case, the Producing Party, within 14 days of notification of the inadvertent disclosure, will provide the Requesting Party with a replacement copy of the item that includes the material that is not privileged or protected and is otherwise discoverable.

c. In the event that the Requesting Party disputes the Producing Party's assertions with respect to the inadvertently disclosed material, such material will be sequestered and retained by and under control of the Requesting Party for the purpose of seeking determination of the issue from the Court. If the Court determines that the inadvertently disclosed material is not subject to any applicable privilege or protection, the Requesting Party may use the material for any purposes otherwise permitted by law or rule. If the Court determines that the inadvertently disclosed material is subject to an applicable privilege or protection, the Requesting Party must return or destroy the materials at issue as provided above.

d. If the Producing Party does not request the return or destruction of material within 14 days of notification by the Requesting Party of the receipt of the material it believes was inadvertently produced, the Producing Party waives any claim of privilege or protection as to the material. Notwithstanding the foregoing, the inadvertent disclosure of any material by any Party in this case shall not constitute a "subject matter" or global waiver of any applicable privilege or protection.

10

## SECTION 9:  GOOD FAITH NEGOTIATION

36. Before filing any motion regarding the terms of this Stipulation, compliance with this Stipulation, or other discovery matter, the Parties will confer in a good faith attempt to resolve such disputes, and will comply with paragraph 6.F.d. of the Case Management Order.

## SECTION 10:  MISCELLANEOUS

37. Within 28 days of the Effective Date of this Stipulation, the Parties shall exchange a sample production of documents/ESI formatted to be consistent with this Stipulation.  The sample production shall contain a minimum of 10 documents, to include a combination of scanned paper files and ESI, and shall include at least one spreadsheet and one email.  The production need not be relevant to this case, as it is intended only to test the adequacy of the specifications in this Stipulation and the compatibility of the Parties' systems.  If any Party reports problems with the sample productions, the Parties shall confer regarding the terms of this Stipulation.

38. This Stipulation may be executed in counterparts.

39. This Stipulation may not be enlarged, modified, or altered except in a writing signed by each Party.

40. The terms of this Stipulation are not exhaustive.  Each Party reserves the right to subsequently request to meet and confer to address any matters not addressed herein.

Agreed to by counsel for the Parties:

**FOR THE UNITED STATES PLAINTIFF:**

| | |
|---|---|
| HAROLD BRITTAIN<br>Acting United States Attorney<br>Southern District of Mississippi | T.E. WHEELER, II<br>Acting Assistant Attorney General<br>Civil Rights Division |
| MITZI DEASE PAIGE<br>Chief, Civil Division<br>Assistant United States Attorney | REBECCA BOND<br>Acting Deputy Assistant Attorney General<br>Civil Rights Division |
| | STEVEN H. ROSENBAUM<br>Chief<br>Special Litigation Section |
| | REGAN RUSH<br>Deputy Chief<br>Special Litigation Section |
| Date: _____, 2017 | _____<br>MATHEW SCHUTZER [NY Bar #5136007]<br>C. ADRIENNE MALLINSON<br>DEENA FOX<br>PATRICK HOLKINS<br>Trial Attorneys<br>Special Litigation Section<br>Civil Rights Division<br>U.S. Department of Justice<br>950 Pennsylvania Avenue, N.W. - PHB<br>Washington, DC  20530<br>Telephone: (202) 616-3179<br>Mathew.Schutzer@usdoj.gov |

                                                **FOR THE STATE OF MISSISSIPPI**

Date: _____, 2017

                                    Reuben V. Anderson, MB 1587
                                    W. Thomas Siler, MB 6791
                                    James W. Shelson, MB 9693
                                    R. Gregg Mayer, MB 102232
                                    4270 I-55 North
                                    Jackson, Mississippi 39211-6391
                                    Post Office Box 16114
                                    Jackson, Mississippi  39236-6114
                                    Telephone: 601-352-2300
                                    Telecopier: 601-360-9777
                                    Email:  andersor@phelps.com
                                                    silert@phelps.com
                                                    shelsonj@phelps.com
                                                    gregg.mayer@phelps.com

                                    Harold Pizzetta, III, Esq., MB 99867
                                    Assistant Attorney General
                                    General Civil Division
                                    Walter Sillers Building
                                    550 High Street
                                    Jackson, MS 39201

                      Attorneys for the State of Mississippi

13

**Exhibit 1**

**Image Fields to be Produced
for Hard Copy Reprographics**

Beginning bates number
Ending bates numbers,
Begin Attachment number
Ending Attachment number
Source (Custodian)
Page Count

**ESI Metadata
Fields to be Produced**

ProdBeg ID

ProdAttachBeg ID

ProdAtatch End ID

Record Type

Original source file path (Source)

Original file name

Native file application extension

MD5 Hash

ESI Custodian or Data Source

Author

Create date

Create Time

Modified Date

Modified Time

Exported file path and file name for Native file

Exported file path and file name for Extracted Text and/or OCR Text

Production Volume Name, e.g. "VOL001"

Sent Date

Sent Time

Received Date

14

Received Time

Message ID

From

Recipient(s)

CCs

BCCs

Subject

DupCustodians [Custodian names for each duplicate file]


All email files will be processed using the Central Time Zone

15

PD.21539683.1