IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Plaintiff, | : | |
| | : | Civil Action No. |
| v. | : | 3:16-CV-622-CWR-FKB |
| | : | |
| STATE OF MISSISSIPPI, | : | |
| | : | |
| Defendant. | : | |

**UNITED STATES' MEMORANDUM IN SUPPORT OF ITS MOTION FOR ENTRY OF A CASE MANAGEMENT ORDER**

The United States respectfully moves the Court for entry of a Case Management Order permitting each party to propound 150 Requests for the Production of Documents ("RPDs") and 45 Requests for Admission ("RFAs") pursuant to Fed. R. Civ. P. 34 and 36.[1] This discovery is necessary for the United States to effectively prosecute this case, in which the United States seeks to remedy widespread, longstanding, and ongoing violations of the Americans with Disabilities Act.

In accordance with the Court's May 5, 2017 Order, the Parties met and conferred about the scope of discovery. Although the Parties reached agreement to narrow the frame and scope

---

[1] As noted in the attached proposed Case Management Order, *see* Exhibit A, the Parties have reached agreement on all areas except a limitation on RFAs and RPDs. This includes agreement on a schedule to bring this case to trial in early 2019. *See* Exhibit A at 6-7. In light of the Court's concerns raised at the Case Management Conference on May 4, 2017, the Parties have proposed a shorter schedule than that proposed in April 2017. The time periods identified in the scheduling table are necessary to conduct the discovery and expert analysis necessary in this case due to its scope and complexity, and are commensurate with the schedule in similar statewide suits. *See, e.g.*, Parties' Joint Discovery Plan at 4, *Kenneth R. v. Hassan*, No. 1:12-cv-53 (D.N.H. Aug. 14, 2012), ECF No. 56 (requesting 24-month track); Joint Rule 26(f) Report and Scheduling Proposals at 24, *Steward v. Perry*, No. 5:10-cv-1025 (W.D. Tex. Oct. 28, 2015), ECF No. 233 (party agreement that trial should commence 23 months after beginning of discovery).

1

of discovery in this matter, *see* Joint Stipulation Regarding Discovery, Exhibit B ("Discovery Stipulation")[2], and resolved nearly all areas of disagreement, the Parties still require the Court's intervention on the question of an appropriate number of RPDs and RFAs.

## ARGUMENT

I. <u>This Case Concerns Systemic Institutionalization of and Discrimination Against Individuals with Mental Illness in Violation of the Americans with Disabilities Act</u>

The State of Mississippi continues to make institutional care in its four State Hospitals[3] the centerpiece of its mental health system. Compl. ¶¶ 12-13. As a result of the State's failure to provide sufficient community-based mental health services, thousands of Mississippians with serious mental illness repeatedly cycle through these State Hospitals. *Id.* ¶¶ 51, 54-58. Some stay for weeks, others stay for months and even years. *Id.* ¶¶ 52, 59-60. When they are discharged from a State Hospital, it is often with the same lack of community-based services that precipitated their admission, resulting in yet another State Hospital admission. *Id.* ¶¶ 54-58. Many are first held in emergency rooms, private psychiatric facilities, or jails. *Id.* ¶ 53. The State's policies, practices, and funding decisions limit the availability of critical community-based services that could replace institutionalization as the centerpiece of the system. *Id.* ¶ 74. Instead of embracing these services, the State continues to funnel individuals with serious mental illness into the State Hospitals.

Mississippi's actions constitute discrimination under Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 *et seq*. The ADA provides that "no qualified

---

[2] The Parties have agreed to the language of this Discovery Stipulation but it is not ready to be filed with the Court yet. The Parties will file the Discovery Stipulation as soon as they have finalized Custodian Lists. It is presented here for the Court's information.

