IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Plaintiff, | : | |
| | : | Civil Action No. |
| v. | : | 3:16-CV-622-CWR-FKB |
| | : | |
| STATE OF MISSISSIPPI, | : | |
| | : | |
| Defendant. | : | |

**UNITED STATES' RESPONSE TO DEEFENDANT'S MOTION FOR A CASE MANAGEMENT ORDER**

The State's proposal for 50 Fed. R. Civ. P. 34 Requests for the Production of Documents ("RPDs") and 45 Fed. R. Civ. P. 36 Requests for Admission ("RFAs"), ECF No. 31 ("State Mot."),[1] is inadequate because it does not sufficiently account for the complexity of this case and is inconsistent with the number of RPDs served in similar litigation governed by the same rules. For the reasons set forth in the United States' Memorandum, ECF No. 30 ("U.S. Mem.") and below, the Court should grant the United States' Motion, deny the State's Motion, and enter a Case Management Order permitting each Party to propound 150 RPDs and 45 RFAs.

    I.    *The Legal Elements of an Olmstead Claim are Fact-Intensive and Require Extensive Discovery*

The State is correct that the United States has asserted one cause of action under Title II of the ADA. State Mot. at 2.[2] That claim, and the associated affirmative defense, are complex

---

[1] The Parties appear to be in agreement regarding the appropriate number of RFAs. Although the United States at one point during the Parties' negotiations took the position that RFAs addressing admissibility of documents should be unlimited, it did not advance that position in its Motion.

[2] The State correctly summarizes the three-part framework set forth in *Olmstead*, State Mot. at 2, except in one critical respect. The *Olmstead* court phrased the first part of this framework as dependent on the State's treatment professionals' assessment of whether an individual was appropriate for community-

1

and fact-intensive.  U.S. Mem. at 4-6.  Embedded within this Title II claim are questions about which of the State's policies and procedures must be modified to avoid institutionalization.  *See* 28 C.F.R. § 35.130(b)(7) ("a public entity *shall* make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability") (emphasis added); *see also Steward v. Janek*, 315 F.R.D. 472, 481 (W.D. Tex. 2016) (recognizing that Texas's "scheme of administering" parts of its Medicaid program could violate Title II); *Kenneth R. v. Hassan*, 293 F.R.D. 254, 267 (D.N.H. 2013) (plaintiff class's claims required resolution of common questions like "whether there is a systemic deficiency in the availability of community-based services, and whether that deficiency follows from the State's policies and practices"); *Disability Advocates, Inc. v. Paterson*, 598 F. Supp. 2d 289, 317-18 (E.D.N.Y. 2009) (an *Olmstead* claim "concerns a public entity's obligation to make reasonable modifications to its service system to enable individuals with disabilities to receive services in the most integrated setting appropriate to their needs").  Answering these questions requires significant discovery into the policy choices available to the State and the implications (fiscal and otherwise) of certain choices over others.  Given the scope of this single claim, 150 RPDs is appropriate.

---

based placement.  *Olmstead v. L.C.*, 527 U.S. 581, 607 (1999).  This is because under the particular facts of *Olmstead* the plaintiffs' treating professionals also happened to be the State's treatment professionals. *Id.* at 593-94.  However, plaintiffs proceeding under Title II are entitled to rely on evidence of appropriateness for community-based services other than the judgment of the State's professionals.  *See, e.g.*, *Joseph S. v. Hogan*, 561 F. Supp. 2d 280, 290-91 (E.D.N.Y. 2008).  To limit the inquiry to only the State's own judgment would enable states to deny the right to live in integrated settings "simply by refusing to acknowledge that the individual could receive appropriate care in the community."  *Long v. Benson*, No. 08-cv-26, 2008 WL 4571904, at *2 (N.D. Fla. Oct. 14, 2008); *see also Frederick L. v. Dep't of Pub. Welfare*, 157 F. Supp. 2d 509, 540 (E.D. Pa. 2001) ("*Olmstead* does not allow States to avoid the integration mandate by failing to require professionals to make recommendations regarding the service needs of institutionalized individuals with mental disabilities").

