IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | PLAINTIFF |
| V. | CIVIL ACTION NO.: 3:16-CV-00622-CWR-FKB |
| THE STATE OF MISSISSIPPI | DEFENDANT |

## THE STATE OF MISSISSIPPI'S REPLY BRIEF REGARDING RULE 4.2

This Court should deny Plaintiff's Motion for Order Regarding the Application of Mississippi Rule of Professional Conduct 4.2 (Dkt. 62). Plaintiff's Rule 4.2 Brief makes the following points clear.

Current Employees. Many courts, including a federal Circuit Court of Appeals, hold that the admissions prong of Rule 4.2 extends to anyone whose statement might be admissible as the statement of an opposing party under Fed. R. Evid. 801(d)(2)(D). This Court should adopt that rule.

Chancery Judges. Plaintiff should be prohibited from having any ex parte communications with chancery judges regarding the subject matter of this action because Plaintiff admits in its Rule 4.2 Brief that it intends to question the judges regarding the commitment orders they issued. Questioning a judge regarding an order he or she issues plainly brings the judge within the scope of Rule 4.2 when the defendant organization is the State that employs the judge.

Former Employees. Plaintiff should be prohibited from having ex parte communications with any former State employee whose past acts or omissions regarding the subject matter of this action may be imputed to the State. This rule is established in Mississippi by *Colborn v. Hardee's Food Systems, Inc.*, 2010 WL 4338353 (N.D. Miss. Oct. 27, 2010). Arizona and Michigan also follow that rule.

PD.23571493.1

I.   **The Represented Party Is The State Of Mississippi.**

Plaintiff devotes nearly three pages of its brief to the "scope of representation."[1] Plaintiff makes the snarky comment that "the State has taken an ever-changing view of the scope of its representation and the application of Rule 4.2."[2] Plaintiff is being disingenuous. Under Rule 4.2, when the party is an organization, the organization is the represented party. In this case, the defendant organization is the State of Mississippi, and that is who we represent. For purposes of Rule 4.2, that representation includes all employees of the State who are within the scope of Rule 4.2.

The question of how Rule 4.2 should apply to employees of an organization "has been the subject of vigorous debate, with different authorities advocating interpretations ranging from a complete ban on any contact with the opponent's employees, to a restrictive interpretation allowing contact with all but the most senior managers, to a variety of functional tests that focus on the employee's role in the events giving rise to the lawsuit." *Weibrecht v. Southern Illinois Transfer, Inc.*, 241 F.3d 875, 881 (7th Cir. 2001).

Without even so much as acknowledging that there are a number of authorities to the contrary, Plaintiff has cherry picked the case law to find interpretations of Rule 4.2 that it hopes will convince this Court to allow it to communicate ex parte with virtually all State employees. In interpreting the scope of Rule 4.2 in this case, the Court should take into account that Plaintiff is attacking the State's mental health system as a whole under a very broad Complaint.

In its Rule 4.2 Brief, Plaintiff posits three different tests for the scope of Rule 4.2 in this case as follows:

- Current employees "charged with design, funding, and oversight responsibilities for the State's mental health system."[3]

---

[1] Dkt. 63, pp. 3-6.
[2] Dkt. 63, p. 3.
[3] Dkt., 63, p. 2.

- "Current DOM and DMH (Including State Hospitals) management and leadership and their immediate staff who design and administer services for individuals with mental illness."[4]

- Current employees charged with "developing, funding, or overseeing the State's community mental health system."[5]

Plaintiff effectively concedes that (i) all of the individuals listed in the three bullet points above are within the scope of Rule 4.2, and (ii) all of these individuals are within the scope of our representation of the State.

## II. Current Employees.

Plaintiff asserts that there are two issues regarding current employees. First, whether the admissions prong of Rule 4.2 extends to anyone whose statement might be admissible as a statement of an opposing party under Fed. R. Evid. 801(d)(2)(D).[6] Second, whether chancery judges are properly considered within either the admissions or imputation prongs of Rule 4.2.[7] These two issues are addressed separately below.

### A. The admissions prong.

Plaintiff cites an Opinion of the Alabama State Bar Association (Opinion) for the proposition that the admissions prong is limited to current "employees who have authority on behalf of the organization to make decisions about the course of the litigation."[8] It appears that no court has ever cited this Opinion. This rule makes little sense because it makes the "admissions" prong essentially the same as the "managerial responsibility" prong. Such a rule also ignores the employee's role in the events giving rise to the litigation.

