IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | PLAINTIFF |
| V. | CIVIL ACTION NO.: 3:16-CV-00622-CWR-FKB |
| THE STATE OF MISSISSIPPI | DEFENDANT |

THE STATE OF MISSISSIPPI'S MEMORANDUM IN SUPPORT OF
MOTION TO COMPEL RULE 30(b)(6) DEPOSITION OF PLAINTIFF

Introduction

The State of Mississippi's Motion to Compel[1] Plaintiff to produce one or more representatives to testify regarding the Topics in the State's FRCP 30(b)(6) Notice[2] should be granted for the following reasons:

- The Topics seek relevant information.

- The Topics are proportional to the needs of the case.

- The 30(b)(6) deposition of Plaintiff is not equivalent to deposing a lawyer.

- Plaintiff's Rule 30(b)(6) obligations are not limited to the United States Department of Justice (DOJ), but instead extend to all federal agencies who have relevant information regarding the Topics in their custody, control, or possession.

- That other discovery tools, such as the production of documents, may contain information regarding the Topics does not preclude a 30(b)(6) deposition regarding those Topics.

**I.     Relevance.**

FRCP Rule 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case …." When addressing discovery matters, "[t]he Fifth Circuit has traditionally adhered to a broad and liberal treatment." *Jackson Mun. Airport Auth. v. Bryant*, No. 3:16-cv-

---

[1] Dkt. 92, State's Motion to Compel.
[2] Dkt. 91, State's Rule 30(b)(6) Notice, pp. 4-6.

246, 2017 WL 6520967, at *2 (S.D. Miss. 2017). Relevancy in discovery matters should be broadly construed to "encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Nevada Partners Fund, LLC v. U.S.*, 2008 WL 2484198 at *4 (S.D. Miss. 2008). The Topics in the State's 30(b)(6) Notice are relevant as shown below.

Topic 1. This Topic is Plaintiff's responses to Interrogatory Nos. 4, 5, 6, and 7. Plaintiff's discovery responses are relevant.

Topic 2. This Topic is the relief Plaintiff is seeking in this action and the cost of any such relief. The relief sought by a plaintiff in a lawsuit is always relevant.

Topic 3. This Topic is the standards or criteria DOJ used to determine that the community based mental health services or programs Mississippi is providing for adults with SMI are allegedly inadequate or insufficient. This Topic is relevant because it concerns an element of Plaintiff's proof in this lawsuit.

Topic 4. This Topic is the standards or criteria DOJ used to determine that Mississippi's funding of the community based mental health services or programs Mississippi is providing for adults with SMI is allegedly inadequate or insufficient. This Topic is relevant because it concerns an element of Plaintiff's proof in this lawsuit. It is also relevant to the State's fundamental alteration defense. *Olmstead* allows for a fundamental alteration defense and funding is a key consideration in that defense. The Supreme Court noted that the State's responsibility, once it provides community-based treatment to qualified persons with disabilities, is not boundless. "[T]he fundamental-alteration component of the reasonable-modifications regulation would allow the State to show that, in the allocation of available resources, immediate relief for the plaintiffs would be inequitable, given the responsibility the State has undertaken for

the care and treatment of a large and diverse population of persons with mental disabilities." *Olmstead v. L.C.*, 527 U.S. 581, 604 (1999).

Topic 5. This Topic is barriers to the provision of community based services or programs for adults with SMI, and whether Plaintiff contends that any of those barriers are unique to or exist only in Mississippi. Plaintiff's experts repeatedly claim that Mississippi does not provide "reasonable community-based services." This Topic is relevant regarding what constitutes "reasonable community-based services." Plaintiff's Complaint contains approximately fifty references to community-based services or treatment.[3]

Topic 6. Topic 6 is the ISMICC Report dated December 13, 2017(Exh. 1). The State has identified the pages, sections, and bullet points in the ISMICC Report that it intends to inquire about as follows:

