**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>*Plaintiff,*<br><br>v.<br><br>STATE OF MISSISSIPPI,<br><br>*Defendant.* | CIVIL ACTION NO.<br>3:16-CV-00622-CWR-FKB |

**UNITED STATES' RESPONSE MEMORANDUM IN OPPOSITION TO THE STATE'S MOTION FOR A PROTECTIVE ODER**

The State argues that Diana Mikula is immune from deposition testimony given her position as a high-ranking government official, even though it intends to call her as a trial witness. Def. Mem. (ECF No. 100). The State is incorrect. Every party has the right to depose its opponent's witness before that witness testifies at trial. Nothing about the *Morgan* doctrine, which limits the involuntary testimony of high-ranking government officials to situations involving extraordinary circumstances, disturbs that general rule. Even if the *Morgan* doctrine did apply to an involuntary deposition of Ms. Mikula, the Court should conclude that extraordinary circumstances exist that make her deposition appropriate. The State's Motion, ECF No. 99, should be denied.

**I.     The United States has the Right to Depose the State's Trial Witness**

The Federal Rules of Civil Procedure presume that parties will have the opportunity to depose their opponent's potential witnesses.

Fed. R. Civ. P. 26(a)(1) requires a party to disclose to its opponent the name and contact information of "each individual likely to have discoverable information…that the disclosing

1

party may use to support its claims or defenses." The purpose of this disclosure is to give a party the chance to locate its opponent's potential witnesses and depose them to "find out what information they may have." 8 Wright & Miller, *Fed. Prac. & Proc.* § 2013 (3d ed. 2018). This disclosure and accompanying opportunity to depose is so foundational that failure to identify a potential witness results in automatic preclusion from using that witness "to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). A critical question for courts assessing whether failure to disclose was harmless is whether or not the party has had, or will have, the opportunity to depose the witness before that witness supplies evidence. *See, e.g.*, *City of Hattiesburg v. Hercules, Inc.*, No. 13-cv-208, 2016 WL 1090610, at *3 (S.D. Miss. Mar. 18, 2016) (no harm where opposing party had opportunity to depose undisclosed witness); *W. Alliance Bank v. Jefferson*, 119 F. Supp. 3d 961, 968 (D. Ariz. 2015); *E.E.O.C. v. Chrysler LLC*, 610 F. Supp. 2d 818, 827 (E.D. Mich. 2009).

Ms. Mikula is a potential trial witness for the State, State's Initial Disclosures at 1 (Exhibit A), and the Federal Rules presume that the United States will have the opportunity to depose her before she testifies at trial. The fact that the *Morgan* doctrine might apply to her involuntary trial or deposition testimony does not change this presumption. *See, e.g.*, *Ebbert v. Nassau Cnty.*, No. 05-5445, 2007 WL 674725, at *6 (E.D.N.Y. Mar. 5, 2007) (agreeing that New York State Civil Service Commissioner was entitled to protective order barring his deposition, and precluding defendants from proffering the Commissioner at summary judgment or trial "unless Defendants subsequently choose to make him available for a deposition."). If Ms. Mikula is immune from deposition but free to testify at trial for the State, the United States is left in the same position as a litigant facing a trial witness it did not know about and did not depose.

To apply the *Morgan* doctrine in cases like this would make no sense, because doing so would not address the concerns underlying that doctrine. The *Morgan* doctrine exists to protect high-ranking government officials from unnecessarily spending time "tending to pending litigation." *Bogan v. City of Boston*, 489 F.3d 417, 423 (1st Cir. 2007) (citing *In re United States (Kessler)*, 985 F.2d 510, 512 (11th Cir. 1993) (noting concern that FDA commissioner would be required to "take valuable time away from other tasks")). A party planning to call a high-ranking government official as part of its affirmative case has already determined that time spent on the litigation is not a waste of that official's time, and the concern underlying the doctrine is inapplicable. *See Schiller v. City of New York*, No. 04-cv-7922, 2006 WL 2708464, at *3 (S.D.N.Y. Sept. 20, 2006) ("The defendants have grounded the instant motion on the twin premises that the Commissioner has no unique knowledge and that participating in this litigation would draw him away from critical duties. These considerations are as applicable to trial as they are to deposition. Furthermore, it is fundamentally unfair to shield a witness from pretrial examination only to spring him on the adversary when a verdict is at stake.").[1]

Because the State plans to call Ms. Mikula at trial, the United States has a right to depose her. The State's motion for a protective order should be denied.

