# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# NORTHERN DIVISION

**UNITED STATES OF AMERICA**                                                    **PLAINTIFF**

**V.**                                    **CIVIL ACTION NO.: 3:16-CV-00622-CWR-FKB**

**THE STATE OF MISSISSIPPI**                                                    **DEFENDANT**

## THE STATE OF MISSISSIPPI'S MEMORANDUM IN SUPPORT OF
## MOTION FOR SUMMARY JUDGMENT (REASONABLE MODIFICATIONS)

### Introduction

Plaintiff alleges that the State of Mississippi (State or Mississippi) has violated Title II of the Americans With Disabilities Act (ADA), 42 U.S.C. §§ 12131-12134. This is Plaintiff's only claim in this case. In order to prevail on its claim, Plaintiff must prove, among other things, that a reasonable modification of Mississippi's mental health system is available. Plaintiff cannot satisfy the reasonable modifications prong of its Tile II claim because it has not identified (i) the reasonable modifications Mississippi must allegedly make to its mental health system, (ii) the quantity of community-based services Mississippi should allegedly add to its mental health system, or (iii) the cost of the modifications Plaintiff is seeking. Therefore, Mississippi is entitled to summary judgment, and Plaintiff's claim should be dismissed with prejudice.

**I.      The Summary Judgment Standard.**

A grant of summary judgment is appropriate when, after viewing the evidence in a light most favorable to the non-movant, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Gaddis v. Hegler*, No. 3:10-CV-249-CWR-LRA, 2011 WL 2111801, at *2 (S.D. Miss. May 26, 2011) "A fact is material if it is one that might affect the outcome of the suit under the governing law." *Lee v. Nat'l R.R. Passenger Corp.* (Amtrak), No. 3:10-CV-00392-CWR, 2011 WL 6781013, at *2 (S.D. Miss. Dec. 27,

2011). After the movant successfully carries its burden, it is entitled to summary judgment if the non-movant fails "to present competent evidence setting forth specific facts to illustrate the existence of a genuine issue of material fact for trial ...." *Id.* Furthermore, a party opposing summary judgment cannot simply rely on allegations in its pleadings, but must set forth specific facts, by affidavit or otherwise, showing the existence of a genuine issue for trial. *Id.* "In other words, the nonmoving litigant is required to bring forward significant probable evidence demonstrating the existence of a triable issue of fact." *Gaddis v. Smith & Nephew, Inc.*, 534 F.Supp.2d 697, 699 (S.D. Miss. 2008) (internal citation omitted).

## II. Plaintiff Cannot Establish The Reasonable Modifications Element Of Its Claim.

### A. The reasonable modifications element and burden of proof.

The only claim Plaintiff has asserted in this case is a claim for violation of Title II of the ADA.[1] In order to prevail on its Title II claim, Plaintiff must show the following elements:

1. The plaintiffs have a mental disability satisfying the ADA's disability requirement.

2. The plaintiffs are institutionalized, or the plaintiffs are in need of services that are offered in the community-based program, but would have to submit to institutionalization to receive them.

3. The plaintiffs are qualified to participate in an existing, less restrictive state program for community-based care, giving due deference to the reasonable eligibility assessment of the state's own professionals.

4. The plaintiffs' request for community-based services can be reasonably accommodated.

5. The plaintiffs do not oppose participation in the state's existing program for community-based care.

6. The plaintiffs have nonetheless been excluded from participation in the program for community-based care.

*Martin v. Taft*, 222 F.Supp.2d 940, 971-72 (S.D. Ohio 2002) (citation omitted).

---

[1] Dkt. 1, Plaintiff's Complaint, pp. 27-28.

The fourth element of Plaintiff's claim is the reasonable modifications element. Under this element, "the state is required to make reasonable modifications to its practices, but is not required to fundamentally alter the nature of any program." *Id*. at 970 (citation omitted). The plaintiff in an ADA Title II action bears the burden of showing that reasonable modifications are available. *Id*. at n. 26.

