IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff,* v. STATE OF MISSISSIPPI, *Defendant.* | CIVIL ACTION NO. 3:16-CV-00622-CWR-FKB |

**UNITED STATES' RESPONSE MEMORANDUM IN OPPOSITION TO STATE'S GENERAL MOTION *IN LIMINE***

The State's motion *in limine* (ECF No. 195) ("Motion") seeks to exclude several categories of evidence. Neither the Motion nor the memorandum in support (ECF No. 196) ("Brief") offer any substantive justification for granting the Motion. Because the State failed to identify the testimony or documents it seeks to exclude, and merely cited the existence of rules of evidence and civil procedure without applying them to the facts of this case, the State did not meet its obligation under Fed. R. Civ. P. 7(b) to make clear its reasons for seeking relief. Even where the State has arguably nudged its brief over the threshold of Rule 7(b), the reasons it presents are incorrect and insufficient. The Motion should be denied.[1]

---

[1] The Court should ignore any brief from the State attempting to cure the deficiencies identified here. Arguments raised for the first time in rebuttal are waived. *Warnock Engineering, LLC v. Canton Municipal Utilities*, No. 3:17-cv-160, 2018 WL 6729991, at *12 (S.D. Miss. Dec. 21, 2018) (When Defendants' "original Memorandum contained only conclusory assertions, unsupported by citation to evidence," the Court found that "'[a]rguments raised for the first time in a reply brief . . . are waived.'") (quoting *United States v. Jackson*, 426 F.3d 301, 304 n.2 (5th Cir. 2005)); *see also Housdan v. JPMorgan Chase Bank, N.A.*, No. 3:13-cv-543, 2014 WL 48174760, at *8 (S.D. Miss. Sept. 24, 2014) (citing cases).

**I.      Standard of Review**

On a motion *in limine*, the movant "bears the burden of demonstrating that the evidence is inadmissible on any relevant ground." *Cooper v. Meritor, Inc.*, No. 4:16-cv-52, 2019 WL 1028530, at *1 (N.D. Miss. Mar. 4, 2019). The Court "may deny a motion *in limine* when it lacks the necessary specificity with respect to the evidence to be excluded." *Id.*

**II.     The State's Motion Does Not State the Grounds for Granting the Motion**

A motion must "state with particularity the grounds for seeking the order." Fed. R. Civ. P. 7(b). "The purpose of Rule 7's particularity requirement is to give notice of the basis for the motion to the court and the opposing party so as to avoid prejudice, providing that party with a meaningful opportunity to respond and the court with enough information to process the motion correctly." *Andreas v. Volkswagen of America, Inc.*, 336 F.3d 789, 793 (8th Cir. 2003) (quotations omitted); *see also Elustra v. Mineo,* 595 F.3d 699, 708 (7th Cir. 2010) ("the purpose of Rule 7 is to provide notice to the court and the opposing party").

The purpose of a motion *in limine* "is not to re-iterate matters which are set forth elsewhere in the Rules of Civil Procedure or Rules of Evidence, but, rather, to identify *specific* issues which are likely to arise at trial, and which, due to their complexity or potentially prejudicial nature, are best addressed in the context of a motion *in limine*." *Anthony Smith v. Union Ins. Co.*, No. 3:15-cv-00162, 2017 WL 5158696, at *1 (N.D. Miss. Oct. 3, 2017) (quotation omitted, emphasis added).

The State's Motion does not meet this standard. The Motion and Brief do nothing more than highlight the general requirements of certain rules of evidence and civil procedure and in almost all respects fail to identify what specific evidence would be excluded if the motion were granted. Simply noting that rules exist is insufficient. Instead, the State must "place[] the evidence in question before the Court," as "the Court cannot rule in a vacuum." *In re Cathode*

*Ray Tube Antitrust Litigation*, No. C-07-5944, 2016 WL 7803893, at *2 (N.D. Cal. Nov. 15, 2016) (citing cases); *see also Cardsoft, Inc. v. Verifone Sys., Inc.*, No. 2:08-cv-98, 2012 WL 1995302, at *1 (E.D. Tex. June 4, 2012) (denying motion *in limine* where movant had not identified specific evidence to exclude since the motion "would be impractical to enforce as a motion *in limine*").

