**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

**UNITED STATES OF AMERICA**                                        **PLAINTIFF**

**V.**                                                  **CAUSE NO. 3:16-CV-622-CWR-FKB**

**THE STATE OF MISSISSIPPI**                                       **DEFENDANT**

**ORDER DENYING SUMMARY JUDGMENT**

In 2016, the United States filed this lawsuit alleging that the State "unnecessarily requires thousands of adults with mental illness to receive services in State-run psychiatric hospitals" instead of community-based services, in violation of Title II of the Americans with Disabilities Act ("ADA"). Docket No. 153 at 1.

In December 2018, the State of Mississippi filed two motions for summary judgment, one alleging that the United States lacks standing to bring such a suit, and one alleging that it has not properly articulated a necessary element of the claim. Both motions are denied for the reasons below.

**I.**        **Background**

In 1990, Congress passed the ADA "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1). Congress instructed the Attorney General to issue regulations on the implementation of the ADA. Those regulations require that the government "administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities." 28 C.F.R. § 35.130(d).

In 1999, the Supreme Court upheld the Attorney General's regulations and held that "under Title II of the ADA, States are required to provide community-based treatment for persons with

mental disabilities when the State's treatment professionals determine that such placement is appropriate, the affected persons do not oppose such treatment, and the placement can be reasonably accommodated, taking into account the resources available to the State and the needs of others with mental disabilities." *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 607 (1999). *Olmstead* continues to serve as the seminal case on this matter.

Against this backdrop, the Department of Justice ("DOJ") has investigated, litigated, and worked with states around the country to ensure that their systems for mental health treatment uphold the purpose of the ADA, as articulated in *Olmstead*. In 2011 DOJ issued a findings letter regarding what it deemed to be the State's over-institutionalization of adults with mental illness and the lack of alternative community-based services. Then, the United States filed this lawsuit in August of 2016.

In the complaint, the United States alleges that Mississippi over-relies on four state psychiatric hospitals that are "segregated, institutional settings that do no enable individuals living there to interact with non-disable persons to the fullest extent possible." Docket No. 1 at 9. There are thousands of Mississippians who cycle in and out of the state hospitals each year, and many return for repeated, lengthy stays. According to the United States, on a randomly chosen day in 2014, 55% of the 206 patients housed on the short-term care unit at the Mississippi State Hospital had previously been admitted to the hospital two or more times. *See Id*. at 11. In a similar sampling of the long-term care unit, where the average length of stay is seven years, there was a man who had been housed at the State Hospital for over fifty years. *See Id*. at 12.

The complaint also alleges that the over-institutionalization is compounded by a lack of appropriate discharge plans for individuals and the overall structure of the state mental health system. The United States ultimately claims that "Mississippi is aware that it unnecessarily relies

on institutional settings and has not taken the action needed to remedy the violations of law[.]" Docket No. 1 at 21.

During this litigation, the State has denied these allegations and asserted the "fundamental alteration defense" under *Olmstead*. *See* Docket No. 3. In December, the State filed two motions for summary judgment challenging the United States' standing and ability to prove a key element of its claim, as well as a *Daubert* motion challenging the reliability of its expert reports.

Since the filing of the complaint, the parties completed discovery, where depositions were taken, and expert reports were produced. Both sides have invested significant time in litigating this case. A bench trial is set to begin on June 1, 2019.

## II. Legal Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Once a summary judgment motion is made and properly supported, the nonmovant must go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial. Neither conclusory allegations nor unsubstantiated assertions will satisfy the nonmovant's burden." *Wallace v. Tex. Tech Univ.,* 80 F.3d 1042, 1047 (5th Cir. 1996) (quotation marks and citations omitted). The Court views the "evidence and draw[s] reasonable inferences in the light most favorable to the non-movant." *Maddox v. Townsend and Sons, Inc.,* 639 F.3d 214, 216 (5th Cir. 2011).

