UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JACQUALYN THORPE, et al.,

       Plaintiffs,

       v.

DISTRICT OF COLUMBIA,

       Defendant.

Case No. 1:10-cv-02250-ESH
Judge Ellen Segal Huvelle

## STATEMENT OF INTEREST OF THE UNITED STATES OF AMERICA

The United States respectfully submits this Statement of Interest pursuant to 28 U.S.C. § 517,[1] in support of Plaintiffs' Renewed Motion for Class Certification (the "Motion") (ECF No. 103). In this lawsuit, Plaintiffs allege that the District of Columbia ("District") administers its long-term care services system for people with physical disabilities in a manner that unnecessarily segregates them in nursing facilities, in violation of title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 *et seq.* (Third Amended Complaint ("Third Am. Compl.") at ¶¶ 140, 168-69, Mar. 27, 2013, ECF No. 98.) Plaintiffs allege a systemic failure on the part of the District to provide transition assistance to nursing facility residents with physical disabilities who are eligible for and prefer community-based, long-term care services, and the individually named Plaintiffs seek to represent a class of similarly situated people. Plaintiffs contend that this policy and practice of failing to provide transition assistance causes their unnecessary segregation, in violation of the integration mandate of the ADA and the Supreme Court's opinion in *Olmstead v. L.C.*, 527 U.S. 581 (1999). Because resolution of that contention

---

[1] Under 28 U.S.C. § 517, "[t]he Solicitor General, or any officer of the Department of Justice, may be sent by the Attorney General to any State or district in the United States to attend to the interests of the United States in a suit pending in a court of the United States, or in a court of a State, or to attend to any other interest of the United States."

**EXHIBIT**

4

is central to the success or failure of the Plaintiffs' ADA claim, the common answer it generates will drive the resolution of this litigation, and Plaintiffs therefore satisfy the commonality requirement for class certification.

Moreover, the Plaintiffs have amply demonstrated compliance with Rule 23's numerosity, typicality, and adequacy of representation requirements. Similarly, this matter is well-suited for class treatment under Rule 23(b)(2), because the District has "refused to act on grounds that apply generally to the class" by failing to provide transition assistance to nursing facility residents with physical disabilities, and the Plaintiffs seek "final injunctive relief or corresponding declaratory relief . . . respecting the class as a whole." *See* Fed. R. Civ. P. 23(b)(2). The District's argument that a lack of housing also causes Plaintiffs' segregation does not defeat class certification. This is particularly true where, as here, the "record does not establish . . . that the housing issue cannot be overcome[.]" (Mem. Op. at 53, ECF No. 41.)

As the agency charged with enforcing title II and issuing regulations implementing the statute, 42 U.S.C. §§ 12133-34, the Department of Justice has a strong interest in ensuring that systemic violations of the ADA are remedied, including through class actions. Because Plaintiffs satisfy Fed. R. Civ. P. 23, including the commonality requirement as set forth in *Wal-Mart v. Dukes*, 131 S. Ct. 2541, 2557 (2011) and *DL v. District of Columbia*, Nos. 11-7153, 12-7042, 2013 WL 1489471, at *6-7 (D.C. Cir. Apr. 12, 2013), the United States respectfully urges this Court to grant Plaintiffs' Motion. Certification of the proposed class is an appropriate and efficient means for resolving this matter.

## BACKGROUND

The Plaintiffs allege that the District administers its long-term care services system for people with physical disabilities in a manner that unnecessarily segregates them in nursing

facilities, in violation of title II of the ADA, 42 U.S.C. § 12131 *et seq.* (Third Am. Compl. at ¶¶ 140, 168-69, ECF No. 98.) During this litigation, each Plaintiff has resided in a nursing facility for at least 90 days (Pls.' Mem. of Points and Authorities in Support of Their Renewed Mot. for Class Certification ("Pls.' Mem.") at 2-3, May 6, 2013, ECF No. 103), despite being eligible for and desiring to receive community-based long-term care services, (*id.* at 2 n.1). That unnecessary segregation is caused, according to the Plaintiffs, by a systemic failure on the part of the District to provide transition assistance to nursing facility residents with physical disabilities. (Motion at 1, ECF No. 103; Pls.' Mem. at 24-25, ECF No. 103.) Accordingly, the named Plaintiffs seek to represent a class of similarly situated individuals with:

> physical disabilities who, now or during the pendency of this lawsuit: (1) receive D.C. Medicaid-funded long-term care services in a nursing facility for 90 or more consecutive days; (2) are eligible to live in the community; and (3) would live in the community instead of a nursing facility if the District of Columbia would provide transition assistance to facilitate their access to long-term care services in the community.

(Motion at 1, ECF No. 103.) Plaintiffs estimate that the proposed class includes between 500 and 2,900 people. (Third Am. Compl. ¶ 154, ECF No. 98.)

