**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTICT OF MISSISSIPPI
NORTHERN DIVISION**

UNITED STATES OF AMERICA,

     *Plaintiff,*

       v.

STATE OF MISSISSIPPI,

     *Defendant.*

CIVIL ACTION NO.
3:16-CV-00622-CWR-FKB

**UNITED STATES' RESPONSE TO THE STATE OF MISSISSIPPI'S OBJECTIONS TO
SPECIAL MASTER'S REQUEST FOR EXTRA-RECORD INTERVIEWS**

The Special Master seeks authority from the Court to communicate with employees of

the Mississippi Department of Mental Health ("DMH") and Division of Medicaid ("DOM") who

have "day-to-day responsibilities for implementing programs, monitoring quality, and working

with" Community Mental Health Centers ("CMHCs") and State Hospitals in Mississippi.

Special Master's Memorandum to the Court, May 9, 2020.  The United States supports the

Special Master's request as a logical extension of his mediation duties.  Informal conversations

between the Special Master, counsel of record, and Party representatives are already occurring in

the mediation process, and the State is willing, subject to specified conditions, to make State

agency staff available for interviews.  State's Objections to Special Master's Request for Extra-

Record Interviews ("State's Objections"), ECF No. 246, at 4-5.  The United States requests that

the Court modify its Order Appointing Special Master, ECF. No 241, to clarify the Special

Master's authority, including with respect to extra-record interviews and information sharing.

### I.    Factual Background

On February 25, 2020, the Court issued its Order appointing Dr. Michael Hogan Special

Master in this case.  ECF No. 241 ("Appointment Order").  Dr. Hogan's charge, as set forth in

the Appointment Order, is "to review the record, confer with counsel of record, and propose a plan to remedy the ADA violations identified in the [Court's] September 3, 2019 Order," to include a "timeline for the State to reach full compliance" and a process for "measur[ing] success along the way." *Id.* at 3-4.

The Court found that "Mississippi's mental health needs are well-known [and] the services to expand have already been defined," obviating the need for additional discovery or consultants to aid Dr. Hogan. *Id.* at 3. However, recognizing that certain extra-record communications are necessary "as a practical matter and to help the parties find common ground," the Court authorized the Special Master to have *ex parte* contacts with counsel of record and the Court. Those communications are protected under Federal Rule of Evidence 408. *Id.* at 3-4.

On March 6, the United States informed the Court, via email (Ex. 1), that the Parties had reached a shared understanding regarding the provision in the Court's Appointment Order relating to *ex parte* communications by the Special Master. Specifically, the Parties agreed that Dr. Hogan may communicate with "Party representatives in this matter if counsel of record consent to that communication," permitting for example the Executive Director of DMH, Diana Mikula, to participate in discussions with Dr. Hogan alongside counsel of record during mediation sessions. Ex. 1. Consistent with that understanding, the mediation sessions that have occurred thus far have included representatives of DMH and DOM, in addition to Dr. Hogan and counsel of record.

On April 23, in a Status Report to the Court, Dr. Hogan asked for authority "to interact with any staff or stakeholders involved in the Mississippi mental health system," to the extent needed to "facilitate development of the Plan the Court has directed." Dr. Hogan described his

lack of access to staff at DMH, DOM, and the CMHCs, among other stakeholders, as a potential "barrier" to achieving a plan that both addresses the violations identified in the Court's September 3, 2019 Order and is "practicable for the State." Dr. Hogan reiterated his request during a Status Conference before the Court on April 27. During the Status Conference, the Court granted the United States' request to submit a Proposed Order seeking to clarify the Special Master's authority to receive extra-record information, his record-keeping obligations, and other related matters.

On May 6, the State filed its objections to Dr. Hogan's request for extra-record interviews. ECF No. 246. While the State opposes allowing Dr. Hogan "to speak with an unlimited number of unidentified staff and stakeholders over an unlimited time," it has offered to "work with [him]" to make particular "staff" "reasonably available" at Dr. Hogan's request, provided that the communications are subject to FRE 408 and that the State's counsel is present. *Id.* at 3-5.

