**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

**UNITED STATES OF AMERICA**                                              **PLAINTIFF**

**V.**                                              **CAUSE NO. 3:16-CV-622-CWR-FKB**

**STATE OF MISSISSIPPI**                                               **DEFENDANT**

## REMEDIAL ORDER

1. In accordance with the terms of this Plan, the State of Mississippi must develop and implement effective measures to prevent unnecessary institutionalization in State Hospitals. Those measures shall include providing—either directly or through certified providers—adequate and appropriate services and supports to adults with serious mental illness, described below.
2. The State has established regional Community Mental Health Centers (CMHCs), which work in conjunction with and are subject to oversight by the State. Consistent with the State's Operational Standards for mental health providers and the State's Report, each CMHC shall be the entity in its region responsible for preventing unnecessary hospitalizations by:
    a. identifying individuals with serious mental illness in need of mental health services;
    b. screening individuals with serious mental illness during annual planning meetings to determine their need for the services required by this Plan;
    c. coordinating mental health care for individuals with serious mental illness; and
    d. diverting individuals from unnecessary hospitalizations through the provision of appropriate mental health care.
3. The State has adopted key services that can prevent adults with serious mental illness from being unnecessarily hospitalized in State Hospitals. These services include Mobile Crisis Teams, Crisis Stabilization Units, Programs of Assertive Community Treatment, Intensive Community Outreach and Recovery Teams, Intensive Community Support Specialists, Permanent Supported Housing, Supported Employment, Peer Support, and Community Support Services (collectively, Core Services).
4. Mobile Crisis Teams:
    a. Mobile Crisis Teams (also known as Crisis Response Services) provide face-to-face interventions at the site of a mental health crisis, including at the person's home, to de-escalate the crisis without unnecessarily either removing the person from the community or referring the person to a hospital for psychiatric treatment. The Operational Standards for Crisis Response Services including Mobile Crisis Services are set forth in Rules 19-19.4 of DMH's Operational Standards.
    b. The State will sustain one Mobile Crisis Team in each Region except Region 12. Region 12 is operating and will sustain two Mobile Crisis Teams — one in Hattiesburg and one in the former Region 13.

    c. The State will maintain its regional crisis hotlines that are staffed 24 hours per day, seven days per week, with staff who assess a crisis by phone, assist with immediate stabilization efforts, and help a caller identify and connect with ongoing local services. Mississippi will require the Mobile Crisis Teams to work with law enforcement personnel to respond to people in crisis who come in contact with law enforcement and will seek to coordinate the regional crisis hotlines with 911 dispatch to ensure the appropriate response involving Mobile Crisis personnel and/or law enforcement/Emergency Medical Technicians.

    d. The State will monitor performance of Mobile Crisis Teams including response times defined in its Operational Standard 19.3, E, 1.

5. Crisis Residential Services:
    a. Crisis Residential Services (also known as Crisis Stabilization Units) provide time-limited residential treatment to persons who are experiencing a period of acute psychiatric distress which severely impairs their ability to cope with normal life circumstances. The Operational Standards for Crisis Residential Services are set forth in Rules 19.5-19.7 of DMH's Operational Standards.
    b. The State will provide Crisis Residential Services in each Region as except Region 11. Mississippi will sustain its existing Crisis Residential Services capacity — *i.e.*, a capacity of 172 beds.
    c. The State will fund Crisis Residential Services in Region 11 through the Region 11 CMHC or another DMH certified provider so that these services are available before the end of FY22; this unit will have the capacity to serve at least 12 persons at any given time. Mississippi will sustain that additional Crisis Residential Services capacity.
    d. The State will continue providing access to Crisis Residential Services for Region 15 in neighboring Regions and will evaluate the access of Region 15 citizens to Crisis Residential Services.
    e. The State will monitor utilization of Crisis Residential Services including the number of individuals served who are diverted from State Hospital admission and admitted to State Hospitals from Crisis Residential Services or without having been first served in Crisis Residential Services.