[3] Mississippi State Hospital, North Mississippi State Hospital, East Mississippi State Hospital, and South Mississippi State Hospital.

individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 13132. Implementing regulations promulgated by the Department of Justice require states to administer services for individuals with disabilities in the most integrated setting appropriate to their needs. 42 U.S.C. § 12132; 28 C.F.R. § 35.150(d). Those regulations further prohibit the use of methods of administering services, programs, or activities that have the effect of discrimination, including in the form of unjustified segregation. 28 C.F.R. § 35.130(b). The Supreme Court has held that community-based, and not institution-based, services must be provided to an individual when the community-based services are a) appropriate; b) not opposed by the individual; and c) can be reasonably accommodated. *Olmstead v. L.C.*, 527 U.S. 581, 607 (1999). As an affirmative defense, the State may assert that serving those individuals in the community would fundamentally alter its service system such that the modifications are not reasonable. *See, e.g.*, *Steimel v. Wernert*, 823 F.3d 902, 915 (7th Cir. 2016). As the Supreme Court has acknowledged, isolation in an institution "severely diminishes the everyday life activities of individuals, including family relations, social contacts, work options, economic independence, educational advancement, and cultural enrichment." 527 U.S. at 601.

Mississippi perpetuates this ongoing violation primarily through two of its agencies – the Division of Medicaid and the Department of Mental Health. Compl. ¶¶ 24-28. Thousands of people each year cross the thresholds of the State Hospitals. *Id.* ¶ 51. Given the reach and complexity of the public mental health system, and the significance of the ongoing and damaging civil rights violations, the Court should enter a Case Management Order permitting the Parties to propound 150 RPDs and 45 RFAs without further leave of court.

II. <u>150 RPDs and 45 RFAs are Necessary to Conduct Discovery in this Statewide Civil Rights Lawsuit</u>

Parties may obtain discovery of any "nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Limitations on discovery should be set according to the "needs of each particular case." L.U.Civ.R. 26(d). The needs and complexity of this particular case, as informed by similar Title II cases litigated by the United States, warrant limitations of 150 RPDs and 45 RFAs without further leave of court.

    A. *The United States Must Conduct Discovery into State Hospitals, Community Services, and State Policy, Practice, and Funding to Prosecute this Case*

Whether a state is complying with the integration mandate of Title II is a fact-intensive inquiry. *See, e.g.*, *Guggenberger v. Minnesota*, 198 F. Supp. 3d 973, 1030-31 (D. Minn. 2016) (affirmative defense available to States is fact-based), *Disability Advocates, Inc. v. Paterson*, 598 F. Supp. 2d 289, 294 (E.D.N.Y. 2009) *rev'd on other grounds,* 675 F.3d 149 (2d Cir. 2012) (noting summary judgment record of more than 13,000 pages). To meet its fact-laden burden, the United States will take discovery regarding: (a) the population served by the State Hospitals[4]; (b) admission to and discharge from the State Hospitals; (c) the statewide availability of community-based services designed to prevent or reduce the use of institutional settings and the impact of those services; (d) the State's policies, practices, and funding for mental health

---

[4] The United States' case is not intended to address the services available to the approximately 60,000 adults with mental illness whom the Department of Mental Health serves each year. *See* Mississippi Department of Mental Health, Mississippi Department of Mental Health Community Mental Health Services FY 2016 – 2017 State Plan at 18, http://www.dmh.ms.gov/wp-content/uploads/2015/06/2016-2017-MS-Dep-of-Mental-Health-State-Plan-for-review.pdf (Mississippi's public community mental health system served 59,300 adults with serious mental illness in Fiscal Year 2014). Instead, the United States' case addresses the services available to the individuals who are institutionalized or at serious risk of institutionalization in one of the four State Hospitals, which collectively admit approximately 3,300 individuals each year. Compl. ¶ 51. This will be accomplished primarily through the process described in the proposed Case Management Order, to which the Parties have agreed. *See* Exhibit A at 2.

services; and (e) the effect of the State's policies, practices, and funding decisions on access to community-based services and institutional settings.