> II.     The Adequate Number of RPDs in this Case is Appropriately Informed by the Number of RPDs Actually Served in Similar Cases

In its Memorandum, the United States described two statewide *Olmstead* lawsuits in which it has participated where the number of RPDs propounded by the plaintiffs and the United States has exceeded the number of RPDs requested by the United States in this Matter.  *See* U.S. Mem. at 6-7 (describing discovery in *Kenneth R.* and *Steward*).  The State's argument that the Court's Case Management Order should not be informed by the discovery in these two cases is misguided for three reasons.

First, there is no reason to ignore discovery that took place before the 2015 amendments to the Federal Rules.  As the United States demonstrated, U.S. Mem. at 6 n.5, the 2015 Amendments did not change the burden regarding proportionality in discovery.  *Id.*; *see also Vaigasi v. Solow Mgmt. Corp.*, No. 11-cv-5088, 2016 WL 616386, at *13 (S.D.N.Y. Feb. 16, 2016) (although proportionality "has become the new black in discovery litigation," "the 2015 Amendments constitute a reemphasis on the importance of proportionality in discovery but not a substantive change in the law") (internal citations and quotations omitted).  Cases decided or filed before the 2015 amendments became effective were and are governed by the same proportionality rules and are just as informative as those decided or filed after the 2015 amendments.  *Cf. Odeh v. City of Baton Rouge*, No. 14-cv-793, 2016 WL 1069663, at *1 n.1 (M.D. La. Mar. 17, 2016) (applying amended Rule 26 to motion to compel in lawsuit commenced before 2015 amendments in light of "restorative" nature of the amendments).

Second, the Court cannot and should not have to determine an appropriate number of RPDs in a vacuum.  These cases represent concrete illustrations of the balancing of the case-specific factors the Court and the Parties are instructed to take into account by Rule 26(b)(1).

Determining the outer limits of RPDs without reference to how cases like the one at bar are in fact prosecuted risks imposing wholly arbitrary limits on RPDs.

Finally, for these purposes, it is irrelevant that in *Steward* and *Kenneth R.* the United States was (and is) prosecuting its case in intervention alongside a class action. The elements and framework of a Title II integration mandate claim are not dependent on the procedural vehicle used to advance the claim. *See, e.g.*, *Kenneth R.*, 293 F.R.D. at 263 (agreeing with the United States that scope of discovery was not dependent on existence of a certified class).

## CONCLUSION

Because the above arguments are succinct, the United States respectfully asks to be relieved of its obligation pursuant to L.U.Civ.R. 7(b)(4) to file a separate memorandum in support of this Response.

Accordingly, the United States hereby requests that the Court grant its Motion, deny the State's Motion, and enter a Case Management Order permitting each Party to serve up to 150 RPDs and 45 RFAs without further leave of Court.

Respectfully submitted,

| | |
|---|---|
| HAROLD BRITTAIN<br>Acting United States Attorney<br>Southern District of Mississippi | T.E. WHEELER, II<br>Acting Assistant Attorney General<br>Civil Rights Division |
| MITZI DEASE PAIGE<br>Chief, Civil Division<br>Assistant United States Attorney | REBECCA BOND<br>Acting Deputy Assistant Attorney General<br>Civil Rights Division |
| | STEVEN H. ROSENBAUM<br>Chief<br>Special Litigation Section |
| | REGAN RUSH<br>Deputy Chief<br>Special Litigation Section |
| Date:  June 1, 2017 | */s/  Mathew Schutzer* _____<br>MATHEW SCHUTZER [NY Bar #5136007]<br>C. ADRIENNE MALLINSON<br>DEENA FOX<br>PATRICK HOLKINS<br>Trial Attorneys<br>Special Litigation Section<br>Civil Rights Division<br>U.S. Department of Justice<br>950 Pennsylvania Avenue, N.W. - PHB<br>Washington, DC  20530<br>Telephone: (202) 616-3179<br>Mathew.Schutzer@usdoj.gov<br><br>*Counsel for the United States* |

## CERTIFICATE OF SERVICE

     I hereby certify that on June 1, 2017, I electronically filed the foregoing with the Clerk of Court using the ECF system, which sent notification of such filing to all counsel of record.

                                        */s/ Mathew Schutzer*_____
                                        Mathew Schutzer (NY Bar #5136007)