---

[4] Dkt. 63, p. 10.
[5] Dkt. 62, p. 12.
[6] Dkt. 63, p. 11.
[7] Dkt. 63, p. 11.
[8] Dkt. 63, p. 11.

3

Plaintiff cites *Messing, Rudavsky & Weliky, P.C. v. Presidents & Fellows of Harvard College*, 764 N.E.2d 825, 833 (Mass. 2002),[9] in support of its extremely narrow interpretation of the admissions prong, but *Messing* never mentions the Opinion.[10] Instead, *Messing* notes that courts have adopted three different tests for the admissions prong, and then adopts a fourth test.

*Messing* notes that some courts "have adopted a broad reading of the rule." *Messing*, 764 N.E. at 832. These courts read the word "admission" in the admissions prong of Rule 4.2 "as a reference to Fed. R. Evid. 801(d)(2)(D) and any corresponding State rule of evidence." *Id.* (citation omitted).

*Messing* next notes that, "[a]t the other end of the spectrum, a small number of jurisdictions has interpreted the rule narrowly so as to allow an attorney for the opposing party to contact most employees of a represented organization. These courts construe the rule to restrict contact with only those employees in the organization's 'control group,' defined as those employees in the uppermost echelon of the organization's management." *Id.* (citations omitted).

*Messing* further notes that "[o]ther jurisdictions have adopted yet a third test that, while allowing for some ex parte contacts with a represented organization's employees, still maintains some protection of the organization. The Court of Appeals of New York articulated such a rule in *Niesig v. Team I*, 76 N.Y.2d 363, 559 N.Y.S.2d 493, 558 N.E.2d 1030 (1990), rejecting an approach that ties the rule to Fed. R. Evid. 801(d)(2)(D). Instead, the court defined a represented person to include 'employees whose acts or omissions in the matter under inquiry are binding on

---

[9] Dkt. 63, p. 11.
[10] Plaintiff alleges that "a nurse who treats patients at a State Hospital, a budget analyst at DOM, and the chancery judges are too far removed from the decision making at issue in this case to fall within Rule 4.2" (Dkt. 63, p. 10). This analysis is far too superficial. A nurse who treats patients in a State Hospital is within the scope of Rule 4.2 if, for example, Plaintiff alleges she administered mental health services improperly, or if her statements constitute admissions by the State. Plaintiff concedes that current employees who "administer services for individuals with mental illness" are within the scope of Rule 4.2 (Dkt. 63, p. 10). Similarly, a budget analyst is within the scope of Rule 4.2 if her actions could be imputed to the State or if her statements constitute admissions by the State, as the "subject matter at-issue" in this litigation involves budgeting and financial issues regarding the State's adult mental health services. *See* Dkt. 1, Plaintiff's Complaint, ¶¶ 16, 39, 76, 93, 95-96, and 98-99. Chancery judges are addressed separately below.

4

the corporation ... or imputed to the corporation for purposes of its liability, or employees implementing the advice of counsel.' *Id.* at 374, 559 N.Y.S.2d 493, 558 N.E.2d 1030. Other jurisdictions have subsequently adopted the *Niesig* test." *Id.* at 832-33.

The *Messing* court rejected all three of these tests and adopted a fourth test. "We instead interpret the rule to ban contact only with those employees who have the authority to 'commit the organization to a position regarding the subject matter of representation.'" *Id.* at 833. In other words, Plaintiff cited the one case that comes closest to adopting the interpretation it favors. As *Messing* itself shows, its interpretation is distinctly in the minority. The *Messing* court explicitly acknowledged the novelty of its test, explaining that the test "is a retrenchment from the broad prohibition on employee contact endorsed by the comment" to Rule 4.2. *Id.*

The word "admission" has a distinct legal meaning - *i.e.*, "confessions, concessions or voluntary acknowledgements made by a party of the existence of certain facts. More accurately regarded, they are statements by a party, or some one identified with him in legal interest, of the existence of a fact which is relevant to the cause of his adversary." BLACK'S LAW DICTIONARY, p. 44 (5th ed. 1979). This interpretation is consistent with finding that the word "admissions" in Rule 4.2 is coextensive with Fed. R. Evid. 801(d)(2)(D).