- Chapter 1, pages 11-20. These pages are relevant for a number of reasons. First, they are relevant regarding what constitutes "reasonable community-based services." Second, they are relevant to the State's fundamental alteration defense. In its Complaint, Plaintiff repeatedly alleges that community-based care costs less than state hospital care.[4] Third, they show that things that Plaintiff's experts fault Mississippi for – e.g., shortages of mental professionals, psychiatric crisis response capacity, unemployment, and homelessness – are national problems that are not unique to Mississippi. Fourth, Plaintiff's experts opine that Mississippi over-relies of state inpatient beds, but page 16 of the ISMICC Report shows that few states have adequate numbers of inpatient beds to meet needs.

- Chapter 2:

  - Section entitled, "Substance Abuse and Mental Services Administration: Support for Advances to Address Challenges of SMI and SED," pages 44-46 (but nothing concerning SED). This section is relevant regarding what constitutes "reasonable community-based services." "Only 2 percent of public mental health clients have access to effective therapeutic approaches such as cognitive behavioral therapy …. Of the 70 percent of people with SMI who are unemployed and want to work, only 2 percent receive evidence-based supported employment."[5]

---

[3] Dkt 1, Plaintiff's Complaint, ¶¶ 2, 7, 1, 13-16, 28, 37, 61, 68-70, 74-77, 80, 93, 96, 98-99, 101-102, 104-107, 113, 118-119, 122.
[4] Dkt 1, Plaintiff's Complaint, ¶¶ 16, 39, 76, 95, 96, 98-99.
[5] Exh 2, ISMICC Report, p. 45.

3

- Section entitled, "Department of Justice: Support of Advances to Address Challenges of SMI and SED," pages 47-50 (but nothing concerning SED). Plaintiff's experts fault Mississippi for its handling of people with SMI in jails and for not having mental health courts. This section is relevant because it shows that these issues are not unique to Mississippi, it concerns what constitutes "reasonable community-based services," and it shows the federal system is not utilizing mental health courts to any significant degree. Plaintiff's Complaint makes several allegations regarding jails.[6]

- Section entitled, "Key Advances in the Clinical Care of People With SMI and SED," pages 52-54 (but nothing concerning SED). This section "emphasized the need for partnerships of the federal, state, local, and private sectors to achieve progress. This effort requires ongoing attention to engagement and a continuum of integrate care that includes evidence-based pharmacologic treatment, recovery support and a person-centered approach."[7] As much as Plaintiff would like to isolate Mississippi's mental health care system, this section shows that the mental health continuum of care involves the federal and state sectors. This recognition is relevant to this lawsuit.

- Section entitled, "Disparities and Closing the Treatment Gap," pages 54-55. This section addresses "the difficulty of people accessing care – the treatment gap – especially for traditionally underserved populations. National data on the treatment gap reveals that 50 to 90 percent of those in need of mental health treatment are not receiving services."[8] This section is relevant because it shows that the treatment issues Plaintiff is faulting Mississippi for are national issues, and that the federal government has a role in both the existence of the treatment gaps and in closing those gaps.

- Section entitled, "The Challenges and Opportunities for Improving the System That Supports the Care of People With SMI and SED," pages 55-57 (but nothing concerning SED). This section notes "that most people with SMI have approximately three or four behavioral health disorders and three or four physical health disorders. They often have deficits in memory, concentration, executive functioning, and ability to organize information."[9] This information regarding people with SMI, which is the population at issue, is relevant in this lawsuit.

    This section further states that "there is a lack of resources to address the needs of people with SMI and SED in crisis. Generally, the availability and quality of treatment and services vary by state and community."[10] This is relevant to what constitutes "reasonable community-based

---

[6] Dkt 1, Plaintiff's Complaint, ¶¶ 53, 56, 78, 95, 114.
[7] Exh 2, ISMICC Report, p. 52.
[8] Exh 2, ISMICC Report, p. 54.
[9] Exh 2, ISMICC Report, p. 56.
[10] Exh 2, ISMICC Report, p. 56.