## II.     Even if a *Morgan* Analysis is Required, Extraordinary Circumstances Exist Permitting a Deposition of Ms. Mikula

Extraordinary circumstances exist when a high-ranking government official[2] possesses relevant knowledge that cannot be obtained from other sources. *Jackson Mun. Airport Auth. v.*

---

[1] The State incorrectly argues that *Schiller* and *Ebbert* are not cases about the *Morgan* doctrine. Def. Mem. at 4. Neither case cites specifically to *United States v. Morgan*, 313 U.S. 409 (1941), the case giving its name to the doctrine. However, both *Schiller* and *Ebbert* are indisputably about the question of whether a high-ranking government official can be compelled to a deposition. Instead of *Morgan*, both cases rely on *Marisol A. v. Giuliani*, No. 95-cv-10533, 1998 WL 132810 (S.D.N.Y. Mar. 23, 1998), which in turn relied on the D.C. Circuit's analysis of the *Morgan* rule in *Simplex Time Recorder Co. v. Sec'y of Labor*, 766 F.2d 575 (D.C. Cir. 1985).

[2] The United States does not dispute that Ms. Mikula is a high-ranking government official for purposes of this analysis.

3

*Bryant*, No. 3:16-cv-246, 2018 WL 3543955, at *2 (S.D. Miss. July 20, 2018). Those circumstances exist here.

### A. Ms. Mikula Possesses Unique Personal Knowledge of What She Will Testify to at Trial

A party planning to call a high-ranking government official as part of its affirmative case has necessarily already determined that the official has personal knowledge, Fed. R. Evid. 602, of relevant, non-duplicative evidence. Fed. R. Evid. 403. The State has disclosed that it may rely on Ms. Mikula's personal knowledge of "the aspects of the State's mental health system" that are at issue here in support of its defense. State's Initial Disclosures at 1 (Exhibit A). For trial preparation purposes, it is essential that the United States have the opportunity to probe that knowledge in a deposition of the only person with that knowledge: Ms. Mikula herself.

### B. Ms. Mikula Possesses Unique Knowledge of DMH's Budgeting, Strategic, and Service Planning Processes

Multiple deponents have been unable to describe DMH's budget, strategic, and service planning processes, and have identified Ms. Mikula as someone who can.

DMH's budget, strategic and service planning processes are relevant to whether the State discriminates by failing to serve individuals in the most integrated setting appropriate. In particular, the "fiscal impact" of the needed modifications is relevant to whether the modifications are reasonable or amount to a fundamental alteration of the State's service system. *Disability Advocates, Inc. v. Paterson*, 598 F. Supp. 2d 289, 351 (E.D.N.Y. 2009). Weighing the "fiscal impact" of those modifications requires an understanding of how, for example, DMH assesses its own spending, how and why it allocates its resources across hospitals and community-based providers, and any externally or internally imposed limitations on funding for community-based providers.

Similarly, the availability, current capacity, external or internal limitations on changes to the availability or current capacity of community-based mental health services, and DMH's process for assessing and addressing those questions, are relevant to whether community-based services are in fact being provided to adults with mental illness and the magnitude of the modifications that would be necessary to provide more of those services. *See, e.g.*, *Disability Advocates*, 598 F. Supp. 2d at 342. And evidence of a State's "efforts to comply with the integration mandate with respect to the population at issue" – i.e. an *Olmstead* plan – is relevant to "determining the extent to which the requested relief would be a permissible 'reasonable modification' or an impermissible 'fundamental alteration.'" *Disability Advocates*, 598 F. Supp. 2d at 339. The State asserts, despite testimony from DMH's Deputy Executive Director that he has "never seen" a Mississippi *Olmstead* plan, Allen Dep. at 164:12-24 (Exhibit B), that its Strategic Plans form an integral part of its *Olmstead* plan. State's First Supplemental Response to United States' First Set of Requests for Production (Exhibit C). Testimony about the Strategic Plans is therefore relevant.

As described below, witnesses so far, including virtually all of the DMH central office officials responsible for adult mental health services, have been unable to explain numerous aspects of these strategic planning processes. Either Ms. Mikula is the last remaining potential source of answers about these processes, or no one at DMH can explain these processes. Either way, the United States is entitled to know.