## III. Plaintiff Cannot Establish The Reasonable Modifications Element Of Its Claim.

In its Complaint, Plaintiff alleges that "[t]he State can provide services in integrated community settings to people with mental illness who are currently held in State Hospitals and to people with mental illness at serious risk of entry into State Hospitals through reasonable modifications to its mental health services system."[2] Plaintiff further alleges that "[w]ith reasonable modifications, including expansion of the capacity to provide existing services, reallocation of funds from institutions, and maximization of the State's Medicaid program, Mississippi's community mental health system would be able to meet the needs of people with mental illness in State Hospitals or at serious risk of being placed in a State Hospital."[3]

But Plaintiff has not quantified "the needs of people with mental illness in State Hospitals or at serious risk of being placed in a State Hospital." Nor has Plaintiff shown what "expansion of the capacity to provide existing services" is allegedly necessary, or what "reallocation of funds from institutions" is allegedly necessary, or what "maximization of the State's Medicaid program" is allegedly necessary.

When asked via an interrogatory to identify the reasonable modifications referenced in paragraphs 121 and 124 of its Complaint, Plaintiff gave a long answer with no specifics.[4] In

---

[2] Dkt. 1, Plaintiff's Complaint, ¶ 121, p. 26.
[3] Dkt. 1, Plaintiff's Complaint, ¶ 124, p. 26.
[4] Exh. 1, Plaintiff's Second Supplemental Responses to Defendant's First Set of Interrogatories, pp. 3-4.

particular, Plaintiff stated that the State must modify its policies, practices, and procedures to avoid discrimination by …

> Ensuring the provision of quality community-based services necessary to successfully support and promptly transition adults with mental illness in State Hospitals into community-based settings where appropriate, and prevent unnecessary State Hospital readmissions. These community-based services include, based on the need of the particular individual, psychiatric services, individuals, family, and group therapy, intensive cases management (which can be provided through Mississippi's Community Support Service), crisis services, peer support services, Assertive Community Treatment (referred to as PACT in Mississippi), supported employment, and permanent supported housing. In order to provide these community-based services as an effective alternative to State Hospital treatment, the State would need to modify its policies, practices, and procedures to increase the amount and availability of these community-based services throughout the State including by 1) continually collecting and using data and information necessary to identify gaps in the availability and utilization of services; and 2) ensuring adequate funding for these community-based services; and 3) ensuring adequate and effective provider capacity.[5]

The essence of Plaintiff's reasonable modifications claim is that Mississippi should modify its mental health system by spending less on State Hospitals and expanding and increasing funding for community-based services. But Plaintiff has not identified the reasonable modifications Mississippi must allegedly make to its mental health system, or the quantity (or "amount and availability") of community-based services Mississippi should allegedly add to its system, or the cost of the modifications Plaintiff is seeking.

This is best illustrated by the testimony of Plaintiff's experts. Plaintiff designated a Clinical Review Team (CRT) comprised of six experts to offer opinion testimony in this case. Plaintiff's CRT reviewed a sample of 154 individuals who have received treatment at one or more of Mississippi's State Hospitals. Plaintiff's CRT is comprised of the following six individuals: Dr. Robert Drake, Katherine Burson, Daniel Byrne, Dr. Beverly Bell-Shambley, Dr. Judith Baldwin, and Dr. Carol VanderZwaag. Dr. Drake is the leader of Plaintiff's CRT.

---

[5] Exh. 1, Plaintiff's Second Supplemental Responses to Defendant's First Set of Interrogatories, pp. 3-4.

Plaintiff also designated Melodie Peet and Kevin O'Brien as expert witnesses. Ms. Peet was designated to opine "whether the State's services are sufficient to prevent unnecessary institutionalization in State Hospitals, and if not, what changes, if any, the State can make to achieve that goal."[6] Mr. O'Brien is an accountant who was designated to "conduct analyses relative to the estimated current cost and spending on institutions and community-based adult mental health services in Mississippi."[7]