It is particularly insufficient to do nothing more than point to generally applicable rules when those rules are applied with a balancing test. For instance, Rule 403 requires a balancing of the evidence's probative value with other factors such as unfair prejudice or confusion. As to unfair prejudice, for example, Rule 403 does not support exclusion of evidence simply because it is harmful to a particular party, but instead only when that evidence has "some adverse effect upon [the] accused beyond proof of fact or issue that justified its admission into evidence." *Ariza v. Loomis Armored US, LLC*, No. 3:13-00419, 2016 WL 297702, at *1 (M.D. La. Jan. 22, 2016) (quoting *United States v. Figueroa*, 618 F.2d 934, 943 (2d Cir. 1980)). This analysis is impossible to complete without knowing what evidence is being analyzed and the alleged unfair prejudice it may cause.

This omission is fatal to the State's Motion. The Court in *Holcombe v. Advanced Integration Technology* confronted a motion *in limine* to bar admission of evidence under Fed. R. Evid. 403 that similarly lacked any specific justification as to why the motion should be granted. No. 4:17-CV-522, 2019 WL 183926, at *3 (E.D. Tex. Jan. 14, 2019). In that case, Defendants' motion to exclude a certain separation agreement asserted that the document "is not probative of any contested issue concerning age discrimination and bears a high risk of confusing issues before the jury." *Id.* (quotation omitted). Although the Court acknowledged the possibility that such evidence would be prejudicial, the Court denied the motion: "Defendants have failed to

provide any explanation as to what prejudice they would suffer, thereby waiving this argument." *Id.* (citing Fed. R. Civ. P. 7(b)'s particularity requirement). Here, the State likewise has alleged concerns regarding impermissible prejudice under Fed. R. Evid. 403 throughout its Brief, without once articulating the prejudice it believes it would suffer were the evidence to be admitted by the Court at trial. *See* Brief at 1-4.

### III. None of the State's Arguments is Sufficiently Detailed or Correct

#### A. Settlement Negotiations and Offers are Admissible for Some Purposes

The State moves to exclude unidentified evidence regarding settlement negotiations and offers in this case, purportedly pursuant to Fed. R. Evid. 408. Brief at 1. This conclusory argument fails to meet the State's burden to demonstrate that the evidence is "inadmissible on any relevant ground," *Cooper*, 2019 WL 1028530 at *1, for two reasons. First, the State has not identified any specific evidence it seeks to exclude. *Anthony Smith*, 2017 WL 5158696, at *1 (purpose of a motion *in limine* is to identify "specific issues" and address them ahead of trial). Second, Fed. R. Evid. 408(a) excludes settlement-related evidence only if it is used to demonstrate liability or to impeach by a prior inconsistent statement or a contradiction. Settlement-related evidence is admissible if it is used "for another purpose, such as proving a witness's bias or prejudice" or "negating a contention of undue delay." Fed. R. Evid. 408(b); *see also Garcia v. Hackman*, No. C-10-311, 2012 WL 401042, at *3 (S.D. Tex. Feb. 6, 2012) (citing *Basha v. Mitsubishi Motor Credit of Am., Inc.*, 336 F.3d 451, 454 n.4 (5th Cir. 2003)) (settlement-related evidence is admissible for certain purposes under Fed. R. Evid. 408(b)).

To determine whether settlement negotiations and offers are admissible in this case under Rule 408, the Court would need to know what evidence is at issue and for what purpose it is offered. The State has not identified what evidence is at issue, so the United States and the Court cannot identify or assess the purpose for which it might be offered. Exclusion under this

4

circumstance is inappropriate. *See Garcia*, 2012 WL 401042 at *3 (denying motion *in limine* since "Defendants' request is devoid of any specific context").