"Even if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that 'the better course would be to proceed to a full trial.'" *Harris v. Bruister*, No. 4:10-CV-77-DPJ-FKB, 2013 WL 6805155, at *2 (S.D. Miss. Dec. 20, 2013) (quoting *Firman v. Life Ins. Co., of N. Am.* 684 F.3d 533, 538 (5th Cir. 2012)).

3

The Court will address each motion for summary judgment in turn.

**III.    Discussion**

    **a.  Standing**

The State argues that the United States does not have standing to bring a suit under Title II of the ADA because Title II lacks explicit reference to federal enforcement actions. To support its position, the State relies heavily on a Florida district court case, *C.V. v. Dudek*, 209 F. Supp. 3d 1279 (S.D. Fla. 2016), which held that the United States did not have standing to bring a suit under Title II of the ADA. That case is currently on appeal to the Eleventh Circuit. If summary judgment is not granted in the State's favor, it argues this case should be stayed pending the appellate court's decision.

This Court is not bound by the holding of any district court or appellate court, other than the Fifth Circuit and the Supreme Court. In a case brought by the United States under Title II of the ADA, the defendants presented Judge Bennett in the Southern District of Texas with an *identical* argument. This Court finds his analysis persuasive:

> [Defendant] alleges that the United States does not have standing to bring a claim under Title II of the ADA, and the case should therefore be dismissed. [Defendant] cites for authority a single opinion out of the Southern District of Florida—*C.V. v. Dudek*, 2016 WL 5220059 (S.D. Fl. Sept. 20, 2016). However, the plain language of the ADA, its legislative history, and the implementing regulations clearly establish that the United States has authority to bring lawsuits under Title II of the ADA. This is reflected by every court (except *C.V. v. Dudek*) to address the question.

*United States v. Harris Cty.*, No. 4:16-CV-2331, 2017 WL 7692396, at *1 (S.D. Tex. Apr. 26, 2017) (collecting cases on Title II standing).[1] This Court finds that Judge Bennett's decision, based

---

[1] Judge Bennett relied on the following cases to support his position: *United States v. City & Cnty. of Denver*, 927 F. Supp. 1396 (D. Colo. 1996); *Smith v. City of Phila.*, 345 F. Supp. 2d 482 (E.D. Pa. 2004); *United States v. City of Baltimore*, 845 F. Supp. 2d 640 (D. Md. 2012); *Disability Advocates, Inc. v. Paterson*, No. 03-cv-3209, 2009 WL 4506301 (E.D.N.Y. Nov. 23, 2009); *United States v. Va.*, No. 12-cv-59, 2012 WL 13034148 (E.D. Va. June 5, 2012); *United States v. N. Ill. Special Recreation Ass'n*, No. 12-cv-7613, 2013 WL 1499034 (N.D. Ill. Apr. 11, 2013).

4

on the cumulative weight of cases, is far more compelling than one Florida district court case which reached a contrary conclusion. *Dudek* is an outlier. The United States has standing to bring this claim.

Additionally, what the State fails to mention about *Dudek* is the court's acknowledgement that despite its lack of standing under Title II, the United States had another avenue to pursue its claims—the Civil Rights of Institutionalized Persons Act of 1980 ("CRIPA").[2] *Dudek*, 209 F. Supp. 3d at 1289–90. The *Dudek* court held that "the Department [of Justice]'s concern that it will not be able to commence litigation [under Title II of the ADA] is at most a half-truth" because it may use CRIPA as a "vehicle" to assert Title II violations. *Id*. DOJ, however, had failed to allege such a claim in its complaint.

As the United States points out, the complaint in this case asserts its claims through CRIPA. *See* Docket No. 1 at 4 ("The United States is authorized to initiate this action pursuant to the Civil Rights of Institutionalized Persons Act of 1980 ("CRIPA")). The State dedicates a single paragraph in its rebuttal to the United States' position regarding CRIPA. After stating the CRIPA standard, the State summarily asserts that "the claims brought under CRIPA would not be the same [as the claims under Title II of the ADA] and not staying this case pending the outcome of the Eleventh Circuit's decision [in *Dudek*] would result in significant harm to the State." Docket No. 165 at 8.