The District opposes certification of the proposed class. It argues, among other things, that Plaintiffs have failed to identify a policy or practice that causes a common injury, such that class certification is improper under *DL.* (Def.'s Opp. at 1-2, 18-19, ECF No. 106.) It also argues that even if the policy alleged by the Plaintiffs satisfies Rule 23's commonality requirement, a lack of housing causes the Plaintiffs' institutionalization, making class certification inappropriate. (Def.'s Opp. at 21-22, ECF No. 106.)

## ARGUMENT

A court may certify a class under Federal Rule of Civil Procedure 23(b)(2) if two conditions are met: (1) the moving party satisfies all of the requirements of Rule 23(a), and (2)

"the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole[.]" Fed. R. Civ. P. 23(b)(2).  The requirements of Rule 23(a) are that:

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  Where a movant meets these requirements, a court has broad discretion to certify the proposed class.  *See Hartman v. Duffy*, 19 F.3d 1459, 1471 (D.C. Cir. 1994).

## I. Class Actions Are Well-Suited for Addressing System-Wide Policies and Practices That Discriminate Against People with Disabilities

It is well established that "[c]ivil rights cases against parties charged with unlawful, class-based discrimination are prime examples" of appropriate class actions under Rule 23.  *Wal-Mart*, 131 S. Ct. at 2557 (quoting *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 614 (1997)).  This is particularly true where a public entity has a policy or practice that causes unnecessary segregation of people with disabilities, in violation of the integration mandate of the ADA and the Supreme Court's opinion in *Olmstead*.  *See, e.g., Pashby v. Cansler*, 279 F.R.D. 347, 353 (E.D.N.C. 2011) (certification of class of all current or future North Carolina Medicaid recipients age 21 or older who have, or will have, coverage of personal care denied, delayed, interrupted, terminated, or reduced due to new eligibility requirements), *aff'd on other grounds sub nom. Pashby v. Delia*, 709 F.3d 307, 319 (4th Cir. 2013); *Frederick L. v. Dep't of Pub. Welfare*, 364 F.3d 487, 489 (3d Cir. 2004) ("Appellants represent a class of mental health patients institutionalized [in a large psychiatric hospital] who are qualified for and wish to be placed in a community-care setting."); *Pitts v. Greenstein*, No. 10-635-JJB-SR, 2011 U.S. Dist. LEXIS 60138, at *8 (M.D. La. June 6, 2011) (certifying class of individuals with disabilities challenging

reductions to community services); *Long v. Benson*, No. 4:08cv26-RH/WCS, 2008 U.S. Dist. LEXIS 109917, at *7 (N.D. Fla. Oct. 14, 2008) (certifying class of nursing home residents who "could and would reside in the community with appropriate community-based services.").[2] These actions frequently call for rulings on system-wide policies and practices that simultaneously affect large numbers of citizens. The common answers generated by those rulings make class treatment appropriate and efficient.

### A. Plaintiffs Satisfy Rule 23(a)'s Requirements of Commonality, Typicality, Numerosity, and Adequacy of Representation

#### 1. Commonality: A Systemic, Discriminatory Policy and Practice in the District's Long-Term Care Services System Affects All Class Members

Rule 23 requires that "there are questions of law or fact common to the class[.]" Fed. R. Civ. P. 23(a)(2). To satisfy this requirement, Plaintiffs must "demonstrate that the class members 'have suffered the same injury[.]'" *Wal-Mart*, 131 S. Ct. at 2551 (citing *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)). This can be shown through the "identification of a policy or practice that affects all members of the class[.]" *DL*, 2013 WL 1489471, at *5. A common policy or practice is crucial because, while the same provision of law can be violated in different ways, *Wal-Mart*, 131 S. Ct. at 2551, the focus on a generally applicable policy or practice necessarily means that all class members have or have not been injured by a common source. *DL*, 2013 WL 1489471, at *5. Moreover, resolution of that contention's "truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 131 S. Ct. at 2551. Where a common policy or practice is identified, "[f]actual variations among the class members will not defeat the commonality requirement[.]" *See Moore v.*

---

[2] *See also*, *Connor B. v. Patrick*, 278 F.R.D. 30, 33 (D. Mass. 2011) (denying defendants' motion to decertify class of foster children alleging harm due to systemic deficiencies in foster care system); *Oster v. Lightbourne*, No. 09-4668 CW, 2012 WL 685808, at *6 (N.D. Cal. Mar. 2, 2012) (certifying class of individuals with disabilities whose in-home support services would be reduced under new statewide policies).

*Napolitano*, No. 00-953, 2013 WL 659111, at *14 (D.D.C. Feb. 25, 2013); *Encinas v. J.J. Drywall Corp.*, 265 F.R.D. 3, 8 (D.D.C. 2010).