On May 9, Dr. Hogan submitted a memorandum to the Court that modifies his request for extra-record interviews, seeking authority for a "more focused set of conversations" with DMH and DOM staff who have "day-to-day responsibilities for implementing programs, monitoring quality, and working with" the CMHCs and the State Hospitals. Dr. Hogan also identified a potential need for discussions with certain CMHC staff, but advised that it "may not be necessary to cross that bridge at this time."

## II.    Legal Standard

In appointing a special master pursuant to Federal Rule of Civil Procedure 53, district courts have broad discretion to determine the scope of the master's powers and responsibilities. *Agric. Servs. Ass'n, Inc. v. Ferry-Morse Seed Co.*, 551 F.2d 1057, 1071 (6th Cir. 1977). *See* Powers of Masters, 9C Fed. Prac. & Proc. Civ. § 2609 (3d ed.). Those powers

and responsibilities must be set forth in the court's order appointing the special master.  Fed. R.

Civ. P. 53(b)(2)(A). *See Gary W. v. State of La.*, 601 F.2d 240, 245 (5th Cir. 1979) (finding that

special master's duties as factfinder, monitor, and hearing officer in case involving

institutionalization of children with disabilities were clearly spelled out in appointment order and

comported with the requirements of Rule 53).

Courts have on occasion authorized informal communications between the special master

and third parties, particularly in the context of monitoring compliance with court-ordered

remedies.  *Ruiz v. Estelle*, 679 F.2d 1115, 1170 ("The special master may conduct confidential

interview and meetings . . . with any prisoner or group of prisoners under the jurisdiction of the

Texas Department of Corrections."), *amended in part, vacated in part*, 688 F.2d 266 (5th Cir.

1982); *Alberti v. Klevenhagen*, 660 F.Supp. 605, 610 (S.D. Tex. 1987) (authorizing the special

master "to conduct unimpeded confidential interviews with any County employee, . . . or any

inmate"); *Toussaint v. McCarthy*, 597 F.Supp. 1388, 1420 (N.D. Cal. 1984) (authorizing the

special master to interview confidentially anyone affected by the court's permanent injunction),

*aff'd in part, rev'd in part, vacated in part*, 801 F.2d 1080 (9th Cir. 1986). *But see In Re: Brooks*,

383 F.3d 1036, 1044-46 (D.C. Cir. 2004) (special master appointed in connection with litigation

concerning the management of Indian trust accounts should have been recused from contempt

proceeding because the master had numerous *ex parte* communications with witnesses and

unidentified third parties, introducing the risk of "unchecked and uncheckable partiality").

The district court may amend an appointment order to modify the special master's

powers as needed after giving the parties an opportunity to be heard.  Fed. R. Civ. P. 53(b)(4).

*See Conwed Corp. v. Union Carbide Corp.*, 2004 WL 45500, *5 (D. Minn. 2004) (amending

appointment order to allow for special master to take evidence, make findings, and calculate amounts payable).

### III.   The Special Master Should Be Permitted to Communicate with State Agency Staff in His Capacity as Mediator

Dr. Hogan's role as Special Master, as the United States understands it, is two-fold. His first task is to help the Parties reach agreement through mediation, which necessarily requires communication with and between the Parties. The mediation process is underway. As Dr. Hogan has acknowledged, the Parties' proposals for remedying the State's violations of the Americans with Disabilities Act differ widely in "substance and breadth," leaving "considerable work . . . to be done." Special Master's Status Report to the Court, April 23, 2020. If the Parties do not reach agreement, Dr. Hogan's second task is to propose a remedial plan based on the evidence in the record and in response to the Parties' proposals.