6. Programs of Assertive Community Treatment (PACT): PACT is an individual-centered, recovery-oriented intensive mental health services delivery model for facilitating community living, psychological rehabilitation and recovery for people who have the most severe and persistent mental illnesses, have severe symptoms and impairments, and have not benefitted from traditional outpatient services. The Operational Standards for PACT are set forth in Rules 32.1-32.8 of DMH's Operational Standards.
    a. Mississippi will sustain 10 PACT teams. The PACT teams will provide intensive community services in the Regions and counties identified in Exhibit 1. PACT teams will meet Operational Standards 32.1-32.8.
    b. To assure PACT teams function as intended, DMH will conduct reviews of each team periodically using a recognized fidelity scale (e.g., from SAMHSA, Dartmouth, or Case Western Reserve Center for Evidence Based Practices). The State will submit its fidelity scale and assessment schedule with its Implementation Plan.

7. Intensive Community Outreach and Recovery Teams (ICORT). ICORT is a recovery and resiliency oriented, intensive, community-based rehabilitation and outreach service for adults with a severe and persistent mental illness. ICORT, like PACT, is a multidisciplinary, community-based mobile service. The teams and caseloads are smaller as ICORT is designed to serve smaller communities. The Operational Standards for ICORT for adults are set forth in Rules 32.9-32.13 of DMH's Operational Standards.
    a. Mississippi will sustain 16 ICORTs in the Regions and counties identified in Exhibit 1. ICORT teams will meet the criteria in Rules of D32.9-32.13 of DMH's Operational Standards.
    b. To assure ICORTS function as intended, the State will develop a fidelity scale based on the Operational Standards and periodically conduct fidelity reviews. The State will submit its fidelity scale and assessment schedule with its Implementation Plan.
8. Intensive Community Support Specialists (ICSS). ICSS are clinical professionals who work with a small caseload of individuals with the most serious mental illness (maximum 20), generally in communities where PACT and ICORT services are impractical because of small populations in rural areas, have direct involvement with the person, and attempt to develop a caring, supportive relationship with the person served. The Operational Standards for Intensive Community Support Services are set forth in Rule 32.18 of DMH's Operational Standards.
    a. Mississippi will fund and sustain 35 full time ICSS. The ICSS will provide intensive community services in the counties identified in Exhibit 1.
    b. ICSS services will meet the criteria of Rule 32.18.
9. Supported Employment Services are evidence-based services that assists persons with severe and persistent mental illness in obtaining and maintaining competitive employment. The Operational Standards for Supported Employment are set forth in Rules 24.4-24.6 of DMH's Operational Standards.
    a. The State will provide Supported Employment Services by two methods: (i) Individual Placement and Support (IPS) services, and (ii) Supported Employment Specialists that partner with Mississippi Department of Rehabilitation Services Office of Vocational Rehabilitation (MDRS). Mississippi will provide Supported Employment services in each Region using one of these methods.
    b. Mississippi will sustain existing IPS services in CMHC Regions 2, 7, 10, and 12. By the end of FY22, Mississippi will develop IPS in Regions 4, 8, and 9 and will sustain IPS services in those Regions.
    c. IPS services will meet the criteria of Rule s 24.4-24.6.
    d. In Regions without IPS services, Mississippi will offer supported employment through Supported Employment Specialists that are partnering with MDRS through an MOU between the Region and MDRS.
    e. Mississippi will measure fidelity of IPS Supported Employment Services using the <u>Supported Employment Fidelity Review Manual</u> developed by the IPS Employment Center.
    f. Mississippi will measure fidelity of VR partnering Supported Employment Specialists to key elements of IPS by assessing fidelity to key elements of evidence-based Supported Employment. Elements will be selected by DMH but include at least: Integration of Rehabilitation with Mental Health Treatment, Zero

       Exclusion Criteria, Rapid Job Search for Competitive Job, and Time-unlimited Follow-along Supports.

    g. The State will submit its fidelity scales for IPS and Supported Employment with its Implementation Plan,

10. Peer Support Services are person-centered activities with a rehabilitation and resiliency/recovery focus that allow a person receiving mental health services and substance use services and their family members the opportunity to build skills for coping with and managing psychiatric symptoms, substance use issues, and challenges associated with various disabilities while directing their own recovery. The Operational Standards for Peer Support Services are set forth in Rules 42.1-42.3 of DMH's Operational Standards.
    a. The State will sustain Peer Support Services in every Region by providing Peer Support Services at the primary CMHC office in each Region. Peer Support Services will meet the criteria of Rules 42.1-42.3.
    b. By the end of FY22 the State will implement a plan to provide Peer Support Services at other, *e.g.*, satellite CMHC offices, including those offices that provide service five days a week.
    c. By the end FY 22, the State will provide Peer Bridger Program services at each State Hospital and integrate such services into discharge planning for persons discharged from a State Hospital.