The Mississippi mental health system is run by multiple State agencies and divisions; informed by a Board of Mental Health; funded through Medicaid, the General Fund and various grants; and with services dispensed through fourteen regional Community Mental Health Clinics ("CMHCs"). The four State Hospitals have multiple units and various mental health programs running within them. 150 RPDs are necessary to probe all the key areas of inquiry relevant to the United States' ADA claim given this factual complexity. In particular, the United States will propound RPDs related to the four State Hospitals that will include, *inter alia*, requests for criteria and policies related to admission and discharge; data related to cost, utilization, and lengths of stay at each State Hospital; documents related to coordination of care, readmissions, other institutions that refer for State Hospital placement, the placements that the State makes upon discharge; and medical records of a sample of individuals in the State Hospitals.

In addition, the United States will need to conduct discovery related to community-based services that are critical alternatives to institutional placement, including psychiatric services, individual and group therapy, intensive case management, crisis services, peer support services, Assertive Community Treatment, supported employment, and permanent supported housing. Compl. ¶ 14. Both the Department of Mental Health and the Department of Medicaid (and their respective divisions) play a central role in administering and funding the mental health system, including the State Hospitals and community-based services. The United States will need to seek documents related to the State's actions in defining what the community providers can offer and are required to offer, what services are provided in the community, utilization of the provided community services, the impact and efficacy of those services, the funding of the

5

services, the State's limitations on those services, and the State's oversight of those critical community-based services. The United States will also seek discovery into the State's own planning for the mental health system, the development of these critical community-based services, and the role of the State Hospitals. Given the complexity of this fact-intensive inquiry, 150 RPDs is an appropriate limitation.

> B. *The Number of Requests the United States Seeks in This Matter is Lower Than Those Actually Served in Similar Olmstead Cases the United States has Litigated*

Other Title II cases that the United States has litigated to challenge unnecessary institutionalization have required even more RPDs. *Steward v. Perry*, No. 10-cv-1025 (W.D. Tex. Dec. 20, 2010), in which the United States has intervened, is a statewide lawsuit in Texas related to the institutionalization of individuals with intellectual and developmental disabilities in nursing facilities. From March 17, 2016 to the present, plaintiffs and the United States have collectively propounded 194 RPDs on the Defendants. In *Kenneth R. v. Hassan*, No. 12-cv-00053 (D.N.H. Feb. 9, 2012), a suit alleging that New Hampshire violated the ADA by institutionalizing individuals with mental illness in New Hampshire's single state-run psychiatric hospital and a single nursing facility, plaintiffs and the United States collectively served nearly 200 RPDs before the case settled.[5] Because the significant civil rights violations at issue here are similar in scope and gravity to those at issue in *Steward* and *Kenneth R.*, a limit of 200, or even more, RPDs would be reasonable. Nonetheless, to address the concerns of the State and the

---

[5] The scope of discovery in *Kenneth R.* is appropriate to consider here despite the fact that discovery in *Kenneth R.* was conducted before the 2015 amendments to Rule 26. The 2015 amendments "restor[ed]" proportionality to Rule 26(b)(1) but did "not change the existing responsibilities of the court and the parties to consider proportionality." Fed. R. Civ. P. 26 advisory committee's note to 2015 amendment; *see also Dao v. Liberty Life Assurance Co. of Boston*, No. 14-cv-04749, 2016 WL 796095, at *3 (N.D. Cal. Feb. 23, 2016) ("the amended rule does not actually place a greater burden on the parties with respect to their discovery obligations, including the obligation to consider proportionality, than did the previous version of the Rule.").

6

Court, the United States is willing to reduce its request to 150 RPDs, with the understanding that if additional discovery is indeed necessary, the United States will return to the Court and make that request.

    C. *The United States' Request is Consistent with the Proportionality Requirement of Fed. R. Civ. Proc. 26(b)(1)*

The State has argued that this proposed number is not proportional. Consideration of proportionality includes examination of "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). The general principles outlined in the Rule support significant discovery in this matter. The case addresses significant and widespread civil rights violations and a spending imbalance of hundreds of millions of dollars. Virtually all relevant information is in the State's possession. These factors support a broad allowance of discovery.