It appears that the only federal Circuit Court of Appeals that has interpreted the admissions prong has found that the word "admission" in Rule 4.2 refers to admissions within the meaning of Fed. R. Evid. 801(d)(2)(D). *Weibrecht*, 241 F.3d at 883. This Court should adopt the *Weibrecht* test. This is the better test because it takes into account the employee's role in the events giving rise to the lawsuit. But even if this Court does not adopt this test, it should stop well short of the extremely narrow test favored by Plaintiff, and adopt the intermediate *Niesig* test discussed above.

5

PD.23571493.1

B.  Chancery judges.

Plaintiff concedes that "[c]hancery judges have jurisdiction over, *inter alia*, commitments of individuals with mental illness to the State Hospitals. Miss. Code Ann. § 41-21-63. In adjudicating commitment orders, chancery judges are statutorily required to consider whether a less restrictive alternative is available. Miss. Code Ann. § 41-21-73. The judges thus have front row seats to observe the State's failure to make the less restrictive alternatives available as a viable option, but are not the actors charged with developing, funding, or overseeing those options."[11]

This shows that Plaintiff intends to question the chancery judges regarding the "adjudication" of their commitment orders – *i.e.*, whether they committed an individual to the least restrictive alternative, what alternatives they considered, and what other alternatives they would consider when Plaintiff suggests such alternatives to them. It could also potentially impact the State's liability if, in questioning a chancery judge, a less restrictive alternative was available, but the judge did not consider it. This is effectively an indirect collateral attack on the chancery judges' commitment orders via ex parte interviews. That Plaintiff wishes to question the chancery judges regarding the "adjudication" of their commitment orders is all this Court should need to hear to prohibit ex parte communications with the chancery judges.

Because it is undisputed that the State represents chancery judges, at a minimum, the chancery judges are entitled to have counsel present when they are questioned about their commitment orders by Plaintiff, a party adverse to the State in this action.

Plaintiff alleges that *Kenny A. ex rel Winn v. Perdue*, 218 F.R.D. 277 (N.D. Ga. 2003), "is instructive and illustrative." *Perdue* supports the State's position that Plaintiff should not be permitted to communicate ex parte with the chancery judges. In *Perdue*, nine foster children in

---

[11] Dkt. 62, p. 12.

the custody of the Georgia Department of Human Resources sued on behalf of a class of Fulton and DeKalb County foster children. *Id.* at 283. They alleged systemic deficiencies in foster care in Fulton and DeKalb Counties. *Id.* Fulton County filed a motion for a protective order to prohibit plaintiffs' counsel from communicating with Fulton County juvenile court judges. *Id.* at 284.

In analyzing Rule 4.2, the court found that the juvenile court judges did not have managerial responsibility because the vast majority of plaintiffs' claims were asserted only against the State Defendants, and not against Fulton County. *Id.* at 304. Here, all claims are asserted against the State.

The *Perdue* court next considered whether the actions of the juvenile court judges could be imputed to Fulton County, or whether they could make binding admissions on the part of the County. *Id.* The court found they could not: "Plaintiffs' sole claim against Fulton County regards the adequacy of representation provided by the County to children in juvenile court proceedings. This claim relates to the alleged systemic failure of Fulton County, at the executive level, to ensure that there are a sufficient number of child advocate attorneys to provide adequate and effective representation to children in deprivation proceedings. Although juvenile court judges have some statutory authority to appoint child advocate attorneys in individual cases, they have no authority to affect the number of child advocate attorneys available or to ensure that the number of child advocate attorneys employed by the County is adequate to meet the needs of the children requiring representation .... [B]ecause the decisions plaintiffs challenge rest with executive officials, and not with individual juvenile court judges, Judge Jones's acts and omissions with respect to these decisions could not be imputed to the County, and his statements regarding these issues could not be considered binding admissions." *Id.* at 304-05.