4

services," the State's fundamental alteration defenses, and that one of the things that Plaintiff's experts fault Mississippi for – e.g., alleged insufficient crisis services – is a national issue that is not unique to Mississippi. Plaintiff's Complaint references crisis, crisis services, crisis stabilization units, and mobile crisis approximately sixteen times.[11]

This section also states that the "psychiatric shortage is particularly severe. Reports indicate a shortage of available psychiatric treatment, with hospitals closing beds or not providing care due to financial loss."[12] This information is relevant because it shows that the psychiatric shortage is not unique to Mississippi, and that, although Plaintiff's experts opine that Mississippi over-relies on state inpatient beds, hospitals closing beds is actually indicative of a shortage of available psychiatric treatment.

- Chapter 3:

  - Paragraphs 2 and 3 on page 61. Paragraph 2 of page 61 is relevant because it states that it will take five years for "federal interdepartmental leadership to build shared accountability for a system that provides the full range of treatments and supports needed by individuals and families living with SMI and SED." The federal government bears significant responsibility for the fact that such a national system does not exist now, and the federal deficiencies impede the ability of the states to deliver community-based services in the arbitrary manner that the federal government wants them delivered. Paragraph 3 is relevant because it acknowledges that fixing the federal deficiencies "will be a challenging undertaking," and that "it will require partnerships with all levels of government and a diverse array of other stakeholders. Mental health care is not solely a federal responsibility; but rather one shared across federal, state, tribal, and local governments; private insurers; diverse provider organizations; advocates; caregivers, families; and people with SMI and SED."

  - Page 63 of the section "Direct and Indirect Levers of Federal Influence" and the following bullet points in that section:

    - Medicare, TRICARE, and the Indian Health Service (page 64). This bullet points states that "[m]aking their policies and programs more effective at addressing the needs of people with SMI and SED could have widespread benefits, particularly through the Medicare program because of its great reach." The concession that Medicare must reform its policies and procedures to make them more effective at addressing the needs of people with SMI is relevant.

---

[11] Dkt 1, Plaintiff's Complaint, ¶¶ 14, 50, 53, 70, 75, 77-79, 101, 114.
[12] Exh 2, ISMICC Report, p. 56.

- • Social Security disability programs (pages 64-65). The relationship between SSDI and SSI, on the one hand, and Medicare or Medicaid eligibility, on the other hand, is relevant.

- • The section "The ISMICC Role in Evaluating Federal Programs and Enhancing Coordination to Improve Outcome on pages 66-69, including the following "common evaluation questions":  1, 2, 3, 4, 5, and 9.  This section is relevant because these common evaluation questions show that there are deficiencies in the federal mental health system and that these deficiencies impact the states.

  Page 67 of the ISMICC Report concedes that funding for mental health services is "a universally important consideration that may be difficult to address."  Funding is relevant to several issues in this case, including what constitutes "reasonable community-based services," and the State's fundamental-alteration defense.

- • Chapter 4 – the following recommendations:

  - • 1.5.  This recommendation is relevant because it addresses the federal approach to servicing people with SMI, and it candidly recognizes the need to "[i]dentify areas where the federal government is failing to meet the needs of people with SMI."

  - • 2.1.  This recommendation is relevant because it acknowledges (i) that there is not a national standard for crisis care, and (ii) the need to define and implement such a standard.

  - • 2.2.  This recommendation is relevant because, contrary to the opinions of Plaintiff's experts, it recognizes that adequate psychiatric bed capacity and inpatient psychiatric care are necessary parts of the continuum of care. Plaintiff's Complaint makes allegations regarding bed capacity in Mississippi's four state hospitals multiple times in its Complaint.[13]

  - • 2.4.  Plaintiff's experts criticize Mississippi's civil commitment process. This recommendation is relevant because it recognizes the need for federal involvement in developing model standards, and to "[c]onsider standards for inpatient civil commitment, assisted outpatient treatment, short-term 'holds,' and longer-term civil commitment."  Plaintiff's Complaint makes allegations regarding Mississippi's civil commitment process.[14]

  - • 2.8.a-i.  This recommendation is relevant because, although Plaintiff's experts allege that Mississippi's behavioral health workforce is insufficient, this recommendation shows that federal interdepartmental planning is essential to "find ways to increase the capacity of the

---

[13] Dkt 1, Plaintiff's Complaint, ¶¶ 48, 51, 62, 100.
[14] Dkt 1, Plaintiff's Complaint, ¶ 77.