Kelly Breland, Director of the Bureau of Administration, who appears in front of the legislature with Ms. Mikula and prepares presentations to legislative budget committees, could not speak to how the central office assesses the amount of money it needs in a given fiscal year. Breland Dep. 33:3-34:20 (Exhibit D). Mr. Breland, who is also responsible for compiling the

central office administrative and service budget requests, testified that he does not review the service request submissions given to him by other DMH programs beyond ensuring that the numbers add up. Breland Dep. 38:15-39:9 (Exhibit D). Similarly, Brent Hurley, then the Director of the Division of Crisis Response within the Bureau of Community Services, testified that he did not have any role in preparing DMH's budget submissions and was unaware of the performance indicators and measures that are contained in those requests. Hurley Dep. 85:8-14 (Exhibit E). Mr. Hurley did not keep track of data pertaining to the service he oversaw that eventually appeared in the consolidated budget request. Hurley Dep. 99:7-25 (Exhibit E). The head of the Bureau of Mental Health, which oversees the State Hospitals, could not speak to DMH's ongoing process of shifting funds from the State Hospital to community-based providers, and identified Ms. Mikula as someone who could. Lewis Dep. 90:21-91:13 (Exhibit F). When the Deputy Executive Director of DMH testified about that process, he would not "speak for Ms. Mikula" in response to questions about whether further shifts are planned. Allen Dep. 66:10-15 (Exhibit B). The budget process around community services has been similarly unexplained. For instance, DMH's Deputy Executive Director testified he does not ask or fully understand the Medicaid assumptions that community mental health centers made in their proposed budgets. Allen Dep. 48:2-22 (Exhibit B).

    These same witnesses have confirmed that Ms. Mikula has knowledge of the shift of funds, Breland Dep. 43:10-19 (Exhibit D), Hutchins Dep. 99:5-8 (Exhibit G), and details of the overall budget process. Hurley Dep. 74:16-75:2 (Ms. Mikula could answer whether she has requested money to fund mental health services for individuals held in jails pending commitment) (Exhibit E); Vaughn Dep. 69:2-15 (Exhibit H); Allen Dep. 66:10-25 (Exhibit B).

One example of the dearth of evidence about strategic planning in particular relates to a goal from Mississippi State Hospital's strategic plan to meet the national readmission rate. Deposition Exhibit 199 at 6 (Exhibit I). The Director of the Mississippi State Hospital identified the source of that goal as the Bureau of Outreach Planning & Development, Chastain Dep. 134:4-24 (Exhibit J), but the director of that Bureau identified people like the head of Mississippi State Hospital as the sources of goals in strategic plans. Bailey Dep. 76:12-19; 117:16-24 (Exhibit K). Ms. Mikula is the last remaining witness who could theoretically explain the hows and whys of DMH's strategic plans.

### III. No Limitation on the Scope of the Deposition is Appropriate

The State suggested in the alternative that Ms. Mikula's deposition be limited to the topics identified in the United States' August 6 letter to the Court. Def. Mem. at 5. This suggestion is inappropriate. The proper scope of Ms. Mikula's deposition is as broad as the subjects on which she may testify at trial for the State: "the aspects of the State's mental health system that are placed at issue in" the United States' Complaint. State's Initial Disclosures at 1 (Exhibit A). If, however, the Court is inclined to accept the State's suggestion, the Court should limit the deposition to the topics outline above and not the subset of exemplary topics included in the United States' August 6 letter.

### IV. Conclusion

For the above reasons, the Court should deny the State's motion for a protective order against the deposition of Ms. Mikula.

Dated: September 5, 2018.

| | |
|---|---|
| D. MICHAEL HURST, JR.<br>United States Attorney<br>Southern District of Mississippi | JOHN M. GORE<br>Acting Assistant Attorney General<br>Civil Rights Division |
| MITZI DEASE PAIGE [MS BAR 6014]<br>CANDACE MAYBERRY<br>Assistant United States Attorneys<br>501 E. Court Street, Suite 4.430<br>Jackson, MS 39201<br>Telephone: (601) 973-2840<br>mitzi.paige@usdoj.gov<br>candace.mayberry@usdoj.gov | STEVEN H. ROSENBAUM<br>Chief<br>Special Litigation Section<br><br>REGAN RUSH<br>Deputy Chief<br>Special Litigation Section<br><br>/s/ *Mathew Schutzer*_____<br>MATHEW SCHUTZER NY BAR #5136007<br>PATRICK HOLKINS<br>ASHLEY MCDONALD<br>C. ADRIENNE MALLINSON<br>DEENA FOX<br>Trial Attorneys<br>Special Litigation Section<br>Civil Rights Division<br>U.S. Department of Justice<br>950 Pennsylvania Avenue, N.W. - PHB<br>Washington, DC  20530<br>Telephone: (202) 616-3179<br>Mathew.schutzer@usdoj.gov |

## CERTIFICATE OF SERVICE

I hereby certify that on September 5, 2018, I electronically filed the foregoing with the Clerk of Court using the ECF system, which sent notification of such filing to all counsel of record.

/s/ *Mathew Schutzer*_____
Mathew Schutzer (NY Bar #5136007)