Although Plaintiff alleges that Mississippi unnecessarily institutionalizes individuals in State Hospitals, Plaintiff's expert Melodie Peet believes that state hospitals have a role in the mental health continuum of care,[8] but she did not make an analysis of how many state hospital beds Mississippi should have.[9] Ms. Peet has no opinion regarding whether Mississippi should close any of its State Hospitals.[10] Likewise, Plaintiff's experts Katherine Burson, Dr. Beverly Bell-Shambley, and Dr. Robert Drake have no opinions regarding whether Mississippi should close any of its State Hospitals.[11] Plaintiff's expert Dr. Carol VanderZwaag does ***not*** believe Mississippi should close its State Hospitals.[12] Dr. VanderZwaag does not know whether Mississippi has a shortage of state hospital beds.[13]

Although Plaintiff alleges Mississippi should modify its existing mental health system by expanding its community-based services, Plaintiff cannot identify or otherwise quantify the expansion that is allegedly necessary. Plaintiff did not ask any of its experts to do that type of

---

[6] Exh. 2, Expert Report of Melodie Peet, p. 1 (to be filed under seal).
[7] Exh. 3, Expert Report of Kevin O'Brien, p. 3 (to be filed under seal).
[8] Exh. 4, Deposition of Melodie Peet, 30:15-31:3; 33:1-5 (to be filed under seal).
[9] Exh. 4, Deposition of Melodie Peet, 37:22-38:3 (to be filed under seal).
[10] Exh. 4, Deposition of Melodie Peet, 38:4-11 (to be filed under seal).
[11] Exh. 5, Deposition of Katherine Burson, 129:15-130:9; Exh.. 6, Deposition of Beverly Bell-Shambley, 22:19-23:4; Exh. 7, Deposition of Robert Drake, 90:10-12 (to be filed under seal).
[12] Exh. 8, Deposition of Carol VanderZwaag, 88:10-16 (to be filed under seal).
[13] Exh. 8, Deposition of Carol VanderZwaag, 89:14-19 (to be filed under seal).

analysis. Dr. Drake testified, "I haven't studied the system as a system. I wasn't asked to do that."[14]

On page 15 of his report,[15] Dr. Drake lists the array of services that he believes constitute a reasonable array of community-based services, but he did not make any determinations regarding the quantity in which those services should be offered in Mississippi.[16] For example, Dr. Drake believes that states should offer mobile crisis services and permanent supported housing. But Dr. Drake does not know how to determine whether a state is offering mobile crisis services in sufficient quantity. He testified that, " I never tried to do that."[17] Dr. Drake did not make any determinations regarding the quantity of permanent supported housing that Mississippi needs.[18] He does not know of any standard or metrics for determining how much permanent supported housing any state should have.[19] Dr. Drake was not even asked to make any determinations regarding the degree to which Mississippi offers each component of its community-based service system.[20] The bottom line is that Dr. Drake made no determination regarding whether Mississippi is offering sufficient community-based services:

> Q. How do you determine whether a state has sufficient community based services to meet the needs of its adult SMI[21] population? Or is that outside your area?
>
> A. Yeah. You keep asking me about system design and cost issues, and I'm not an expert in those areas.

---

[14] Exh. 7, Deposition of Robert Drake, 82:17-21 (to be filed under seal).
[15] The community-based services that Dr. Drake lists on page 15 of his report are "crisis services, transition services, supported housing, medication management based on guidelines for prescribing current medications, shared decision-making, assertive community treatment, family psychoeducation, supported employment, specific psychotherapies, integrated treatment for co-occurring disorders, linkage with primary care, and peer supports. Exh. 9, Expert Report of Robert Drake, p. 15 (to be filed under seal).
[16] Exh. 7, Deposition of Robert Drake, 15:11-16:13 (to be filed under seal).
[17] Exh. 7, Deposition of Robert Drake, 39:18-21 (to be filed under seal).
[18] Exh. 7, Deposition of Robert Drake, 44:12-15 (to be filed under seal).
[19] Exh. 7, Deposition of Robert Drake, 86:1-5 (to be filed under seal).
[20] Exh. 7, Deposition of Robert Drake, 82:8-16 (to be filed under seal).
[21] "SMI" is Serious Mental Illness.