### B. The State Failed to Demonstrate that Evidence Regarding Deceased Individuals is Irrelevant or Inadmissible

The State seeks to exclude "any evidence, testimony, argument or other information" regarding four deceased individuals about whom some of the United States' Client Review[2] experts offered opinions. Motion at 1. The State argues that this information is irrelevant, is more prejudicial than probative, and lacks foundation—without explaining why any of these arguments is correct. The State's failure to provide any reason as to why such evidence should be excluded under Fed. R. Evid. 402 or 403 defeats its motion. *See Garcia*, 2012 WL 401042 at *3; *see also Ware v. Antelope Valley Union High Sch. Dist.*, No. 15-08124, 2018 WL 6016961, at *2, *5 (C.D. Cal. Sept. 25, 2018) (denying motion *in limine* as the party "fail[ed] to establish that any particular evidence on this point presents a danger of unfair prejudice that substantially outweighs its probative value"). Even if the State had preserved the argument, it could not possibly demonstrate that evidence about people who are now deceased is irrelevant to the question of whether Mississippians with mental illness have suffered a systemic violation of Title II of the ADA. Just like individuals who are still alive, these deceased individuals experienced unnecessary institutionalizations. That fact makes the existence of a Title II violation more likely, and is therefore relevant. Fed. R. Evid. 401.

---

[2] The Parties agreed, and the Magistrate Judge ordered, "the United States [would] use a sample drawn from individuals in the state hospitals to bring clarity to the population at issue according to" a process set out in the Case Management Order. ECF No. 39 at 6. This process included identification of 299 individuals who had been in a State Hospital at any point during a two-year period and the submission of expert reports assessing those individuals. *Id.* As shorthand, the Parties have referred to this as the "Client Review" or the "Clinical Review," and the experts who reviewed some of those individuals as the "Client Review Team."

5

## C. Evidence Regarding Individuals About Whom the Client Review Team Did Not Opine

The State also moves to exclude evidence from any source regarding any individual about whom the United States' experts did not offer an opinion. The State notes in particular two individuals with mental illness (M.F. and T.M.) whose family members are on the United States' April 19, 2019, witness list. Brief at 1-2. The State is correct that no Client Review expert offered an opinion about either of those individuals. The State is incorrect that this has any import on the relevance of testimony from M.F.'s mother and T.M.'s cousin, for at least two reasons. First, M.F. and T.M. were among the 299 individuals in the sample drawn by the United States pursuant to the Case Management Order ("CMO"). *See* Ex. A to United States' Second Req. for Prod. of Doc., Ex. 1 (filed under seal). The State has known that M.F. and T.M. were in this population of enhanced focus since December 13, 2017. *Id.* Second, even if they were not in that sample, at no point in the CMO or in subsequent discovery did the Parties agree, or the Court order, that proof of a systemic violation of Title II would be limited exclusively to evidence about those 299 individuals. The Client Review was a process by which the United States would "bring clarity to the population at issue," not a process by which the United States' proof at trial would be curtailed. ECF No. 39 at 6.[3] The CMO simply does not contemplate the exclusion of evidence related to individuals not within the sample.

The State's argument that this evidence should be excluded as prejudicial under Rule 403 does not identify any reasons why this is so and accordingly is meritless. *See Holcombe*, 2019 WL 183926 at *3 (denying motion *in limine* under Fed. R. Evid. 403 since the movants "failed to

---

[3] This argument also applies to the State's "contrary to CMO" objections to certain documents on the United States' Exhibit List, ECF No. 198-1. The State objected to documents from Mississippi State Hospital discussing treatment plans of individuals not part of the Client Review sample as "contrary to [the] CMO." But, as explained above, the CMO is not an exclusionary rule, but an agreed-upon process to "bring clarity" to the case.

6

provide any explanation as to what prejudice they would suffer"). The State's incorrect and inaccurate argument that this evidence amounts to trial by ambush because this evidence was not disclosed during the discovery period is addressed in Section E below.