---

[2] CRIPA provides:
> Whenever the Attorney General has reasonable cause to believe that any State or political subdivision of a State, official, employee, or agent thereof, or other person acting on behalf of a State or political subdivision of a State is subjecting persons residing in or confined to an institution, as defined in section 1997 of this title, to egregious or flagrant conditions which deprive such persons of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States causing such persons to suffer grievous harm, and that such deprivation is pursuant to a pattern or practice of resistance to the full enjoyment of such rights, privileges, or immunities, the Attorney General, for or in the name of the United States, may institute a civil action . . . .

42 U.S.C. § 1997(a).

The State fails to explain how the CRIPA claims would differ from the ADA claims. Therefore, the United States has additional support for its standing to bring this claim.

### b. Reasonable Modifications

In its next motion for summary judgment, the State contends that "Plaintiff has not identified the reasonable modifications Mississippi must allegedly make to its mental health system, or the quantity (or 'amount and availability') of community-based services Mississippi should allegedly add to its system, or the cost of the modifications Plaintiff is seeking." Docket No. 146 at 4.

The United States responds that "[t]o satisfy the reasonable modification element, the United States need only suggest the existence of a plausible accommodation," which it has done. Docket No. 153 at 2 (citing *Frederick L. v. Dep't. of Pub. Welfare*, 364 F.3d 487, 492 n. 4 (3d Cir. 2004); *Henrietta D. v. Bloomberg*, 331 F.3d 261, 280 (2d Cir. 2003)). The United States adds that the State is trying to make a "fundamental alteration" defense—but in so doing is attempting to shift the burden from itself to the United States.

The burden of showing reasonable accommodations is not a "heavy one." *Henrietta D.*, 331 F.3d at 280 (citing *Borkowski v. Valley Cent. Sch. Dist.,* 63 F.3d 131, 138 (2d Cir. 1995)). "It is enough for the plaintiff to suggest the existence of a plausible accommodation, the costs of which, facially, do not clearly exceed its benefits," and "once the plaintiff has done this, she has made out a *prima facie* showing that a reasonable accommodation is available, and the risk of nonpersuasion falls on the defendant." *Id*. (quotation marks omitted).

The United States has met that burden. It has proffered the plausible accommodations of expanding individual, family, and group therapy; intensive case management (provided through the Community Support Services); crisis services; peer support services; Assertive Community

Treatment (what is already known as PACT); supported employment; and permanent housing. These are largely services already provided by the State, but in limited regions. *See* Docket No. 153 at 12.

It is not the United States' responsibility to provide a detailed financial summary of the cost of such accommodations. The United States has met its prima facie burden of showing that "facially" the cost of community-based care does not "clearly exceed its benefits[,]" *Henrietta D.*, 331 F.3d at 280 (citation omitted), because it has presented evidence of the lower cost of community-based care versus institutionalization, and it has pointed to the large body of research that demonstrates the benefits of such care. *See* Docket No. 153 at 13–16.

If the State believes "that the requested relief would require an unduly burdensome or fundamental alteration of state policy in light of its economic resources," it is free to argue that at trial as its affirmative defense. *Frederick L.*, 364 F.3d at 492 n. 4.

### IV.    Status of the Case

With both motions denied, the Court is preparing for a six-week long bench trial of this case. No other matters, criminal or civil, will be heard during that time, barring an emergency. Significant resources from the parties and from the Court will be expended. That, of course, is the Court's job for citizens who seek justice. Ahead of trial, the Court wants to be sure that justice for Mississippians is the priority of this litigation.