Plaintiffs here seek declaratory and injunctive relief to remedy a common injury: the unnecessary segregation of hundreds of people with physical disabilities who are eligible for and would prefer to receive community-based long-term care services. The glue that holds this class together is the contention that this common injury is caused by a common policy and practice: the District's failure to implement a system that provides these individuals with assistance in transitioning to the community. *See generally Wal-Mart*, 131 S. Ct. at 2551. Determining the truth or falsity of this common contention would permit the Court to resolve a key element of the Plaintiffs' ADA claim in "one stroke." *See generally id.* Accordingly, the Plaintiffs have satisfied Rule 23's commonality requirement.

### a. *DL* Does Not Limit This Court's Ability to Certify the Proposed Class

Defendant argues that class certification in this case is inappropriate under *DL*, in which the D.C. Circuit held that allegations that class members have all suffered a violation of the same provision of law are insufficient to establish commonality. *DL*, 2013 WL 1489471, at *5. The allegations in this case, however, are materially different from those at issue in *DL*. Plaintiffs here do not, as Defendant suggests (Def.'s Opp. at 18, ECF No. 106), simply allege that all class members have suffered a violation of the ADA's integration mandate, which can be violated in many different ways; instead, they have identified a specific policy and practice that they allege violates the ADA and harms all class members alike. Accordingly, their claims depend on a common contention that is capable of classwide resolution.

In *DL*, the defendant challenged the certification of a pre-*Wal-Mart* class[3] that alleged

_____

[3] After the Supreme Court issued its opinion in *Wal-Mart*, the district court declined to decertify the class. *DL v. District of Columbia*, 277 F.R.D. 38, 46 (D.D.C. 2011). It also determined that

that the District of Columbia violated the Individuals with Disabilities Education Act ("IDEA"),

20 U.S.C. § 1400 *et seq.*, by failing to provide class members with a free appropriate public

education ("FAPE"). *DL*, 2013 WL 1489471 (D.C. Cir. Apr. 12, 2013). The district court had

certified (and then declined to decertify or redefine) a class defined to include children with

disabilities whom the District of Columbia failed to "identify, locate, evaluate, *or* offer special

education and related services . . . ." *DL*, 2013 WL 1489471, at *2 (emphasis added). In doing

so, it rejected "[d]efendants['] argu[ment] that plaintiffs ha[d] impermissibly 'bundled together

multiple different allegations' of violations of various laws[,]" and the court concluded that ". . .

these differing allegations only represent the differing ways in which defendants have caused

class members' common injury." *DL v. Dist. of Columbia*, 277 F.R.D. 38, 45 (D.D.C. 2011)

*vacated and remanded*, 713 F.3d 120 (D.C. Cir. 2013). The court reasoned that multiple,

disparate failures had resulted in a common injury (violation of the IDEA) and, therefore,

plaintiffs had demonstrated commonality under *Wal-Mart*, notwithstanding the fact that plaintiffs

had not identified a single policy or practice that harmed all class members. *DL*, 277 F.R.D. at

45-46; *see DL*, 2013 WL 1489471, at *2.

The D.C. Circuit reversed, explaining that the common contention—that the District

failed to provide a free and appropriate education under IDEA—constituted only an allegation

that the class members all suffered a violation of the same provision of law. *Id.* at *5. Because a

law can be violated in a variety of ways, a plaintiff, under *Wal-Mart*, must "identif[y] [] a policy

or practice that affects all members of the class[.]" *Id.* at *5-6 ("*Wal-Mart* instructs that holding

that the District has violated the IDEA as to each class member is not enough to establish Rule

23(a) commonality, 131 S. Ct. at 2551, in the absence of a uniform policy or practice that affects

---

the plaintiffs' proposal to establish sub-classes was not necessary. *Id.* at 47.

all class members."). The class in *DL* was comprised of members asserting four different categories of legal violations under IDEA: (1) failure to identify children, (2) failure to locate children, (3) failure to evaluate children for services, and (4) failure to provide services. No single or uniform policy connected all of their claims, such that they could be resolved on a classwide basis.[4]

Here, the Plaintiffs have not simply alleged that class members have all suffered a violation of the same provision of law—namely, the integration mandate of the Americans with Disabilities Act. Instead, they have identified one policy that affects all of them and has caused their common injury. (Pls.' Mem. at 21, ECF No. 103 ("The single policy and practice at issue here is the District's failure to establish or implement a system of transition assistance for those who are unnecessarily segregated in nursing facilities to transition to more integrated, community settings").) Because the harm alleged by each class member is the result of the same alleged system-wide policy and practice, a question central to the validity to each class member's claim can be resolved in one stroke.