The United States supports Dr. Hogan's request, as stated in his May 9 memorandum to the Court, to interview in his capacity as a mediator certain DMH and DOM staff who have "day-to-day responsibilities for implementing programs, monitoring quality, and working with" the CMHCs and the State Hospitals. Special Master's Memorandum to the Court, May 9, 2020. Communication between Dr. Hogan, counsel of record, and Party representatives such as Ms. Mikula is already occurring through the mediation process. Indeed, the State has also provided Dr. Hogan with written information regarding Mississippi's mental health service system that is outside the trial record. The State has indicated that it does not oppose further conversations of this nature between Dr. Hogan and DOM and DMH staff, and has offered to make particular individuals "reasonably available" subject to two conditions—that Rule 408 apply and that counsel for the State be present. State's Objections at 4. The United States objects to neither condition and requests that counsel for the United States also be present for those discussions in

the interest of fairness and transparency.  In addition, the United States requests that Dr. Hogan maintain a list of all State employees whom he interviews and any documents he obtains that are outside the record.

Critically, the purpose of Dr. Hogan's communications with Party representatives, counsel of record, and State agency staff is, and should remain, to guide his efforts "to help the parties find common ground." *See* Appointment Order at 3.  Under the current Appointment Order, Dr. Hogan is not a fact finder and, as the State points out, does not work on a blank canvas.  State's Objections at 1-2.  Should the Parties disagree over any aspect of the proposed remedial order, Dr. Hogan's proposal to the Court on that point should be rooted in the record, including any evidence admitted after the trial by stipulation or otherwise.  To the extent that Dr. Hogan's communications with DOM or DMH staff during the mediation process yield documents or information that he or the Parties believe should be made part of the record, the United States recommends that the Parties confer regarding a proposal for supplementation or, alternatively, raise the matter for the Court.

The United States requests that, at this time, the Court decline to expand the scope of Dr. Hogan's extra-record communications to include interviews with individuals other than Party representatives, State agency staff, and counsel of record.  As Dr. Hogan has stated, he and the Parties will be in a better position later in the mediation process to assess whether conversations with CMHC staff or other third-party stakeholders will be needed.  Special Master's Memorandum to the Court, May 9, 2020.

The United States has prepared a Proposed Order (Ex. 2) clarifying Dr. Hogan's authority as Special Master consistent with Rule 53, including with respect to extra-record interviews and information gathering.   In an effort to avoid confusion, the Proposed Order is a full Rule 53

6

appointment order that incorporates the existing Order, ECF No. 241, the Special Master's authority to speak to State employees as briefed above, and provisions that the United States understands to be the Court's expectations regarding the Special Master process, Ex. 2 at Section B (communication with media), Section C (preservation and record keeping), Section D (standard of review), and Section F (reporting and Rule 53(c) duties).

## IV.   Conclusion

For the foregoing reasons, the United States requests that the Court permit the Special Master, in his capacity as mediator, to communicate with State agency staff in addition to Party representatives and counsel of record, provided those communications are subject to FRE 408 and that counsel for both Parties be present.  The United States further requests that the Court modify the Appointment Order, ECF No. 241, to clarify the Special Master's authority as suggested in the United States' Proposed Order (Ex. 2).

Dated: May 13, 2020

D. MICHAEL HURST, JR.
United States Attorney
Southern District of Mississippi

MITZI DEASE PAIGE [MS BAR 6014]
Assistant United States Attorneys
501 E. Court Street, Suite 4.430
Jackson, MS 39201
Telephone: (601) 973-2840
mitzi.paige@usdoj.gov

ERIC S. DREIBAND
Assistant Attorney General
Civil Rights Division

STEVEN H. ROSENBAUM
Chief

REGAN RUSH
Deputy Chief

/s/ *Patrick Holkins*
PATRICK HOLKINS [VA Bar 85665]
DEENA FOX
Trial Attorneys
Special Litigation Section
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Avenue, N.W. – 4CON
Washington, DC  20530
Telephone: (202) 305-6630
Patrick.Holkins@usdoj.gov

7

**CERTIFICATE OF SERVICE**

I hereby certify that on May 13, 2020, I electronically filed the foregoing with the Clerk of Court using the ECF system, which sent notification of such filing to all counsel of record.

*/s/ Patrick Holkins*
Patrick Holkins