11. Permanent Supported Housing (supported housing) is an evidence-based practice that provides an integrated, community-based alternative to hospitals, nursing facilities, and other segregated settings. In Mississippi, supportive housing services are delivered through the CHOICE program. The rental assistance component of the CHOICE program is operated by the Mississippi Home Corporation (MHC).
    a. Mississippi will sustain the current capacity of CHOICE including $150,000 in additional funding provided to CHOICE Providers in FY 21 to conduct assessments of people discharged from the State Hospital and CSUs who have been in a State Hospital for 90 days or more, are or were recently homeless, lived in an unlicensed boarding home prior to admission, or have had another hospital or CSU admission in the last year.
    b. Mississippi will fund an additional 250 CHOICE housing vouchers in FY 22 and an additional 250 CHOICE housing vouchers in FY 23 and sustain funding for these services.

12. Medication Access. The State will allocate $200,000 annually beginning in FY22 for a medication assistance fund. These funds will be used to provide medication access to people in the community who have a serious mental illness and who are receiving services through a CMHC who could not otherwise access prescribed medication that they need to avoid a serious risk of hospitalization.
    a. The fund will be used to provide medication assistance on a timely basis to prevent discontinuities in treatment. The CMHC will document that it has: (i) assisted the person in initiating the enrollment process for Medicaid, and/or (ii) submitted a request to enroll the person in a prescription assistance program.
    b. Persons will be eligible for medication assistance for a period of 90 days. The 90-day eligibility period may be renewed, for up to one year, at the discretion of the State.

13. Diversion from State Hospitals. During the pre-evaluation screening process, CMHCs will determine if a person meets the criteria for intensive community services — specifically, PACT, ICORT, or ICSS, as applicable — in accordance with DMH Operational Standards and arrange those services if appropriate, to the individual. During the pre-evaluation screening process, CMHCs will consider all persons who are civilly committed in their Region for Crisis Residential Services In lieu of State Hospital placement, except when a chancery court has ordered the person to be committed to a State Hospital.
14. Connecting individuals with serious mental illness to care. On or before October 1, 2021, the United States will provide Mississippi with information concerning the whereabouts of persons included in the United States' Clinical Review of 154 persons conducted for purposes of the June 2019 trial. Mississippi will provide this information to the CMHCs, provide funding for, and require each CMHC to:
    a. make reasonable efforts, including phone calls and letters, to contact the persons and conduct assertive outreach, as appropriate, to engage persons in treatment; and
    b. screen persons for eligibility for the Core Services included in this Report, document the screening in the persons' records, and offer them Core Services which are appropriate and for which they are eligible.
15. Discharge Planning. Discharge planning at the State Hospitals will begin within 24 hours of admission to a State Hospital and will:
    a. Identify the person's strengths, preferences, needs, and desired outcomes;
    b. identify the specific community-based services the person should receive upon discharge;
    c. identify and connect the person to the provider(s) of the necessary supports and services;
    d. refer the person to PACT or ICORT when the person meets the criteria for PACT or ICORT in DMH's Operational Standards;
    e. include, where applicable and appropriate, assistance to the person in securing or re-activating public benefits;
    f. prior to discharging the person from a State Hospital, coordinate between the State Hospital and the community provider so that, upon discharge, the person continues to receive prescribed medications in the community as appropriate for the person's ongoing clinical needs;
    g. identify resources for the person to access in the event of a crisis and educate the person about how to access those services; and
    h. include an anticipated discharge date.
16. Discharge planning for persons who have previously been admitted to a State Hospital within the prior one-year period includes review of the prior discharge plans, the reasons for the readmission, and adjustment of the new discharge plan that accounts for the history of prior hospitalization.
17. Prior to the person's discharge from the State Hospital, staff of the CMHC that will be serving the person upon discharge will meet with the person, either in person or via videoconference, to conduct assertive engagement and enroll the person in appropriate services.