Other factors cannot appropriately be addressed until the United States has propounded its RPDs and the State has responded with specific objections addressing the burden or expense it would bear in responding to any objectionable requests. *See, e.g.*, *In re Bard IVC Filters Prods. Liab. Litig.*, 317 F.R.D. 562, 564-65 (D. Ariz. 2016) ("The inquiry to be conducted under the proportionality requirement, therefore, requires input from both sides."); Fed. R. Civ. P. 26 advisory committee's note to 2015 amendment (amendment to "restore[] the proportionality factors to their original place in defining the scope of discovery . . . [is not] intended to permit the opposing party to refuse discovery simply by making a boilerplate objection that it is not proportional"). The United States' request for 150 RPDs is consistent with the proportionality

requirement given the issues in this case and proportionality concerns with particular requests can be handled through the discovery process.

D. *150 RPDs are Appropriate Despite the Parties' Agreements to Narrow Discovery*

The Parties' Discovery Stipulation significantly limits discovery by: (1) limiting the discovery of ESI to ESI dating from January 1, 2011 and thereafter, with limited exceptions; (2) limiting production of documents to those held by the Department of Mental Health and Division of Medicaid; and (3) excluding broad categories of sources that are largely inaccessible, potentially duplicative, or likely to be predominantly privileged. *See* Exhibit B. The Parties have also agreed to a reasonable number of interrogatories (35 per side) and depositions (50 per side, and no more than 40 state employees without leave of court). *See* Exhibit A. These limitations serve to define the outer limits of discovery and to ease the burden of responding to requests for production within those limits. Within these negotiated boundaries, the United States believes that it will need approximately 150 RPDs to prosecute its case and requests the Court permit it to do so.

E. *45 RFAs will enable the Parties to Effectively Narrow and Frame the Issues in Dispute*

45 RFAs will appropriately enable the Parties to narrow and frame the legal and factual issues in dispute for trial. *See, e.g.*, *Spikes v. Bolivar Cty.*, No. 2:07-cv-22, 2008 WL 2797014, at *1 (N.D. Miss. July 8, 2008) ("Admissions are sought to facilitate proof with respect to issues that cannot be eliminated from the case, and secondly to narrow the issues by eliminating those that can be.") (quoting Fed. R. Civ. P. 36, advisory committee's note to 1970 amendment). It is likely that many of the factual questions in this case – for example, basic data about the State's current service system – would be particularly amenable to this type of narrowing and framing.

An ample supply of RFAs will ultimately ease the burden on both Parties and the Court at trial and for summary judgment.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court enter a Case Management Order permitting each party to serve up to 150 RPDs and 45 RFAs without further leave of Court.

Respectfully submitted,

| | |
|---|---|
| HAROLD BRITTAIN<br>Acting United States Attorney<br>Southern District of Mississippi | T.E. WHEELER, II<br>Acting Assistant Attorney General<br>Civil Rights Division |
| MITZI DEASE PAIGE<br>Chief, Civil Division<br>Assistant United States Attorney | REBECCA BOND<br>Acting Deputy Assistant Attorney General<br>Civil Rights Division |
| | STEVEN H. ROSENBAUM<br>Chief<br>Special Litigation Section |
| | REGAN RUSH<br>Deputy Chief<br>Special Litigation Section |
| Date: May 26, 2017 | */s/ Mathew Schutzer*_____<br>MATHEW SCHUTZER [NY Bar #5136007]<br>C. ADRIENNE MALLINSON<br>DEENA FOX<br>PATRICK HOLKINS<br>Trial Attorneys<br>Special Litigation Section<br>Civil Rights Division<br>U.S. Department of Justice<br>950 Pennsylvania Avenue, N.W. - PHB<br>Washington, DC 20530<br>Telephone: (202) 616-3179<br>Mathew.Schutzer@usdoj.gov<br><br>*Counsel for the United States* |

**CERTIFICATE OF SERVICE**

      I hereby certify that on May 26, 2017, I electronically filed the foregoing with the Clerk of Court using the ECF system, which sent notification of such filing to all counsel of record.

                                          */s/ Mathew Schutzer*
                                          Mathew Schutzer (NY Bar #5136007)