7

PD.23571493.1

In this case, Plaintiff concedes in its Rule 4.2 Brief that its claims go well beyond decisions that "rest with executive officials." In *Perdue*, plaintiffs did not intend to question the juvenile court judges regarding their orders. Here, Plaintiff intends to question the chancery judges regarding their commitment orders. In *Perdue*, the juvenile court judges had no statutory authority "to affect the number of child advocate attorneys available or to ensure that the number of child advocate attorneys employed by the County is adequate to meet the needs of the children requiring representation." Here, the chancery judges have exclusive statutory authority regarding civil commitments to the State Hospitals, which, by law, involves determinations regarding whether the State Hospitals are the least restrictive alternative available. In *Perdue*, "decisions plaintiffs challenge rest with executive officials, and not with individual juvenile court judges." Here, the decision to civilly commit an individual lies exclusively with chancery judges, and not an "executive official."

The key to *Perdue* is that the court permitted ex part communications with the juvenile court judges only because it concluded that (i) the judges' actions could not be imputed to the County, and (ii) their statements could not be considered binding admissions. *Id.* at 305. To the extent, if any, that this Court permits Plaintiff to communicate ex parte with the chancery court judges, the Court should order that any alleged acts or omissions by the chancery judges cannot be imputed to the State, and that any statements made by the chancery judges do not constitute an admission on the part of the State.

This is necessary because Plaintiff cannot have it both ways. It cannot claim that it should be permitted to communicate ex parte with the chancery court judges because their alleged acts or omissions cannot be imputed to the State and their statements do not constitute an admission on the part of the State, and then later claim otherwise. If Plaintiff later claimed

8

PD.23571493.1

In this case, Plaintiff concedes in its Rule 4.2 Brief that its claims go well beyond decisions that "rest with executive officials." In *Perdue*, plaintiffs did not intend to question the juvenile court judges regarding their orders. Here, Plaintiff intends to question the chancery judges regarding their commitment orders. In *Perdue*, the juvenile court judges had no statutory authority "to affect the number of child advocate attorneys available or to ensure that the number of child advocate attorneys employed by the County is adequate to meet the needs of the children requiring representation." Here, the chancery judges have exclusive statutory authority regarding civil commitments to the State Hospitals, which, by law, involves determinations regarding whether the State Hospitals are the least restrictive alternative available. In *Perdue*, "decisions plaintiffs challenge rest with executive officials, and not with individual juvenile court judges." Here, the decision to civilly commit an individual lies exclusively with chancery judges, and not an "executive official."

The key to *Perdue* is that the court permitted ex part communications with the juvenile court judges only because it concluded that (i) the judges' actions could not be imputed to the County, and (ii) their statements could not be considered binding admissions. *Id.* at 305. To the extent, if any, that this Court permits Plaintiff to communicate ex parte with the chancery court judges, the Court should order that any alleged acts or omissions by the chancery judges cannot be imputed to the State, and that any statements made by the chancery judges do not constitute an admission on the part of the State.

This is necessary because Plaintiff cannot have it both ways. It cannot claim that it should be permitted to communicate ex parte with the chancery court judges because their alleged acts or omissions cannot be imputed to the State and their statements do not constitute an admission on the part of the State, and then later claim otherwise. If Plaintiff later claimed

imputation or that the chancery judges statements were admissions, then Plaintiff would have necessarily violated Rule 4.2 in having ex parte communications with the chancery judges.

**III.     Former Employees.**

Plaintiff alleges that the "State's reliance on *Colborn v. Hardee's Food Systems, Inc.*, No. 2:10-cv-59, 2010 WL 4338353 (N.D. Miss. Oct. 27, 2010), is misplaced."[12] Plaintiff further alleges that Colborn "ignores clear authority" and is a "notable outlier in Mississippi."[13] Plaintiff is incorrect.

No Mississippi case other than *Colborn* directly addresses whether the imputation prong extends to former employees whose acts or omissions could be imputed to the defendant organization. And, as explained in the State's original Rule 4.2 Brief,[14] other states have taken a similar approach regarding former employees. *See, e.g., Lang v. Superior Court, In and For Cty. of Maricopa*, 826 P. 2d 1228, 1233 (Ariz. Ct. App.), *Serrano v. Cintas Corp.*, 2009 WL 5171802 at *4 (E.D. Mich. Dec. 23, 2009). *Colborn*, *Lang*, and *Serrano* are not "notable outliers."[15]

They are cases which have directly addressed whether the imputation prong extends to former employees whose acts or omissions could be imputed to the defendant organization. *Colborn*, *Lang*, and *Serrano* all found that if the alleged acts or omissions of a former employee could be imputed to the organization, then Rule 4.2 prohibits ex parte communications with them. This Court should follow *Colborn*, *Lang*, and *Serrano*, and adopt this rule.