6

behavioral health workforce to meet the needs of people with SMI."

- 2.9. Plaintiff's experts fault Mississippi for allegedly not providing sufficient support for family members and caregivers. This recommendation is relevant because it recognizes that the federal government should be providing "technical assistance and financial support for education programs by and for families and other caregivers."

- 3.1a.-g. This recommendation is relevant because it addresses the need to develop standards to provide a comprehensive continuum of care. That such standards do not presently exist is relevant to the opinions of Plaintiff's experts regarding what constitutes a sufficient continuum of care.

- 3.6. Plaintiff's experts fault Mississippi for allegedly not providing sufficient housing for people with SMI. This recommendation is relevant because it recognizes the considerable federal role regarding housing for people with SMI, the need to reform federal policies and procedures, the need for federal agencies to issue guidance for state and local housing authorities, and the need to target federal housing resources for people with SMI. Plaintiff's Complaint makes allegations regarding housing approximately twenty times.[15]

- 3.10. This recommendation is relevant because it addresses the need to develop national and state capacity to disseminate and implement national standards for a comprehensive continuum of care for people with SMI. "The challenges of implementation are well known, but rarely adequately addressed. As a consequence, we find a huge gap between what is known to be effective and what is available in communities throughout the nation." That this "gap" exists nationwide is relevant to whether the remedies proposed by Plaintiff's experts for Mississippi are reasonable, realistic, or obtainable. It is also relevant to the fundamental-alteration defense.

- 4.1. This recommendation is relevant because it addresses the role of the criminal justice system and mental health, and Plaintiff has put this at issue in this lawsuit. The recommendation includes that the federal government should provide funding opportunities of communities to map their system and to develop programs and services.

- 4.7. This recommendation is relevant because it shows that the federal government itself is not meeting the standards it seeks to impose on the states regarding restrictive housing for people with SMI.

- 4.8. This recommendation is relevant because it recognizes that there are federal barriers that impede access to treatment and recovery services for

---

[15] Dkt 1, Plaintiff's Complaint, ¶¶ 14, 29. 75, 89-92, 109, 114.

people with SMI who are released from correctional facilities.

- 5.2. This recommendation is relevant because it acknowledges that federal health benefit programs are not adequately funding the full range of services needed by people with SMI, and the need for the federal government to partner with state and local government to address these issues. The inadequacy of federal funding impedes the ability of the states to provide the community-based services that Plaintiff alleges they should provide.

- 5.3. This recommendation is relevant because it addresses the enforcement of parity to ensure that people with SMI receive the mental health and substance abuse services they are entitled to, and that benefits are offered on the terms comparable to those for physical illnesses. Plaintiff served a request for production on the State which sought "[a]ll documents related to any mental health and substance use parity analysis conducted by the State or the Coordinated Care Organizations since January 1, 2014."

- 5.4. This recommendation is relevant because it recognizes that federal financing policies discriminate against behavioral health care, and that those practices and policies should be eliminated. In particular, it recommends ending the exclusion for reimbursement of services to adults under age 65 in Institutions for Mental Diseases (IMD exclusion), and ending the 190-day lifetime limit on Medicare psychiatric inpatient hospitalization.