6

> Q. So that being the case, do you have any views of whether any states currently have sufficient community-based services to meet the needs of their adults with SMI?
>
> A. I can't answer that. I know some states do better than others, but I don't know if any state has – is really doing a good job.[22]

Ms. Peet is the expert Plaintiff retained to study Mississippi's mental health system as a whole. On pages 11-14 of her report, Ms. Peet opined that the following community-based services can reduce reliance on hospital placements: Crisis services, PACT and Intensive Case Management, peer support, supported employment, and permanent supported housing.[23] But she did not undertake an analysis to determine what amount of each of these services is allegedly adequate for Mississippi.[24] Nor did Ms. Peet make any determinations regarding how much it would cost Mississippi to provide any of these community-based services.[25] Plaintiff has no expert who can testify regarding the amount of community-based services Mississippi allegedly should add, or how much it would cost to add those services. Indeed, when asked how do you know when a state has sufficient community-based services, Ms. Peet testified, "[t]here's no – you know, there's no formula to answer that question."[26]

Ms. Peet believes Mississippi needs more mobile crisis teams, but she "wouldn't offer a number" regarding how many teams Mississippi allegedly should add, nor does she have an opinion about where those teams should purportedly be added, or how much it would cost to add them.[27] Similarly, Ms. Peet believes Mississippi should have crisis stabilization units in each region of the State, but has no opinion regarding how many crisis stabilization beds Mississippi should add. She testified, "[t]here's no exact number for that."[28] Ms. Peet does not have any

---

[22] Exh. 7, Deposition of Robert Drake, 174:4-17 (to be filed under seal).
[23] Exh. 2, Expert Report of Melodie Peet, pp. 11-14 (to be filed under seal).
[24] Exh. 4, Deposition of Melodie Peet, 44:10-19 (to be filed under seal).
[25] Exh. 4, Deposition of Melodie Peet, 55:1-6 (to be filed under seal).
[26] Exh. 4, Deposition of Melodie Peet, 21:5-9 (to be filed under seal).
[27] Exh. 4, Deposition of Melodie Peet, 50:7-51:11 (to be filed under seal).
[28] Exh. 4, Deposition of Melodie Peet, 53:13-54:22 (to be filed under seal).

opinions regarding the number of peer support specialists Mississippi allegedly should have, nor does she know of any states which sufficiently offer peer support services to adults with SMI.[29]

Although Ms. Peet believes Mississippi does not offer community-based programs in sufficient quantity to meet existing needs, she cannot answer the question of what quantities such programs Mississippi needs to add to meet existing needs.[30] Ms. Peet believes community-based services are underfunded in Mississippi, but she did not determine the amount of the alleged underfunding.[31] Ms. Peet testified that there is no metric or single answer for determining an optimal balance between institutional care and community-based care.[32]

Dr. Judith Baldwin is a member of Plaintiff's CRT. Dr. Baldwin did not determine whether Mississippi offered reasonable community-based services: "I don't think I was asked to do that, not to determine if a state is offering it, but to answer if the individual could have avoided or spent less time in a state hospital, if those services were available. That was what I focused on."[33] She made no determinations regarding what quantity of any community-based services Mississippi allegedly should have.[34] Dr. Baldwin reviewed 30 individuals in Mississippi, but she did not determine how much it would cost to deliver the community-based services she recommended for them.[35]

Dr. Bell-Shambley is a member of Plaintiff's CRT. She testified, "I don't know that there is such a thing as optimal quantity [of community-based services]. I think the quantity and the quality has to be based of the individual needs."[36] Dr. Bell-Shambley found that 76% of the

---

[29] Exh. 4, Deposition of Melodie Peet, 66:10-21 (to be filed under seal).
[30] Exh. 4, Deposition of Melodie Peet, 44:20-45:17 (to be filed under seal).
[31] Exh. 4, Deposition of Melodie Peet, 47:21-48:17 (to be filed under seal).
[32] Exh. 4, Deposition of Melodie Peet, 23:10-20 (to be filed under seal).
[33] Exh. 10, Deposition of Judith Baldwin, 134:9-16 (to be filed under seal).
[34] Exh. 10, Deposition of Judith Baldwin, 167:2-9 (to be filed under seal).
[35] Exh. 10, Deposition of Judith Baldwin, 130:19-23 (to be filed under seal).
[36] Exh.. 6, Deposition of Beverly Bell-Shambley, 14:19-15:1 (to be filed under seal).