The State's alternative request that it be allowed to offer expert testimony regarding these individuals should not be granted, for two reasons. First, the people testifying about M.F. and T.M. are fact witnesses, and the United States is not submitting expert evidence about either of these individuals. Offering the State the opportunity to supplement its expert disclosures on the eve of trial and nine months after expert disclosures were due would put the State ahead of the United States, not on the equal footing on which it already stands. Second, the State affirmatively chose to disclose expert evidence regarding only the individuals about whom the United States disclosed expert evidence. The State thus chose to limit its expert evidence to the individuals about whom the United States' experts opined, even though the State could have submitted expert testimony about any of the 299 client review individuals or anyone else for that matter. The State offers no support for its argument that, at the last minute, it should be allowed to undo its own strategic decision by presenting expert testimony about individuals not considered by the United States' experts.

### D. Evidence Regarding Children or Individuals with Intellectual/Developmental Disabilities

The State next seeks to exclude evidence regarding individuals with Intellectual/Developmental Disabilities ("IDD") and children with serious mental illness ("SMI"), again without identifying any particular evidence the State seeks to exclude.

The United States' findings in 2011 related to the State's system for providing services to individuals with IDD, children with mental illness, and adults with mental illness. *See* Findings Letter, ECF No. 19-1. Although the Mississippi Division of Medicaid and the Mississippi

Department of Mental Health share responsibility for operating all three systems, the state agencies by and large operate these systems independently.  This lawsuit addresses the State's operation of the system to serve adults with mental illness.  Compl. ¶ 1-5, 130.

As the United States previously explained, ECF No. 151 (Pl.'s Resp. Mem. in Opp'n to State's *Daubert* Mot.) at 11-12, there are people who are diagnosed with both a mental illness and an IDD, just as there are people who are diagnosed with a mental illness and a physical condition like diabetes.  Some of the individuals dually diagnosed with SMI and an IDD were in one of Mississippi's State Hospitals when they were interviewed, as reflected by their inclusion in the client review sample, confirming that they have experienced institutionalization in the mental health context.  The fact remains that Mississippi's mental health system is operated in a manner that results in unnecessary institutionalization of people with mental illness.  That some of those people also have IDD is not a basis for excluding evidence of the unnecessary hospitalizations they have experienced because of the State's ongoing failure to provide adequate community-based mental health services.

It is particularly unclear what evidence the State seeks to exclude as it relates to children.  If the United States included on its exhibit list a document about someone who was and is under 18 years old, that might have been in error (though it is impossible to tell, since the State did not identify any particular documents it asserts should be excluded if the motion is granted).  Excluding evidence about "any children who previously" received treatment in Mississippi's mental health system, Brief at 3, would exclude evidence of people who are now adults and receiving services through the adult mental health system simply because they once were children with a mental illness.  It simply makes no sense to sweep so broadly.  Again, the State

completely fails to explain how considering the experience of those individuals would be more prejudicial than probative.

### E. Witnesses Not Previously Disclosed

Finally, the State seeks to exclude evidence and testimony regarding witnesses not disclosed during discovery, yet fails to set forth its concerns about specific witnesses or types of witnesses at issue. Motions *in limine* must "contain *specific* objections to *specific* testimony which is sought to be introduced." *Maggette v. BL Dev. Corp.*, Nos. 2:07CV181–M–A, 2:07CV182–M–A, 2011 WL 2134578, *5 (N.D. Miss. May 27, 2011) (Motions that "invite this court to simply reiterate some other rule of procedure or evidence do not constitute proper uses of this unique procedural device."). The State's Brief on this point does no more than restate rules of evidence and procedure, rather than identify specific objections to specific evidence.

On May 7, 2019, the day this response was due, the State for the first time identified the witnesses it contends were not disclosed: Karen Frye, Ledger Parker, Kim Sistrunk, and C.R.. That these names were omitted from the State's Motion is fatal to the Motion. *See Cooper*, 2019 WL 1028530 at *6 (denying motion *in limine* seeking to exclude undisclosed expert opinions related to a particular issue when movant "failed to identify any specific opinion they are seeking to exclude"). The State's belated clarification does not cure this deficiency.