The attorneys representing the State have argued that the United States does not have standing to bring this case and that it has failed to articulate what reasonable accommodations the State should make. Notwithstanding these procedural arguments, the parties seem to agree on one thing: more community-based services would be good for Mississippians.[3]

---

[3] While challenging a plaintiff's standing is a legitimate procedural defense that the Court encourages parties to raise whenever relevant, though preferably at the earliest moment possible, the timing of the motion for summary judgment

The Department of Mental Health's own publications and strategic plans support DOJ's goals for more community-based care.[4] In its own words, the Department of Mental Health "will continue [its] efforts and look forward to a better tomorrow when . . . partnerships improve and support holistic service delivery in the community."[5] The Attorney General also agrees with this sentiment; he has repeatedly admitted in the press that "community services need to be out-patient where somebody goes by and makes sure [mentally ill adults are] taking their medication. It's a lot cheaper to put [mentally ill adults] in their home and apartment than it is to put them in an institution."[6] Outside of this litigation, therefore, the State's public position is that moving towards more community-based services is necessary for the betterment of the State.

Yet, within the confines of this litigation, the State has taken a different position. Indeed, this is a fight over the central claim that Mississippi must provide more community-based mental health services. The contradiction between the State's public position and its position in this litigation makes it difficult for the Court to imagine what a "win" looks like for the State. In broad terms, the Court assumes that a "win" for the United States is ensuring that Mississippians' access

---

on standing is suspect. DOJ first issued a findings letter regarding the State's over-reliance on institutionalization in 2011. For the next five years, the parties presumably attempted to reach a compromise. DOJ's position has not changed since then. After the suit was filed, attorneys for the State participated in costly discovery that included motions practice, expert reports, and numerous depositions. Only after the close of discovery did attorneys for the State raise the standing argument. The taxpayers have borne these substantial costs.

[4] "The expansion of community-based services is driven by DMH's Strategic Plan. Since FY10, DMH has utilized a goal-based strategic plan to transform the public mental health system in Mississippi. The FY19 – FY21 DMH Strategic Plan includes three goals: To increase access to community-based care and supports through a network of service providers that are committed to a person-centered and recovery-oriented system of care; To increase access to community-based care and supports for people with intellectual and/or developmental disabilities through a network of service providers that are committed to a person-centered system of care; and To ensure people receive quality services in safe settings and utilize information/data management to enhance decision making and service delivery." Mississippi Department of Mental Health, *Progress Update on Mississippi's Public Mental Health System* 3 (Sept. 2018), http://www.dmh.ms.gov/wp-content/uploads/2018/09/Progress-Update-on-Mississippis-Public-Mental-Health-System-9.1.18.pdf.

[5] *Id*. at 19.

[6] Arielle Dreher, *AG Hood: State Must Fund Mental Health Care, Not Ignore Lawsuit*, Jackson Free Press (Jan. 13, 2017), http://www.jacksonfreepress.com/news/2017/jan/13/ag-hood-state-must-fund-mental-health-care-not-ign/.

8

to mental health care is robust, readily-available, and built on the well-supported best practice of community-based care. Based on the Department of Mental Health's publications, it seems this would also be a "win" for the State. The State, however, apparently believes that it can only get this "win" by having a trial and incurring huge costs in attorney's fees and expenses and passing those costs on to the taxpayers. This is puzzling.

The Court acknowledges that it has not been presented with all of the arguments and it anticipates hearing more from the State regarding its "fundamental alteration defense." This final commentary is not a ruling limiting the presentation of the parties in anyway. The parties will have the opportunity to present their cases in full. The Court hopes, however, the parties will take a thoughtful and deliberate approach to managing their time, and the Court's time, by presenting arguments that prioritize justice for Mississippians and the resolution of this case.

## V.     Conclusion

Both summary judgment motions are denied.

**SO ORDERED**, this the 13th day of May, 2019.

s/ Carlton W. Reeves  
UNITED STATES DISTRICT JUDGE