The District argues that its transition assistance activities involve multiple programs implemented by multiple agencies, such that any flaws in the various activities are like the various violations of D.C.'s Child Find program that did not support class certification in *DL*. (Def.'s Opp. at 18-19, ECF No. 106.) Unlike the *DL* plaintiffs, who failed to connect their disparate claims by identifying a single policy or practice that affected them all, however, the Plaintiffs here have identified the policy that has caused their classwide injury. The Plaintiffs'

---

[4] The D.C. Circuit did not hold that the plaintiffs in *DL* could not satisfy the requirements for class certification. Instead, it explained that the challenge to class certification did not "rule out the possibility of classes or subclasses that are designed around a policy or practice that links the class as a whole" or "rule out separate classes in a consolidated case." *DL*, 2013 WL 1489471, at *7. Accordingly, it vacated and remanded the case to the district court "for reconsideration whether a class, classes, or subclasses may be certified. . . ." *Id.*

claims are not based on multiple, disparate failures to comply with the law, as the claims were in *DL*; they are based on the single policy and practice of failing to provide transition assistance.

As the Supreme Court made clear in *Wal-Mart*, if the thousands of store managers had discriminated against women while following a single company-wide policy of gender-based discrimination, then the commonality requirement would have been met. *Wal-Mart*, 131 S. Ct. at 2553. Just as Wal-Mart store managers dispersed at different stores around the country could have operated under a single, general policy of discrimination, the District's agencies can operate under a single discriminatory policy and practice of failing to provide transition assistance to connect class members with community-based services. Similarly, as Senior Circuit Judge Edwards explained in his concurring opinion in *DL*, had the plaintiffs identified a clear city policy that foreclosed the processing of all IDEA claims, such a policy would have been sufficient to establish commonality, even though it would be implemented through various agencies and activities.

The plaintiffs in *Wal-Mart* and *DL* lacked evidence to demonstrate the existence of a policy connecting their claims, but the record here shows that the District in fact has a systemic policy and practice of failing to provide needed transition assistance to nursing facility residents with physical disabilities. (*See* Mem. Op. at 45-47, ECF No. 41 (noting that, except for the Money Follows the Person ("MFP") program, "there is no one in the District government who 'ha[s] a hand in assisting individuals who seek to get out of nursing facilities' or an awareness of how many individuals might want to do so" and that "the District has not demonstrated 'actual success' or 'meaningful progress'" in transitioning people from segregated to integrated settings).)

Also unlike the plaintiffs in *DL*, the Plaintiffs here are not asking the District to identify

and evaluate people with disabilities. (*See* Def.'s Opp. at 18-19, ECF No. 106.)  Class members

are already identified: They are the District's Medicaid-funded nursing facility residents who

have been institutionalized for at least 90 days.  Because the same level of care under Medicaid

determines eligibility for both nursing homes and community-based services, the District need

not re-evaluate class members to determine eligibility for community-based services.  (*See*

Iscandari Tr. 27:19-28:20, June 4, 2013, ECF No.106-1.)  The transition assistance that Plaintiffs

request is only a system to connect them to the community-based services for which they are

eligible.

### b.   None of the District's Remaining Arguments Regarding Commonality Undermine This Court's Ability to Certify the Proposed Class

The District argues that a "lack of available, accessible, and affordable housing" is "the

most prevalent obstacle preventing putative class members from leaving their nursing

facilities[.]" (Def.'s Opp. at 21, ECF No. 106.)  It surmises that this obstacle cannot be

overcome by the provision of transition assistance, and therefore, class certification is

inappropriate. (*Id.* at 21-22.)  As discussed above, however, Plaintiffs have identified a

discriminatory practice that affects all members of the class.  The District's argument that

another barrier to community-based services also harms Plaintiffs does not defeat class

certification.

Moreover, Plaintiffs have put forth evidence that it is the lack of transition assistance and

not a lack of housing that serves as a barrier to community-based placement.  As this Court

stated in its opinion denying the District's motion to dismiss, or in the alternative, for summary

judgment (ECF No. 19), the "record does not establish . . . that the housing issue cannot be

overcome[.]" (Mem. Op. at 53, ECF No. 41.)  Even when an individual has independently

located acceptable housing, the District has failed to ensure that the person was able to transition.

*See, e.g.*, (Sarigol Dep. 107:11-108:9, Feb. 25, 2013, ECF No. 103-31 (testifying that although Roy Foreman had housing, the District failed to provide him with the assistance needed to transition to the community, and he lost the housing); Roy Foreman Dep. 72:13-73:2, Mar. 21, 2013, ECF No. 103-26 (describing multiple available apartments that he could have accepted but for a lack of services)).