18. Technical Assistance. The State will provide the chancery courts in each county with an annual overview of mental health services provided in their area, including alternatives to civil commitment to State Hospitals.
19. Mississippi will provide technical assistance to providers including competency-based training, consultation, and coaching. The technical assistance shall be provided by persons who have demonstrated substantial experience implementing the Core Services.
20. Data Collection and Review. On a monthly basis, the State will collect, review, and analyze person level and aggregate data capturing:
    a. Admissions to Residential Crisis Services locations, by location broken down by CMHC region and by county, and admissions to State Hospitals from Residential Crisis Services and where Residential Crisis Services were not provided;
    b. Calls to Mobile Crisis Teams, with the number of calls leading to a mobile team visit, the average time from call to visit, the number of calls where the time to visit exceeded limits in the DMH Operational Standard 19.3, E, 1, and disposition of the call and/or Mobile Team visit;
    c. Civil commitments to State Hospitals by CMHC region and by county;
    d. Jail placements pending State Hospital admission by CMHC region and county, including length of placement (Mississippi will collect this data, as to each person, when a State Hospital receives the commitment order for the person);
    e. Individuals who remain hospitalized in State Hospitals for over 180 days:
    f. Persons receiving each Core Service by CMHC region and by county;
    g. Number of units of each Core Service reimbursed through Medicaid by CMHC region and by county.
21. By the end of FY22, Mississippi will begin collecting, reviewing, and analyzing — on a monthly basis — person-level and aggregate data capturing the number of units of each Covered Core Service reimbursed under DMH grants, excluding Purchase of Service grants.
22. On an annual basis, Mississippi will analyze by CMHC the current compliance status of all CMHC Core Service programs with the DMH Operational Standards, and for those Core Services where fidelity is monitored, on the current fidelity score/status.
23. To assure that services are working as intended to address the needs of people with serious mental illness and to achieve compliance with the ADA, the State will design, with the participation of the DOJ and the Monitor, a Clinical Review Process to assess the adequacy of services received by a small sample (*e.g.*, 100-200) of individuals receiving Core Services and/or State Hospital care. Consultation with the DOJ and Monitor will address at least: sampling, evaluation criteria and instrument, scoring, reviewer training and reporting. The agreed process will be used by the state on an annual basis, beginning in FY 22 and until the case is terminated, to assess the adequacy of services and procedures in the system and to provide data to the State to make improvements and to the Court to determine compliance.
24. Beginning at the end of FY22, and until the case is terminated, Mississippi will post on agency websites and provide on an annual basis to the DOJ and Monitor the data described in Paragraphs 19-21, not to include individual identifiable data.
25. Implementation. The State shall develop an Implementation Plan to enable it to comply with this Order by the prescribed deadlines. The Plan shall focus on any services yet to be implemented and on data and reporting requirements. It should identify interim steps the

26. State must take to comply with the Order, timelines for those steps, and the State officials responsible for implementing those steps.


State must take to comply with the Order, timelines for those steps, and the State officials responsible for implementing those steps.

26. The State shall provide the initial Implementation Plan to the Monitor and the DOJ for comment within 120 days of the issuance of this Order and shall submit the final proposed Implementation Plan to the Monitor with 180 days.
27. Termination. This Order shall terminate when the State has attained substantial compliance with each paragraph of this Order and maintained that compliance for one year as determined by this Court. Non-compliance with mere technicalities, or temporary failure to comply during a period of otherwise sustained compliance, shall not constitute failure by the State to maintain substantial compliance. Similarly, temporary compliance during periods of sustained noncompliance shall not constitute substantial compliance. The State may seek and if justified may achieve compliance and termination of the Court's oversight for individual major sections of the Order, *e.g.*, on individual Core Services or Discharge Planning. Paragraphs 19-23 will remain in effect until full compliance and termination are achieved.
28. Monitoring Compliance. The Court will appoint a Monitor to act as an agent of the Court to assess the State's compliance with this Order. The Court will issue a separate Order setting forth the Monitor's duties, compensation, and authority.