---

[12] Dkt. 63, p. 8.
[13] Dkt. 63, p. 8.
[14] Dkt. 64, pp. 8-10.
[15] Plaintiff alleges that the "State cannot have it both ways, rejecting deposition notices for former employees such as Dr. McGinnis and Ms. Regan, but at the same time asserting that they should be deemed 'represented' for purposes of Rule 4.2 because of the roles they formerly held within the State." (Dkt. 63, p. 10. n. 11). Plaintiff is confused. Nothing in the Federal Rules of Civil Procedure requires the State to produce any current or former employees pursuant to a notice of deposition. If it elected to do so, the State would be fully within its rights to insist that Plaintiff subpoena current and former employees to depositions. As a courtesy, the State has been producing current employees pursuant to notices of deposition. Plaintiff has stated it will not reciprocate this courtesy.

9

Additionally, and perhaps recognizing the flaws in its previous argument, Plaintiff attempts to make a policy argument that "[a]dopting the State's position would render null the 'time-honored and decision-honored' principle that 'counsel for all parties have a right to interview an adverse party's witnesses (the witness willing) in private without the presence or consent of opposing counsel and without a transcript being made,'"[16] citing *Int'l Bus. Machines Corp v. Edelstein*, 526 F.2d 37, 42 (2d. Cir.1975). Yet *Edelstein* makes no mention of Rule 4.2 or former employees. Instead, *Edelstein* found only that a trial judge's order placing interview restrictions on an adverse party's witnesses was improper. *Id.* at 42. Therefore, it has no bearing on the Rule 4.2 issues.

## IV. Disclosure Of Persons Interviewed.

There is a split of authority regarding whether identifying the individuals a party interviews would reveal work product. Plaintiff cites only those cases which support its position.[17] As shown in the State's original Rule 4.2 Brief, there are many cases which disagree, and find that identifying the individuals a party interviews does not violate the work product doctrine.[18] *See e.g., Castle v. Sangamo Weston, Inc.*, 744 F.2d 1464, 1467 (11th Cir. 1984); *Brody v. Zix Corp.*, 2007 WL 1544638 at *1-2 (N.D. Tex. May 25, 2007); *Alexander v. F.B.I.*, 19 F.R.D. 12, 18-19 (D.D.C. 2000).

## Relief Requested

Plaintiff's Motion for Order Regarding the Application of Mississippi Rule of Professional Conduct 4.2 (Dkt. 62) should be denied.

This, the 20th day of April 2018.

---

[16] Dkt. 63, p. 9
[17] Dkt. 63, p. 6, n. 8.
[18] Dkt. 64, pp. 10-11.

Respectfully submitted,

PHELPS DUNBAR LLP


BY: /s/ *James W. Shelson*
    Reuben V. Anderson, MB 1587
    W. Thomas Siler, MB 6791
    James W. Shelson, MB 9693
    Nicholas Morisani, MB 104970
    4270 I-55 North
    Jackson, Mississippi 39211-6391
    Post Office Box 16114
    Jackson, Mississippi 39236-6114
    Telephone: 601-352-2300
    Telecopier: 601-360-9777
    Email: andersor@phelps.com
           silert@phelps.com
           shelsonj@phelps.com
           nicholas.morisani@phelps.com

    Harold Pizzetta, III, MB 99867
    Assistant Attorney General
    General Civil Division
    Walter Sillers Building
    550 High Street
    Jackson, MS 39201
    Telephone: 601-359-3816
    Telecopier: 601-359-2003
    Email: HPIZZ@ago.state.ms.us

    Mary Jo Woods, MB 10468
    Special Assistant Attorney General
    Mississippi Attorney General's Office
    Walter Sillers Building
    550 High Street
    Jackson, MS 39201
    Telephone: 601-359-3020
    Telecopier: 601-359-2003
    Email: MWOOD@ago.state.ms.us

Attorneys for the State of Mississippi

## CERTIFICATE OF SERVICE

I certify that on April 20, 2018, I electronically filed this document with the Clerk of the Court using the ECF system, which sent notification of such filing to all ECF counsel of record in this action.

/s/ *James W. Shelson*
JAMES W. SHELSON