  The IMD exclusion is federal law. It prevents federal Medicaid funds from being used to pay for treating adults with SMI in Mississippi's four state hospitals. The ISMICC Report recognizes that "[i]t is critical that every state have adequate bed capacity to respond to the needs of people experiencing both psychiatric crises and those who are in need of longer periods of inpatient care," but that most states have shortages of psychiatric hospital beds (Report at 16). As one of Plaintiff's expert witnesses in this case notes, federal Medicaid pays 74.63% of the cost of mental health services covered by Medicaid. If the IMD exclusion were eliminated, it would immediately reduce the treatment cost of the mental health services provided by Mississippi's four state hospitals by 74.63%, and would enable Mississippi to shift those funds to community-based services. Melodie Peet, one of Plaintiff's experts, discusses the IMD exclusion on page 9 of her report.

  Several experts retained by Plaintiff opine that the State "over-relies" on inpatient psychiatric hospital beds, but the Report shows they are incorrect. Moreover, "the ADA is not reasonably read to impel States to phase out institutions, placing patients in need of close care at risk. Nor is it the ADA's mission to drive States to move institutionalized patients into an inappropriate setting …. For other individuals, no placement outside

8

      the institution may ever be appropriate." *Olmstead* 527 U.S. at 604-05.

    •  5.5.  This recommendation is relevant because it recognizes that the federal government fails to pay for psychiatric and behavioral health services at rates equivalent to other health care services. This adversely impacts the ability of the states to provide community-based services in the manner and to the degree that Plaintiff suggests they should be provided.

 Topic 7.  Topic 7 is the following bullet points in the Final Report dated October 2016 of The Mental Health & Substance Use Disorder Parity Task Force (Exh. 2), as follows:

  •  Strengthen parity in Medicare Part A benefits (page 25). As noted above, parity is relevant because, among other reasons, Plaintiff served a request for production on the State which sought "[a]ll documents related to any mental health and substance use parity analysis conducted by the State or the Coordinated Care Organizations since January 1, 2014."

  •  Provide federal support for state efforts to enforce parity through trainings, resources and new implementation tools (page 26). Parity is relevant for the reasons stated above.

 Topic 8.  Topic 8 is the GAO-15-113, Report to the Subcommittee on Oversight and Investigations, Committee on Energy and Commerce, House of Representatives, *HHS Leadership Needed to Coordinate Federal Efforts Related to Serious Mental Illness*, December 2014 (Exh. 3), as follows:

  •  The section entitled "Committees have Been Established for Interagency Coordination, but They Did Not Focus on, and Took Little Action Specific to, Serious Mental Illness" (pages 16-18). This section is relevant because it shows that since at least 2003, federal attempts to coordinate efforts regarding mental health across federal agencies have failed. These failures impede the ability of the states to provide community-based services in the manner that Plaintiff suggests they should be provided.

  •  The last paragraph beginning on page 20. Same as the immediately preceding bullet point.

  •  The "Conclusions" section on pages 27-28. Same as the first bullet point above in Topic 9. In addition, ISMICC is a further attempt to address the deficiencies in the manner in which the federal government delivers mental health care services.

  •  The "Recommendations" section on page 28. Same as the first bullet point above in Topic 9. In addition, ISMICC is a further attempt to address the deficiencies in the manner in which the federal government delivers mental health care services.

  •  The "Agency Comments" section on pages 28-30. Same as the first bullet point above in Topic 9. In addition, ISMICC is a further attempt to address the deficiencies in the manner in which the federal government delivers mental health

care services.

Topic 9.  Topic 9 is the Final Report dated July 22, 2003, of the President's New Freedom Commission on Mental Health (Exh. 4) as follows:  the Executive Summary, pages 29-31, 37-38, 40-43, 69-70, and the Conclusion.  This report is relevant because it is cited and quoted in paragraph 8 of Plaintiff's Complaint (Dkt. 1).  Moreover, one of Plaintiff's experts, Dr. Robert Drake, addresses the 2003 President's New Freedom Commission Report on mental health in his expert report.