individuals she reviewed are appropriate for and would benefit from PACT,[37] but she does not know how many PACT teams Mississippi would need in order to provide PACT services to 76% of the people it discharges from its State Hospitals, nor does she know how much it would cost to provide that quantity of PACT teams.[38] Dr. Bell-Shambley did not do a financial analysis of how much it would cost to provide the community-based services to each of the 26 individuals she reviewed.[39]

Katherine Burson is a member of Plaintiff's CRT. Ms. Burson testified as follows: "I made recommendations around 28 individuals, I interviewed and looked at 28 individuals. So I didn't look at all of Mississippi. I looked at what services were provided for those 28 individuals."[40] Ms. Burson did not determine how much it would cost to provide the community-based services that she recommended for those 28 individuals.[41]

Dr. Carol VanderZwaag is a member of Plaintiff's CRT. When asked how you determine whether a state is offering sufficient community-based services, Dr. VanderZwaag responded as follows: "I don't know how to answer that. Some people, even with good and sufficient treatment, will still need hospital care. So it can't be as evidenced by having no psychiatric hospitals. People – sometimes everybody is doing everything right and people still need care. So I don't know how to answer that question …."[42]

Plaintiff cannot satisfy the reasonable modifications prong of its Tile II claim because it has not identified (i) the reasonable modifications Mississippi must allegedly make to its mental health system, (ii) the quantity of community-based services Mississippi should allegedly add to its mental health system, and (iii) the cost of the modifications it is seeking. Without this

---

[37] Exh.. 6, Deposition of Beverly Bell-Shambley, 50:14-18 (to be filed under seal).
[38] Exh.. 6, Deposition of Beverly Bell-Shambley, 64:19-65-5 (to be filed under seal).
[39] Exh. 6, Deposition of Beverly Bell-Shambley, 91:13-21 (to be filed under seal).
[40] Exh. 5, Deposition of Katherine Burson, 117:20-118:3 (to be filed under seal).
[41] Exh. 5, Deposition of Katherine Burson,118:5-8 (to be filed under seal).
[42] Exh. 8, Deposition of Carol VanderZwaag, 93:8-20 (to be filed under seal).

9

information, the Court cannot determine whether Plaintiff's proposed modifications are reasonable.

## Relief Requested

For these reasons, the Mississippi's Motion for Summary Judgment (Reasonable Modifications) (Dkt. 145) should be granted.

This, the 21st day of December, 2018.

Respectfully submitted,

PHELPS DUNBAR LLP


BY:  */s/ James W. Shelson*
Reuben V. Anderson, MB 1587
W. Thomas Siler, MB 6791
James W. Shelson, MB 9693
Nash E. Gilmore, MB 105554
4270 I-55 North
Jackson, Mississippi 39211-6391
Post Office Box 16114
Jackson, Mississippi  39236-6114
Telephone: 601-352-2300
Telecopier: 601-360-9777
Email: andersor@phelps.com
silert@phelps.com
shelsonj@phelps.com
nash.gilmore@phelps.com

Harold Pizzetta, III, MB 99867
Assistant Attorney General
General Civil Division
Walter Sillers Building
550 High Street
Jackson, MS 39201
Telephone:  601-359-3816
Telecopier:  601-359-2003
Email:  HPIZZ@ago.state.ms.us

Mary Jo Woods, MB 10468
Special Assistant Attorney General
Mississippi Attorney General's Office
Walter Sillers Building

550 High Street  
Jackson, MS 39201  
Telephone: 601-359-3020  
Telecopier: 601-359-2003  
Email: MWOOD@ago.state.ms.us

Attorneys for the State of Mississippi

## CERTIFICATE OF SERVICE

I certify that on December 21, 2018, I electronically filed this document with the Clerk of the Court using the ECF system, which sent notification of such filing to all ECF counsel of record in this action.

*/s/ James W. Shelson*
JAMES W. SHELSON