Even assuming *arguendo* that the State had properly presented and preserved its argument for excluding these four witnesses, the motion should be denied because the individuals were disclosed, and any arguable non-disclosure was harmless. All four of these individuals were disclosed in the United States' initial disclosures. Kim Sistrunk and Karen Frye are employees of CMHCs. *See* United States' Initial Disclosures, Ex. 2 at 2 (disclosing "[f]ormer and present administrators, board members, employees, and contractors of" CMHCs). Ledger Parker is the Director of MUTEH (Mississippi United to End Homelessness). *Id.* at 9

9

(disclosing "[f]ormer and present administrators, employees, and contractors" of certain community-based organizations). Mr. Parker is listed on the *State's* Initial Disclosures. Ex. 3 at 15. C.R. is the family member of an individual with mental illness, and that individual was part of the Client Review Sample. Ex. 2 at 6 (disclosing "individuals, including their families, guardians, or representatives, who currently receive or have received services from" a Mississippi State Hospital or CMHC); Ex. 1 (list of 299 individuals in sample).[4]

Moreover, any purported nondisclosure was harmless because the State has suffered no prejudice. *See Texas A&M Research Found. v. Magna Transp., Inc.*, 338 F.3d 394, 402 (5th Cir. 2003) (affirming district court's decision not to exclude evidence where, "[a]lthough [Plaintiff] failed to explain its failure to disclose, the prejudice to the adverse parties was negligible"). These individuals were not plucked from oblivion. Of the four individuals, the State unquestionably knew about Mr. Parker, since he was listed on the State's own disclosures. Exhibit 3. Two are employees of CMHCs, of which there are only 14 in the State. The last is a family member of one of 299 individuals whose State Hospital records the State produced in this litigation. The State cannot claim surprise, let alone prejudice from that surprise.

## CONCLUSION

For the reasons above, the United States requests that the Court deny the State's general motion *in limine*.

---

[4] By contrast, the State's witness list, Exhibit 4, includes a number of individuals who were not included in the State's initial disclosures, either by name or by category. For instance, the witness list includes five employees of CMHCs, even though the State's initial disclosures, Exhibit 3, indicate no intention of relying on CMHCs in support of the State's case. Similarly, the State's witness list includes at least one individual who is a family member of a person with mental illness, even though the State's initial disclosures reveal no intention of relying on family members in support of the State's case.

Respectfully submitted,

| | |
|---|---|
| D. MICHAEL HURST, JR.<br>United States Attorney<br>Southern District of Mississippi | ERIC S. DREIBAND<br>Assistant Attorney General<br>Civil Rights Division |
| MITZI DEASE PAIGE [MS BAR 6014]<br>CANDACE MAYBERRY<br>Assistant United States Attorneys<br>501 E. Court Street, Suite 4.430<br>Jackson, MS 39201<br>Telephone: (601) 973-2840<br>mitzi.paige@usdoj.gov<br>candace.mayberry@usdoj.gov | STEVEN H. ROSENBAUM<br>Chief<br><br>REGAN RUSH<br>Deputy Chief<br><br>/s/ *Mathew Schutzer*<br>MATHEW SCHUTZER [NY Bar 5136007]<br>JORGE CASTILLO<br>DEENA FOX<br>PATRICK HOLKINS<br>ASHLEY MCDONALD<br>HALEY VAN EREM<br>LINDSEY WEINSTOCK<br>Trial Attorneys<br>Special Litigation Section<br>Civil Rights Division<br>U.S. Department of Justice<br>950 Pennsylvania Avenue, N.W. - PHB<br>Washington, DC 20530<br>Telephone: (202) 616-3179<br>Mathew.schutzer@usdoj.gov |

## CERTIFICATE OF SERVICE

I hereby certify that on May 7, 2019, I electronically filed the foregoing with the Clerk of Court using the ECF system, which sent notification of such filing to all counsel of record.

*/s/ Mathew Schutzer*
Mathew Schutzer