The District also argues that the Plaintiffs "have utterly failed to meet their burden of demonstrating a system-wide deficiency in how nursing facility residents access community-based long-term care services." (Def.'s Opp. at 22, ECF No. 106.) While a court's class certification inquiry might overlap with the merits of a plaintiff's claim, the Supreme Court and the D.C. Circuit have both cautioned against free-ranging merits inquiries. *DL*, 2013 WL 1489471, at *4 (citing *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1194-95 (2013)). The evidence shows, however, that such a policy and practice exists. As this Court previously held, "[w]ith respect to the District's claim to have a plan that demonstrates a measurable commitment to deinstitutionalization, the undisputed numbers clearly undercut any such contention." (Mem. Op. at 45, ECF No. 41.) With the exception of the MFP Program, "there is no one in the District government who 'ha[s] a hand in assisting individuals who seek to get out of nursing facilities' or an awareness of how many individuals might want to do so." (*Id.* at 47 (internal citations omitted).) The existence of staff at "MFP, ADRC, and DMH" (Def.'s Opp. at 23, ECF No. 106) does little to negate the Court's finding that "[e]ven assuming . . . that there might be other barriers for which the District is not responsible, the District has not demonstrated 'actual success' or 'meaningful progress' when only three individuals have moved and it cannot establish a baseline from which to measure that number[,]" (Mem. Op. at 46, ECF No. 41). Nor can the District avoid these findings by noting that, "[t]o date, MFP has assisted 43

nursing facility residents in successfully transitioning to community-based settings." (Def.'s

Opp. at 7, ECF No. 106 (failing to indicate how many of those individuals have physical

disabilities or would otherwise satisfy the class definition).) The Plaintiffs allege that at least

500 putative class members remain institutionalized because of the State's policy and practice of

not providing transition assistance. The evidence amply supports the Plaintiffs' contention.

### 2. Typicality: Named Plaintiffs and Proposed Class Members All Suffer the Same Injury (Unnecessary Segregation), and That Injury Stems from the Same Discriminatory Practice (Defendant's Failure to Provide Transition Assistance)

"[A] class representative's claims are typical of those of the class if 'the named plaintiffs'

injuries arise from the same course of conduct that gives rise to the other class members'

claims.'" *Encinas*, 265 F.R.D. at 9 (quoting *Bynum v. District of Columbia (Bynum I)*, 214

F.R.D. 27, 35 (D.D.C.2003)); *Stewart v. Rubin*, 948 F. Supp. 1077, 1088 (D.D.C. 1996), *aff'd*,

124 F.3d 1309 (D.C. Cir. 1997) (claims are typical where the "same event or practice or course

of conduct that gives rise to a claim of another class member's where his or her claims are based

on the same legal theory."). "Typical," of course, does not mean identical. *Moore v.

Napolitano*, No. 00-953 RWR/DAR, 2013 WL 659111, at *16 (D.D.C. Feb. 25, 2013). Factual

variations between class representatives and class members can exist. *Encinas*, 265 F.R.D. at 9

("A plaintiff's claims can be typical of those of the class even if there is some factual variation

between them."); *see Moore*, 2013 WL 659111, at *16.

As courts have repeatedly noted, the typicality and commonality requirements of Rule 23

often merge. *Wal-Mart*, 131 S. Ct. at 2551 n.5. That is particularly true where individual

plaintiffs seek to represent a class of individuals who have been subjected to a generally

applicable policy and practice of discrimination. *See, e.g., McReynolds v. Sodexho Marriott

Servs., Inc.*, 208 F.R.D. 428, 444-45 (D.D.C. 2002) (finding that class representatives' claims

were typical of class members' claims where the class representatives demonstrated that defendant had a common policy and practice of racial discrimination in promotion practices that affected both class representatives and class members); *Encinas*, 265 F.R.D. at 9 (finding typicality where plaintiffs' and putative class members' claims "all arise from the same alleged course of conduct: [defendant's] policy of retaining ten percent of its drywall employees' gross wages.").

Here, the members of the putative class and all of the named Plaintiffs are individuals with physical disabilities who have resided in a nursing facility for at least 90 days. The named Plaintiffs and the proposed class members have all suffered the same type and manner of injury: unnecessary segregation in nursing facilities despite their ability and desire to receive services in the community. That common injury stems from the same discriminatory practice: the District's failure to assist people with disabilities in transitioning to more integrated settings in the community. The claims and the declaratory and injunctive relief sought by all of the named Plaintiffs and the putative class members are identical too. Accordingly, the proposed class representatives' claims typify those of the class.