**SO ORDERED**, this the 7th day of September, 2021.

                                            s/ Carlton W. Reeves  
                                            UNITED STATES DISTRICT JUDGE

**Exhibit 1: Intensive Community Support Services to be Offered by Region, County**

| Region | Current Status | Proposed Expansion | FY19 State Hospital Acute Psych Admissions | Comments |
|---|---|---|---|---|
| 1 | 1 ICORT; 1 ICSS | ____ | 49 | Existing ICORT serves all counties - Coahoma, Quitman, Tallahatchie, and Tunica. Number of commitments do not require additional intensive community supports. |
| 2 | 1 ICORT; 1 ICSS | 1 ICORT | 142 | Existing ICORT serves all counties – Tate, Marshall, Panola, Lafayette, Yalobusha, and Calhoun. Number of commitments require an additional ICORT to assist in coverage of counties. |
| 3 | 1 PACT Team; 1 ICSS | 2 ICSSs | 114 | Existing PACT serves Lee county. Number of commitments require 2 additional ICSSs to serve Benton, Union, Pontotoc, Monroe, and Chickasaw. Existing PACT will begin serving Itawamba. |
| 4 | 2 PACT Teams; 3 ICSSs | ____ | 148 | One existing PACT serves DeSoto county and 1 PACT serves Tippah, Alcorn, Prentiss, and Tishomingo. Number of commitments do not require additional intensive community supports. |
| 6 | 1 PACT Team; 1 ICORT; 2 ICSSs | 2 ICSSs | 119 | Existing PACT serves Leflore, Grenada and Holmes. Existing ICORT serves Bolivar and Washington. Number of commitments require 2 additional ICSSs to serve remaining counties – Issaquena, Sharkey, Humphreys, Sunflower, Carroll, Montgomery, and Attala. |
| 7 | 1 ICORT; 2 ICSSs | 1 ICORT | 147 | Existing ICORT serves all counties – Webster, Clay, Choctaw, Oktibbeha, Lowndes, Noxubee, and Winston. Number of commitments require an additional ICORT to assist in coverage of counties. |
| 8 | 1 PACT Team; 1 ICSS | 1 ICORT | 145 | Existing PACT serves Rankin and Madison. Number of commitments require an ICORT to serve Copiah, Lincoln and Simpson. |
| 9 | 1 PACT Team; 1 ICSS | 1 ICORT and 2 ICSSs | 291 | Only includes Hinds county. Number of commitments require an ICORT and 2 additional ICSSs. |
| 10 | 1 PACT Team; 1.5 ICSS | 2 ICORTs and 2 ICSSs | 289 | Existing PACT serves Lauderdale. Number of commitments requires 2 additional ICORTs to serve Leake, Scott, Newton, Smith and Clarke and 2 ICSSs for Neshoba, Jasper, and Kemper. |
| 11 | 1 ICORT; 1 ICSS | 1 ICORT and 4 ICSSs | 250 | Existing ICORT serves all counties (not operational yet) – Pike, Amite, Lawrence, Walthall, Franklin, Adam, Wilkinson, Claiborne, and Jefferson. Number of commitments require an additional ICORT and 4 additional ICSSs to assist in coverage of counties. |
| 12 | 1 PACT Team; 1 ICSS | 3 ICORTs | 273 | Existing PACT serves Forrest and Perry counties. Number of commitments require 3 additional ICORTs to cover Lamar, Pearl River, Marion, Jefferson Davis, Covington, and Jones. Existing ICSS staff will cover Greene and Wayne. Region 12 operates an additional PACT in Region 13 that serves Hancock and Harrison. |
| 13 | 1 PACT Team; 5 ICSSs | ____ | 141 | Existing PACT operated by Region 12 serves Hancock and Harrison. An ICSS will serve Stone. In the previous year, Region 13 added 4 ICSSs. |
| 14 | 1 ICORT; 1 ICSS | ____ | 66 | Existing ICORT serves George and Jackson counties. Number of commitments do not require additional intensive community supports. |
| 15 | 1 PACT; 2 ICSS | ____ | 34 | Existing PACT serves Warren and Yazoo counties. Number of commitments do not require additional intensive community supports. |

**Types of Intensive Community Supports**

Program of Assertive Community Treatment Team (PACT) – Caseload is 80
Intensive Community Outreach and Recovery Team (ICORT) – Caseload is 45
Intensive Case Management (ICSS) – Caseload will be 20 as of July 1, 2020

8