Topic 10.  Topic 10 is the Office of the Inspector General, U.S. Department of Justice, July 2017 Review of the Federal Bureau of Prisons' Use of Restrictive Housing for Inmates with Mental Illness (Exh. 5), as follows:  the Executive Summary, Introduction (Mental Illness Among BOP Inmates), and Conclusions and Recommendations.  Plaintiff's experts fault Mississippi for its handling of people with SMI in jails.  This report is relevant because it shows that these issues are not unique to Mississippi, it concerns what constitutes "reasonable community-based services," and it shows the federal prison system is not providing the mental health services that Plaintiff is contending should be provided in jails at the state and local level.

Topic 11.  Topic 11 is the SAMHSA Strategic Plan entitled, Leading Change 2.0: Advancing the Behavioral Health of the Nation (Exh. 6), as follows:

- Goal 2.1, Objective 2.1.2, and its Metrics.  Objective 2.1.2 is "[r]emove financial barriers and incentivize effective care coordination and integrated treatment delivery for people with mental illness and substance use conditions."  Federal financial barriers to mental health care for people with SMI are relevant to this case.

- Goal 2.3, its four Objectives, and its Metrics.  All four Objectives and their Metrics are relevant because they concern SAMHSA's support of federal, state, territorial, and tribal efforts to influence and support the efficient use of various financing models and mechanisms to address behavioral health services and activities.

- Goal 2.4, Objective 2.4.1, and its Metrics.  Objective 2.4.1 is as follows:  "With SAMHSA's federal partners and other stakeholders, evaluate the impact of parity on mental and substance use disorder services access, coverage, and costs."  This Objective and its Metrics are relevant because they concern parity, which is relevant in this case for the reasons explained above.

- Goal 3.2, its five Objectives, and its Metrics.  The five Objectives and its Metrics are relevant because they address the implementation and study a trauma-informed approach throughout health, behavioral health, and related systems.  Plaintiff's experts address trauma-specific services in their expert reports.

- Goal 4.1, Objectives 4.1.1 and 4.1.4, and its Metrics.  Objective 4.1.1. is to [i]dentify and promote the adoption of evidence-based practices that facilitate health, wellness, and resiliency.  Objective 4.1.4 is to "[e]xpand the adoption of comprehensive community-based crisis response systems."  These Objectives and

10

PD.24340440.1

their Metrics are relevant because the reports of Plaintiff's experts are replete with references to evidence-based programs and community-based crisis response issues.

- Goal 4.2, Objective 4.2.2, and its Metrics.  Objective 4.2.2 is to "[p]romote home and community-based service approaches that include efforts to avoid unnecessary institutionalization and out-of-home placements."  This Objective and its Metrics are relevant because, yet again, the reports of Plaintiff's experts are replete with references to promoting home and community-based service approaches and efforts to avoid unnecessary institutionalization.  This Objective makes clear that SAMHSA undertook efforts to avoid unnecessary institutionalization.

- Goal 4.3, its four Objectives, and its Metrics.  These four Objectives and their Metrics are relevant because they all concern supported employment for people with SMI.  Once again, the reports of Plaintiff's experts are replete with references to supported employment for people with SMI.  Plaintiff's Complaint makes several allegations regarding employment.[16]

- Goal 4.4, its three Objectives, and its Metrics.  These three Objectives and their Metrics are relevant because they concern SAMHSA'a efforts to "[p]romote community living for individuals with mental and/or substance use disorders and their families."  The reports of Plaintiff's experts are replete with references to these issues.

- Goal 6.1, its four Objectives, and its Metrics.  These Objectives and their Metrics are relevant because they all concern workforce issues that are geared toward increasing the number of behavioral health providers.  The reports of Plaintiff's experts discuss workforce issues.

- Goal 6.2, its three Objectives, and its Metrics.  These Objectives and their Metrics are relevant because they all concern peer providers.  The reports of Plaintiff's experts discuss peer provider issues.  In addition, Plaintiff conducted written discovery and deposition discovery regarding peer providers.  Plaintiff's Complaint makes allegations regarding "peer support services" multiple times.[17]

- Goal 6.4, its three Objectives, and its Metrics.  These Objectives and their Metrics are relevant because they all concern workforce issues.  The reports of Plaintiff's experts discuss workforce issues.  In addition, Plaintiff conducted written discovery and deposition discovery regarding peer providers.