### 3. Numerosity: The District's Own Programs Acknowledge That Hundreds of Putative Class Members Need Assistance Transitioning to the Community

With hundreds of putative members, the proposed class satisfies the requirement of Rule 23(a)(1) that "the class is so numerous that joinder of all members is impracticable[.]" Courts have generally found that a class with at least 40 members satisfies this requirement. *See Meijer v. Warner Chilcott Holdings, Inc.*, 246 F.R.D. 293, 306 (D.D.C. 2007) (certifying class of approximately 30 people); *Disability Rights Council of Greater Wash. v. Wash. Metro. Area Transit Auth.*, 239 F.R.D. 9, 25 (D.D.C. 2006). Plaintiffs are not required "to provide an exact number of putative class members in order to satisfy the numerosity requirement." *Pigford v.*

13

*Glickman*, 182 F.R.D. 341, 347 (D.D.C. 1998) (citing *Marcial v. Coronet Ins. Co.*, 880 F.2d 954,

957 (7th Cir. 1989)).  An estimate will suffice.  *Moore*, 2013 WL 659111, at *13-14 (class

sufficiently numerous where plaintiffs "estimate[d] that the class would contain 120 members");

*Hardy v. District of Columbia*, 283 F.R.D. 20, 23-24 (D.D.C. 2012) (numerosity requirement

satisfied where plaintiffs provided evidence supporting their estimate as to the size of the class).

     Here, Plaintiffs estimate that the class includes no fewer than 500 people and as many as

2,900.  (Pls.' Mem. at 19, ECF No. 103.)  As this Court has previously observed, the District has

acknowledged the demand for community-based long-term care services by people with physical

disabilities who are institutionalized in nursing facilities for at least 90 days.  (Mem. Op. at 20,

24-25 n.39, ECF No. 41.)  When the District implemented the MFP Program, it did so "for the

purpose of facilitating the transition of individuals from institutional settings to the community

and community-based services[.]"  (Sarigol Aff. ¶ 4, Apr. 26, 2011, ECF No. 19-3.)  At that

time, it proposed transitioning, via the MFP program, 645 nursing home residents with physical

disabilities.  (Mem. Op. at 20, 24-25 n.39, ECF No. 41.)  Even its lowered 2011 target proposed

transitioning 480 nursing home residents.  (*Id.*)  Moreover, when the District surveyed 377

nursing home residents about their housing preference, it found that 283 people wanted to live in

the community.  (Sarigol Dep. 146:16-21, Feb. 25, 2013, ECF No. 103-31.)  *Cf. Stewart v.*

*Rubin*, 948 F. Supp. 1077, 1088 (D.D.C. 1996), *aff'd*, 124 F.3d 1309 (D.C. Cir. 1997) (245-

member class satisfies numerosity requirement).  This evidence amply supports the Plaintiffs'

estimate.  (*See also* Turnage Dep. 95:15-19, Mar. 15, 2013, ECF No. 103-28 (District's 2010

Operational Protocol references demand by 580 nursing facility residents who expressed desire

to move back to the community); Iscandari Dep. 50:13-51:15, Mar. 20, 2013, ECF No. 103-35

(2010 MDS data revealed 21% of 2,499 nursing facility residents expressed interest in

transitioning to the community).)

####    4.   Adequacy of Representation: The Class Representatives Are Well-Suited to Represent the Interests of the Putative Class

Rule 23(a)(4) requires that a class representative "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Courts in this Circuit consider two principal requirements. First, "the named representative must not have antagonistic or conflicting interests with the unnamed members of the class[.]" *Sodexho*, 208 F.R.D. at 446 (quoting *Nat'l Assoc. for Mental Health, Inc. v. Califano*, 717 F.2d 1451, 1457 (D.C. Cir. 1983)). "The leading case in this Circuit on the question of conflict of interest is *Phillips v. Klassen*, 502 F.2d 362 (D.C. Cir. 1974)[,]" and it counsels that courts should "focus on the remedies sought by the named plaintiffs and [] determine whether the same relief would also likely be desired by the rest of the class." *Sodexho*, 208 F.R.D. at 446. The second requirement is that "the representatives must appear able to vigorously prosecute the interests of the class through qualified counsel." *Id.*

Here, the individually named Plaintiffs' interests align well with the interests of the class. As discussed above, the named Plaintiffs and the putative class members suffer the same alleged injury (segregation in nursing facilities), and that common injury stems from a single discriminatory policy and practice of failing to provide transition assistance. Because institutionalization pervades every aspect of an individual's life, it is likely that the named Plaintiffs' desire to end their unnecessary segregation is also "desired by the rest of the class." *Sodexho*, 208 F.R.D. at 446. Accordingly, their interests in obtaining injunctive and declaratory relief to remedy the failure to provide transition assistance coincide. Moreover, the relief requested by each class representative is no greater and no less than the relief that class members would receive.