Topic 12.  Topic 12 is the following slides in the SAMSHA PowerPoint dated April 16, 2018, and entitled, Changing Focus:  The Right to Treatment of Serious Mental Illness (Exh. 7):

- History.  This slide is relevant because it discusses the federal role in

---

[16] Dkt 1, Plaintiff's Complaint, ¶¶ 14, 40, 70, 75, 109.
[17] Dkt 1, Plaintiff's Complaint, ¶¶ 14, 70, 75, 87, 88, 101, 114.

11

>  deinstitutionalization in the United States, as do two of Plaintiff's experts in this case – i.e., Robert Drake and Melodie Peet.
> 
> • Unintended Consequences: Where We Are Today. This slide is relevant because it discusses the consequences of deinstitutionalization, an issue in this case, as does one of Plaintiff's experts, Robert Drake, in his report in this case.
> 
> • Issues in Justice Populations (last bullet point only). This bullet point is relevant because it discusses anosognosia, which is is a symptom of SMI that impairs a person's ability to understand his or her illness.
> 
> • Interdepartmental Serious Mental Illness Coordinating Committee – Focus 5. This slide is relevant because it discusses federal funding practices for mental health issues, and funding is always an issue, as well as parity issues. Plaintiff's Complaint makes allegations regarding funding issues approximately twenty-three times.[18]

## II. Proportionality.

Plaintiff incorrectly contends that the Topics in the State's 30(b)(6) are disproportionate to the needs of the case. When analyzing proportionality the Court should consider: (1) the importance of issues at stake in the action, (2) the amount in controversy, (3) the parties' relative access to relevant information, (4) the parties' resources, (5) the importance of the discovery in resolving the issues, and (6) whether the burden or expense of the proposed discovery outweighs its likely benefit. *Benefield v. Lockhart*, No. 1:15-cv-00190, 2016 WL 9782115, at *2 (S.D. Miss. 2016).

These factors show that the Topics in the State's 30(b)(6) are proportionate to the needs of the case. The issues raised by the Topics are critical to the State's defenses. The amount in controversy is significant because Plaintiff seeks remedies that would impose millions of dollars of additional costs on the State. Plaintiff has access to the information sought by the Topics. Plaintiff has tremendous resources at its disposal. Plaintiff has made no showing regarding the alleged burden or expense of preparing a witness to testify regarding the Topics.

---

[18] Dkt 1, Plaintiff's Complaint, ¶¶ 1, 24, 27-28, 39, 64, 66, 67-68, 72, 74, 91, 93, 95-96, 100-101, 105, 110, 124.

12

### III. The State's 30(b)(6) Notice Is Not The Functional Equivalent Of Deposing A Lawyer.

Plaintiff contends that serving a 30(b)(6) deposition request "on governmental law enforcement agencies are likely to implicate deposing an attorney and as such, courts are generally reluctant to grant such depositions." This position is untenable for several reasons.

First, the State has not asked Plaintiff to designate an attorney as its 30(b)(6) designee. Plaintiff is free to designate whomever it chooses in the federal government as its 30(b)(6) representative. But Plaintiff cannot designate an attorney as its 30(b)(6) representative, and then claim that the attorney need not answer any of the State's questions because he or she is an attorney. In this regard, Plaintiff has cited a three-part test for determining whether an attorney can be deposed, citing *Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986). But *Shelton* applies to a direct request to depose an attorney. It has no application to a request for a 30(b)(6) deposition.