The District argues that Plaintiffs' interests conflict with those of the class because

Plaintiffs have not sought damages. (Def.'s Opp. at 28-30, ECF No. 106.) It further argues that

this Court could not certify the proposed class if Plaintiffs had sought monetary damages,

because "each putative class member would have an individualized claim for damages." (*Id.* at

30 n.16.) The District's position is contradicted by numerous title II cases where courts certified

classes under Rule 23(b)(2) that sought solely declaratory and injunctive relief. *See, e.g.*,

*Pashby*, 279 F.R.D. at 349 (certification of class under Rule 23(b)(2), where class sought

injunctive relief only, based on alleged violations of title II of the ADA); *Lane*, 283 F.R.D. 587

(Rule 23(b)(2) class of individuals with disabilities seeking solely injunctive relief based on

alleged violations of title II of the ADA); *Pitts*, 2011 U.S. Dist. LEXIS 60138, at *3, *21

(certifying class under Rule 23(b)(2) where plaintiffs sought only declaratory and injunctive

relief based on alleged violations of title II of the ADA); *Connor B.*, 278 F.R.D. at 34 (denying

defendants' motion to decertify Rule 23(b)(2) class in title II case where Plaintiffs' claims were

"limited to injunctive relief"); *Brooklyn Ctr. for Independence of the Disabled v. Bloomberg*, No.

11-civ-6690 JMF, 2012 WL 8319310, at *8-9 (S.D.N.Y. Nov. 16, 2012) (certifying class of

individuals with disabilities where "[i]nstead of seeking damages, [plaintiffs] seek only

injunctive relief" based on alleged violations of title II of the ADA); *Kerrigan v. Philadelphia

Bd. of Educ.*, 248 F.R.D. 470, 475, 477-78 (E.D. Pa. 2008) (certifying a class of individuals with

disabilities where plaintiffs sought injunctive and declaratory relief, exclusively, based on

alleged violations of title II of the ADA).

Moreover, this Circuit has rejected the very premise on which the District's argument

rests: "A suit for damages is not precluded by reason of the plaintiff's membership in a class for

which no monetary relief is sought."[5] *Norris v. Slothouber*, 718 F.2d 1116, 1117 (D.C. Cir.

---

[5] The court in *In re Vitamin C Antitrust Litig.*, 279 F.R.D. 90 (E.D.N.Y. 2012), noted that:

1983) (per curiam). No conflict can exist where the present action does not limit class members' ability to seek damages in the future. Rather, the class representatives and class members have a unified interest in remedying a District policy and practice that is discriminatory.

## B. Injunctive and Declaratory Relief Under Rule 23(b)(2) Are Appropriate for Class-Wide Relief in This Matter

The District's suggestion (Def.'s Opp. at 35-36, ECF No. 106) that a single injunction must remedy *all* harms suffered by a class certified under Rule 23(b)(2) is clearly erroneous under *DL*, which requires only that a single injunction benefit all class members, not that a single injunction remedy all harms suffered by all class members. *DL*, 2013 WL 1489471, at *6; *see McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 672 F.3d 482, 491 (7th Cir. 2012), *cert. denied*, 133 S. Ct. 338 (2012). The D.C. Circuit stated unequivocally in *DL* that "although Rule 23(b)(2) 'applies only when a single injunction or declaratory judgment would provide relief to each member of the class,' [*Wal-Mart*, 131 S. Ct.] at 2558, the Rule does not bar courts from granting further equitable relief that does not reach every plaintiff in the case." *DL*, 2013 WL 1489471, at *6; *see McReynolds*, 672 F.3d at 491 (Rule 23(b)(2) appropriate post-*Wal-Mart* even though "[e]ach class member [in a title VII case alleging race-based employment discrimination] would have to prove that his compensation had been adversely affected by the corporate policies, and by how much . . . . [A]t least it wouldn't be necessary in each of those trials to determine whether the challenged practices were unlawful."). The common relief

---

    [E]very federal court of appeals that has considered the question has held that a class action seeking *only declaratory or injunctive relief* does not bar subsequent individual suits for damages. Although some of these courts have appeared to limit their holdings to particular contexts—such as prisoners' conditions of confinement—the Ninth Circuit has gone so far as to hold that it would offend due process to preclude any suit for damages as a result of prior membership in a Rule 23(b)(2) class seeking only injunctive relief.

279 F.R.D. at 114-15 (citations omitted).

simply "must respond, at least in part, to a common harm suffered as a result of a policy or practice that affects each class member." *DL*, 2013 WL 1489471, at *6.