Second, the fact that DOJ is representing the United States of America in this case does not excuse the obligation of the United States to designate a knowledgeable 30(b)(6) representative. "[B]y its very terms Rule 30(b)(6) applies to the [g]overnment …. "[L]ike any ordinary litigant, the [g]overnment must abide by the Federal Rules of Civil Procedure. It is not entitled to special considerations concerning the scope of discovery, especially when it voluntarily initiates an action." *S.E.C. v. Merkin*, 283 F.R.D. 689, 693-94 (S.D. Fla. 2012). Plaintiff initiated this action. It must designate a 30(b)(6) representative accordingly.

### IV. Information From Agencies Other Than DOJ.

Plaintiff alleges that DOJ has no obligation to obtain information from any federal agencies other than DOJ in preparing Plaintiff's representative for a 30(b)(6) deposition.

13

Plaintiff is incorrect because the Joint Stipulation[19] places no limitations whatsoever on depositions. The word "deposition" does not appear in the Joint Stipulation.

Moreover, Plaintiff's 30(b)(6) representative has a duty to make reasonable inquiry regarding the Topics in the State's 30(b)(6) Notice. That duty plainly includes making inquiry of federal agencies other than DOJ where the Topic implicates information held by such federal agencies. In this regard, Plaintiff can designate a single representative to make inquiries for federal agencies other than DOJ, or it can designate representatives from multiple federal agencies, as applicable.

Additionally, Plaintiff cannot resist designating a representative for a 30(b)(6) deposition simply because the designee does not have first-hand personal knowledge of a topic. *Sprint Commc'ns Co., L.P. v. Theglobe.com, Inc.*, 236 F.R.D. 524, 528 (D. Kan. 2006). Rather the plaintiff, "if need be, …. must prepare deponents by having them review prior fact witness deposition testimony as well as documents and deposition exhibits. Any other interpretation of [Rule 30(b)(6)] would allow the responding corporation to 'sandbag' the deposition process." *Id.*

**V.     Other Discovery Tools.**

Plaintiff contends that the State must utilize other discovery tools before resorting to a 30(b)(6) deposition, but Rule 30(b)(6) says no such thing. For example, the fact that a document was produced in discovery or is otherwise publicly available does not preclude the State from asking Plaintiff about any such documents in a 30(b)(6) deposition.

**Relief Requested**

The State of Mississippi's Motion to Compel Rule 30(b)(6) Deposition of Plaintiff (Dkt. 92) should be granted.

This, the 20th day of August, 2018.

---

[19] Dkt. 39 (Attachment C), Joint Stipulation Regarding Discovery.

PD.24340440.1

Respectfully submitted,

PHELPS DUNBAR LLP


BY:  */s/ James W. Shelson*
     Reuben V. Anderson, MB 1587
     W. Thomas Siler, MB 6791
     James W. Shelson, MB 9693
     Nicholas Morisani, MB 104970
     4270 I-55 North
     Jackson, Mississippi 39211-6391
     Post Office Box 16114
     Jackson, Mississippi  39236-6114
     Telephone: 601-352-2300
     Telecopier: 601-360-9777
     Email:  andersor@phelps.com
           silert@phelps.com
           shelsonj@phelps.com
           nicholas.morisani@phelps.com

     Harold Pizzetta, III, MB 99867
     Assistant Attorney General
     General Civil Division
     Walter Sillers Building
     550 High Street
     Jackson, MS 39201
     Telephone:  601-359-3816
     Telecopier:  601-359-2003
     Email:  HPIZZ@ago.state.ms.us

     Mary Jo Woods, MB 10468
     Special Assistant Attorney General
     Mississippi Attorney General's Office
     Walter Sillers Building
     550 High Street
     Jackson, MS 39201
     Telephone:  601-359-3020
     Telecopier:  601-359-2003
     Email:  MWOOD@ago.state.ms.us

Attorneys for the State of Mississippi

**CERTIFICATE OF SERVICE**

I certify that on August 20, 2018, I electronically filed this document with the Clerk of the Court using the ECF system, which sent notification of such filing to all ECF counsel of record in this action.

*/s/ James W. Shelson*
JAMES W. SHELSON