Similarly, the District's contention that the Plaintiffs would require individualized relief in addition to systemic relief (Def.'s Opp. at 39-40, ECF No. 106) warrants no weight. The Plaintiffs here do not request individualized relief or individualized determinations from the Court. Rather, they request injunctive relief that would benefit each class member. In class-wide *Olmstead* cases such as this one, injunctive relief typically requires states to take steps to provide their services to plaintiffs in compliance with the ADA. *See Lane*, 283 F.R.D. at 594-602 (certifying Rule 23(b)(2) class where "plaintiffs seek to enforce the Employment First Policy by ordering defendants to take specific classwide operational actions to comply with the integration mandate"); *State Office of Prot. & Advocacy v. Connecticut*, 706 F. Supp. 2d 266, 286 (D. Conn. 2010) (defendants would individually evaluate plaintiffs); *Colbert v. Blagojevich*, No. 07-C-4737, 2008 WL 4442597, at *3 (N.D. Ill. Sept. 29, 2008) (defendants (not the court) would determine individuals' needs).[6]

---

[6] Many other courts have recognized that a Rule 23 class action for declaratory and injunctive relief is an appropriate vehicle for challenging, under *Olmstead*, systemic denials of community services to persons with disabilities. *See, e.g.*, *Townsend v. Quasim*, 328 F.3d 511, 515 (9th Cir. 2003) ("Mr. Townsend filed suit on behalf of himself and a class of similarly situated Medicaid recipients certified by the district court, seeking to enjoin the requirement that he move to a nursing home as a condition of receiving needed, available Medicaid services."); *Frederick L.*, 364 F.3d at 498 ("Appellants represent a class of mental health patients institutionalized . . . [and] who are qualified for and wish to be placed in a community-care setting."); *Messier v. Southbury Training Sch.*, 562 F. Supp. 2d 294, 298 (D. Conn. 2008) (noting previous certification of "the plaintiff class to include all current STS residents, persons who might be placed at STS in the future, and persons who were transferred from STS but remain under the control of the STS Director."); *Long*, 2008 U.S. Dist. LEXIS 109917, at *7 (certifying class of nursing home residents who "could and would reside in the community with appropriate community-based services."); *Pitts*, 2011 U.S. Dist. LEXIS 60138, at *8 (certifying class of persons with disabilities challenging reductions to community services). This has been the case even though services ultimately provided to class members may vary based on individual needs.

Despite the District's arguments, the present case epitomizes the Rule 23(b)(2) class action. The District has "refused to act on grounds that apply generally to the class" by failing to administer its long-term care services system in a manner that would allow the putative class to receive services in the most integrated setting appropriate to their needs. *See* Fed. R. Civ. P. 23(b)(2). It has done so through an alleged systemic policy and practice of failing to provide transition assistance. The Plaintiffs seek "final injunctive relief or corresponding declaratory relief . . . respecting the class as a whole[.]" *Id.*; *see also* (Third Am. Compl. Request for Relief at 34-36, ECF No. 98).

Not only is it possible to issue an injunction that resolves the Plaintiffs' ADA claim by requiring the District to implement a transition assistance system that links individuals to community-based services, it is the efficient approach to remedying this claim.

**CONCLUSION**

For the reasons stated above, the Court should grant Plaintiffs' Renewed Motion for Class Certification. With the Court's permission, counsel for the United States will be present and prepared to argue the present Statement at any upcoming hearings regarding the Motion, should such argument be helpful to the Court.

Dated: June 26, 2013                    Respectfully submitted,

                                        THOMAS E. PEREZ
                                        Assistant Attorney General

                                        EVE L. HILL
                                        Senior Counselor to the Assistant Attorney General

                                        ALISON N. BARKOFF
                                        Special Counsel for *Olmstead* Enforcement
                                        Civil Rights Division

                                        REBECCA B. BOND
                                        Chief
                                        SHEILA FORAN
                                        Special Legal Counsel
                                        ANNE RAISH
                                        Deputy Chief


                                        /s/ *Nicholas C. Lee*
                                        NICHOLAS C. LEE (D.C. Bar No. 1004186)
                                        JOY LEVIN WELAN (D.C. Bar No. 978973)
                                        Trial Attorneys

                                        Disability Rights Section
                                        Civil Rights Division
                                        U.S. Department of Justice
                                        950 Pennsylvania Avenue, N.W. - NYA
                                        Washington, D.C. 20530
                                        Telephone: (202) 305-0369
                                        Facsimile: (202) 305-9775
                                        nicholas.lee2@usdoj.gov
                                        *Counsel for the United States*

## CERTIFICATE OF SERVICE

I hereby certify that on June 26, 2013, a copy of the foregoing was served on all counsel of record via the Court's electronic filing system.

*/s/ Nicholas C. Lee*
NICHOLAS C. LEE (D.C. Bar No. 1004186)
Trial Attorney
Disability Rights Section
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Avenue, N.W. - NYA
Washington, D.C. 20530
Telephone: (202) 305-0369
Facsimile: (202) 305-9775
nicholas.lee2@usdoj.gov

*Counsel for the United States*