**URGENT AND NECESSITOUS
EXPEDITED CONSIDERATION REQUESTED**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
### NORTHERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **PLAINTIFF** |
| V. | CIVIL ACTION NO.: 3:16-CV-00622-CWR-FKB |
| **THE STATE OF MISSISSIPPI** | **DEFENDANT** |

**MEMORANDUM IN SUPPORT OF THE STATE OF MISSISSIPPI'S MOTION FOR PARTIAL STAY OF THE REMEDIAL ORDER PENDING OUTCOME OF APPEAL**

### Introduction

This Court should partially stay its Remedial Order (ECF 278) pending resolution of Mississippi's upcoming appeal from that Order. As Mississippi undertakes careful and thorough efforts to perform its obligations under the Order, it is appropriate to partially stay a few parts of the Order, identified below, that require immediate action, substantial new funding, and a fundamental alteration of Mississippi's mental health system.

Each stay factor supports this partial relief. First, Mississippi is likely to prevail on the merits on both liability and remedy. As to liability, Mississippi is not liable for (among other reasons) the reasons summarized on pages 89-90 of Mississippi's Proposed Findings of Fact and Conclusions of Law (ECF 232). At the least, Mississippi's arguments make a substantial case on the merits, particularly because there is little precedential authority regarding the application of Title II of the Americans with Disabilities Act (ADA) to a state-wide mental health system or the standard a state-wide mental health system must meet to comply with the ADA. Remedy is not an issue if Mississippi prevails on the merits of liability on appeal. Regardless, if a state-wide mental health system is found to be in violation of the ADA, there is little to no precedential

authority regarding what constitutes an appropriate remedy – *i.e.*, the statutory minimum for compliance.

Second, absent a partial stay, Mississippi will suffer irreparable injuries from undue interference with its mental health system and a fundamental alteration of that system both in costs and structure.

Third, a partial stay will not substantially injure the United States because, since the close of trial, Mississippi has expanded community-based services and now complies, or at least substantially complies, with the ADA. Mississippi plans to timely file a notice of appeal seeking appropriate appellate relief, and to ask the Fifth Circuit to expedite the appeal.

Fourth, a partial stay of the Remedial Order benefits the public interest by allowing the thorough review of the case on appeal and because, as a matter of law, Mississippi's interest and the public's interest overlap where, as here, the State is the appealing party.

**I.     Mississippi's Request For A Partial Stay Of The Remedial Order.**

The Court made its liability determination in September 2019, finding that Mississippi's mental health system violates the ADA (ECF 234). *United States v. Mississippi*, 400 F.Supp.3d 546 (S.D. Miss. 2019). On September 7, 2021, the Court entered its Remedial Order (ECF 278). Mississippi seeks a stay of only the following paragraphs of the Remedial Order during the pendency of Mississippi's forthcoming appeal: ¶ 10.b. (requiring Mississippi by the end of FY22 to implement a plan to provide Peer Support Services at satellite CMHC offices), ¶ 11.b. (requiring Mississippi to fund an additional 250 CHOICE housing vouchers in FY22 and an additional 250 CHOICE housing vouchers in FY23 and to sustain funding for those services), ¶ 23. (requiring Mississippi to develop and implement a Clinical Review Process beginning now), and ¶¶ 25. and 26. (requiring Mississippi to develop an Implementation Plan within 120 days of the issuance of the Remedial Order).

## II.     Legal Standard.

Under Rule 62(c) of the Federal Rules of Civil Procedure, a district court may, in its discretion, stay an order during the pendency of an appeal. Although a stay is not a matter of right, the court may exercise its discretion and grant a stay when "the circumstances justify an exercise of that discretion." *Ind. State Police Pension Trust v. Chrysler, LLC*, 556 U.S. 960, 961 (2009). "A stay pending appeal 'simply suspends judicial alteration of the status quo.'" *Veasey v. Perry*, 769 F.3d 890, 892 (5th Cir. 2014) (citing *Nken v. Holder*, 556 U.S. 418, 429 (2009)). Under the traditional standard, to determine whether to grant a stay pending review on appeal, a court must consider the following factors: (1) whether the stay applicant made a strong showing that it is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies. *Chafin v. Chafin*, 568 U.S. 165 (2013) (citing *Nken*, 556 U.S. at 427). The Fifth Circuit has not applied these factors in a rigid, mechanical fashion; rather, the court adopted a "balance of equities approach in determining whether to grant a stay pending appeal." *Ruiz v. Estelle*, 650 F.2d 555, 565 (5th Cir. 1981); *see also Nat'l Treasury Employees Union v. Von Raab*, 808 F.2d 1057, 1059 (5th Cir. 1987). Specifically, "the movant need only present a substantial case on the merits when a serious legal question is involved and show that the balance of the equities weighs heavily in favor of granting the stay." *Id.* The Fifth Circuit's approach results from a common-sense interpretation of Rules 62(c) and Federal Rule of Appellate Procedure Rule 8. As the *Ruiz* Court reasoned:

> If a movant were required in every case to establish that the appeal would probably be successful, the Rule would not require as it does a prior presentation to the district judge whose order is being appealed. That judge has already decided the merits of the legal issue. The stay procedure of Fed. R. Civ. P. 62(c) and Fed. R. App. P. 8(a) affords interim relief where relative harm and the uncertainty of final disposition justify it.

3

650 F.2d at 565; *see also Wildmon v. Berwick Universal Pictures*, 983 F.2d 21, 23-24 (5th Cir. 1992).

Because Mississippi satisfies the traditional standard for a stay as well as the *Ruiz* standard, this Court should grant Mississippi's request for a partial stay of the Remedial Order for the duration of Mississippi's appeal.

**III.   Discussion.**

    **A.   Mississippi satisfies the traditional standard for a stay.**

Mississippi has made a strong showing that success on the merits is likely because it is not liable for (among other reasons) the reasons summarized on pages 89-90 of Mississippi's Proposed Findings of Fact and Conclusions of Law (ECF 232). Those reasons include, but are not limited to, that Mississippi did not engage in discrimination (ECF 232, pp. 65-66), that serious risk of institutionalization is not applicable here (ECF 232, pp. 65-70), that the United States did not satisfy its burden of proof (ECF 232, pp. 70-71), that the United States' 154-person sample is flawed and entitled to no weight (ECF 232, pp. 7-14 and 71-72), that the United States has not shown any unnecessary institutionalization (ECF 232, pp. 15-16), that *Olmstead v. Zimring*, 527 U.S. 581 (1999), recognizes the vital role of state hospitals in the continuum of care (ECF 232, pp. 27-32 and 72), that deinstitutionalization must be undertaken responsibly and Mississippi is doing so (ECF 232, pp. 32-33 and 73-74), that Mississippi is in compliance with the ADA because it has a reasonable continuum of mental health service that it has expanded at a reasonable pace (ECF 232, pp. 22-27, 33-48, 57-63 and 42-48), that Mississippi established a fundamental-alteration defense based on the trial record (ECF 232, pp. 48-57 and 79-86), that the relief sought by the United States violates principles of federalism (ECF 232, pp. 14-15 and 86-88), and that federal deficiencies inhibit Mississippi's ability to deliver services (ECF 232, pp. 16-22 and 88-89).

### B. Mississippi also satisfies the *Ruiz* standard for a stay.

### 1. Mississippi has a substantial case on the merits.

In addition, a movant 'need only present a substantial case on the merits when a serious legal question is involved and show that the balance of equities weighs heavily in favor of granting the stay.'" *Campaign for Southern Equality v. Bryant*, 773 F.3d 55, 57 (5th Cir. 2014), *quoting Ruiz*, 650 F.2d at 565. This standard applies here because, as shown below, a serious legal question is involved and the balance of equities weighs heavily in favor of granting the stay.

In *Ruiz*, the Fifth Circuit found that the state made a substantial case on the merits because of the lack of precedential authority as to whether the Eighth Amendment of the United States Constitution required the single celling of inmates. *Ruiz*, 650 F.3d at 567. As in *Ruiz*, Mississippi satisfies its burden of showing a substantial case on the merits regarding both liability and remedy. As to liability, there is little to no precedential authority regarding the application of the ADA to a state-wide mental health system or the standard a state-wide mental health system must meet to comply with the ADA. In its liability opinion, the Court formulated the following standard for ADA compliance: "That discrimination will end only when every Mississippian with SMI has access to a minimum bundle of community-based services that can stop the cycle of hospitalization." *United States*, 400 F.Supp.3d at 579. However, the opinion does not cite any precedential authority in support of that standard.

The Court did cite the three-prong test from *Olmstead* in its opinion, *Id*. at 575, but this case does not fit *Olmstead*. *Olmstead* involved two plaintiffs who were institutionalized in a Georgia state hospital. *Olmstead v. Zimring*, 527 U.S. 581, 593 (1999). The treatment teams of both plaintiffs concluded that their needs could be appropriately met in a community-based program but they nonetheless remain institutionalized. *Id*. In its liability opinion in this case, the Court cites no instances where, at the time of trial, the treatment team of any person

5

institutionalized in a Mississippi State Hospital concluded that the person's needs could be appropriately met in a community-based program, but the person nonetheless remained institutionalized. *Olmstead's* three-prong test was designed for such a case, not for a claim that a state's mental health system violates the ADA on a state-wide basis. In the long history of this case, neither party has identified a reported case regarding such a state-wide claim, nor does the Court's liability opinion cite one.

As to remedy, in its post-trial proposed Findings of Fact and Conclusions of Law (ECF 233) and its proposed Remedial Order (ECF 265), the United States, the plaintiff in this case, cited no authority regarding an appropriate remedy. Likewise, this Court's Remedial Plan cites no authority in support of the seven-page remedy it ordered. For example, no statutory mandate has been cited under the ADA which requires that Peer Support Services be provided at CMHC satellite offices or that a state must have a Clinical Review Process or an Implementation Plan.[1] There is little to no precedential authority regarding what constitutes an appropriate remedy when a state's mental health system is found to violate the ADA on a state-wide basis.

The lack of precedential authority regarding a claim that a state's mental health system violates the ADA on a state-wide basis shows that Mississippi meets its *Ruiz* burden of establishing a substantial case on the merits regarding both liability and remedy. This factor weighs in favor of partially staying the Remedial Order pending the outcome of the appeal.

### 2. This case involves serious legal questions that could have a broad impact on federal/state relations.

Per the Fifth Circuit's balancing test, once the movant shows a substantial case on the merits, then the movant must "only show (1) that the matter involves a serious legal question and

---

[1] "[W]e know of no constitutional mandate for correctional units to be situated within 50 miles of a major metropolitan area in order to ensure adequate staffing. Therefore, we conclude that the State has made a substantial case on the merits with likelihood of success on appeal in relation to the location requirements for new construction." *Ruiz*, 650 F.2d at 574.

6

(2) that the balance of equities weighs heavily in favor of granting a stay." *Fed. Deposit Ins. Corp. v. Blecher*, No. CV 19-12561, 2020 WL 242781, at *6 (E.D. La. Jan. 16, 2020). A serious legal question is one that could have a broad impact on federal and state relations, or an otherwise far-reaching effect of public concern. *Wildmon v. Berwick Universal Pictures*, 983 F.2d 21, 23-24 (5th Cir. 1992) (citing *Baylor*, 711 F.2d at 40). For example, in *Ruiz*, there was a "serious legal question whether single-celling of inmates [at a prison was] constitutionally required under" the Eighth Amendment. *Ruiz*, 650 F.2d at 567. Similarly, in *Baylor*, the Fifth Circuit determined that "the serious legal question involved was whether Medicare or Medicaid payments constitute[d] federal financial assistance within the meaning of the Rehabilitation Act because 'that could have a broad impact on federal/state relations' …" *Wildmon*, 983 F.2d at 23-24 (quoting *Baylor*, 711 F.2d at 40). In *Ruiz* and *Baylor*, the Fifth Circuit found that serious legal questions were unanswered where Constitutional or statutory questions placed federal courts in a position to invade the inner workings of state government, such as a state's mental health system.

In this case, as shown above, there are serious legal questions regarding the application of the ADA to a state-wide mental health system, the standard a state-wide mental health system must meet to comply with the ADA, and , if a state-wide mental health system is found to be in violation of the ADA, what constitutes an appropriate remedy. The appellate court's answers to these and related questions will have a "broad impact on federal and state relations" and a far-reaching effect of public concern. As noted in *Olmstead*, there are "federalism costs inherent in referring state decisions regarding the administration of treatment programs and the allocation of resources to the reviewing authority of the federal courts. It is of central importance, then, that courts apply today's decision with great deference to the medical decisions of the responsible, treating physicians and, as the Court makes clear, with appropriate deference to the program funding decisions of state

7

policymakers." *Olmstead*, 527 U.S. at 610 (Kennedy, J., concurring). This factor weighs in favor of partially staying the Remedial Order pending the outcome of the appeal.

### 3. The balance of equities heavily favors a partial stay.

In determining whether to grant a stay, a court must "balance the equities" to explore the relative harms to applicant and respondent, as well as the interest of the public. *Trump v. Int'l Refugee Assistance Project*, 137 S. Ct. 2080, 2087 (2017) (citing *Barnes v. E-Systems, Inc. Grp. Hosp. Med. & Surgical Ins. Plan*, 501 U.S. 1301, 1305 (1991) (Scalia, J., in chambers). If the balance tilts heavily in the movant's favor then there is less need for a substantial showing of likelihood of success on the merits. *Ruiz*, 650 F.2d at 565-66. Each equitable factor favors granting Mississippi's request to partially stay the Remedial Order.

#### a. Factor One: Mississippi will suffer irreparable injury absent a partial stay of the Remedial Order.

The equitable balance weighs heavily in Mississippi's favor because Mississippi will suffer irreparable injury absent a stay of the Remedial Order. As shown, *supra*, Section I., Mississippi seeks a stay of the paragraphs 10.b, 11.b., 23., 25., and 26. of the Remedial Order.

Paragraph 10.b. of the Remedial Order requires Mississippi by the end of FY22 to implement a plan to provide Peer Support Services at satellite CMHC offices. Mississippi is currently in FY22, so this requirement applies immediately. If a stay of ¶ 10.b. is not granted, then Mississippi will be forced to restructure its mental health system to develop and implement a plan to provide Peer Support Services at satellite CMHC offices. Funding for Peer Support Services at satellite CMHC offices has not been appropriated by the Mississippi Legislature.

Paragraph 11.b. of the Remedial Order requires Mississippi to fund an additional 250 CHOICE housing vouchers in FY22 and an additional 250 CHOICE housing vouchers in FY23 and to sustain funding for those services. Mississippi is currently in FY22, so this requirement applies immediately. An additional 250 CHOICE housing vouchers will cost $2,000,000. Thus,

Mississippi will incur an additional $2,000,000 in costs for CHOICE housing vouchers in FY22 and FY23 and $4,000,000 more each Fiscal Year thereafter into perpetuity.[2] This level of funding for CHOICE housing vouchers has not been appropriated by the Mississippi Legislature.

Paragraph 23. of the Remedial Order requires Mississippi to develop and implement a Clinical Review Process beginning in FY22 "to assess the adequacy of services received by a small sample (e.g., 100-200) of individuals receiving Core Services and/or State Hospital care." Mississippi is currently in FY22, so this requirement applies immediately. If a stay of ¶ 23. is not granted, then Mississippi will be forced to restructure its mental health system to design and implement a Clinical Review Process that does not presently exist and for which no standards have been established in the Remedial Order. Mississippi will incur additional costs in doing so. Funding has not been appropriated for a Clinical Review Process.

Paragraphs 25. and 26. of the Remedial Order require Mississippi to develop and submit an Implementation Plan to the Monitor and DOJ on or before January 5, 2022, and to submit the final proposed Implementation Plan to the Monitor on or before March 6, 2022. This requirement applies immediately. If a stay of ¶¶ 25. and 26. is not granted, then Mississippi will be forced to restructure its mental health system to design and implement an Implementation Plan. Mississippi will incur additional costs in doing so. Funding has not been appropriated for that purpose.

The Fifth Circuit recognizes such undue interference as a form of irreparable injury. *Ruiz*, 650 F.2d at 560. In *Ruiz*, the federal government, on behalf of Texas prisoners, sued the state of Texas for "cruel and unusual" prison conditions in violation of the Eighth Amendment. *Id*. Following trial, the district court implemented a remedial order to bring the state of Texas into compliance with the Eighth Amendment. *Id.* at 558-59. On appeal, the Fifth Circuit found that the remedial order's restrictions and accompanying deadlines constituted an "undue interreference

---

[2] See ECF 271, Mississippi's Preliminary Response to Report of Special Master, p. 3.

with the operation of the state's prison system." *Id.* at 570. This was, in part, because irreparable injury would result from requiring the state "to go through the effort and expense of furnishing the district court with a plan" as part of its obligations under a remedial order. *Id.* at 573.

*Ruiz* also stated that the "district court failed to realize" that the remedial order required immediate action. *Id.* at 569. If the prison were to wait until the appellate court "handed down its decision on the merits before beginning to ... implement the requirements of [the order]," then the prison "would not be able to meet the deadlines set forth in the order," and the prison "officials would face contempt of court." *Id.* The Fifth Circuit concluded that the prison would face an "administrative nightmare" to "comply with the district court's quotas and deadlines" because it would impose a "burden upon [the prison] in terms of time, expense, and administrative red tape [that was] too great." *Id.* at 571. That reasoning applies here as the Remedial Order requires Mississippi to design and implement three separate plans – *i.e.*, a plan to provide Peer Support Services at CMHC satellite offices (¶ 10.b.), the design of a Clinical Review Process (¶ 23.), and an Implementation Plan (¶¶ 25. and 26.) – beginning now.

These required immediate actions not only demand extensive planning, coordination, and staffing, but they also demand extensive (unappropriated) funding. The Remedial Order effectively takes the appropriation power away from the Mississippi Legislature and places it within a federal court. This raises serious federalism concerns. "When a federal court orders that money be appropriated for one program, the effect is often to take funds away from other important programs." *Horne v. Flores*, 557 U.S. 433, 448 (2009).

The Fifth Circuit has cautioned that irreparable harm results when state officials are required to obtain a "permission slip from the district court" to administer their agencies. *Valentine v. Collier*, 956 F.3d 797, 804 (5th Cir. 2020). Here, Mississippi must effectively obtain a permission slip to design and implement a Clinical Review Process and an Implementation Plan

10

that the Court will use to assess whether Mississippi is in compliance with the ADA – meaning that following a trial, a liability finding, and the entry of the Remedial Order, the standard Mississippi must meet to comply with the Remedial Order has yet to be determined.

Paragraphs 10.b, 11.b., 23., 25., and 26. of the Remedial Order all involve "unfunded mandates" – immediate obligations for which funding has not been appropriated – and Mississippi does not concede that the Court has authority to order the State to appropriate funds. Because Mississippi has adopted a budget for FY22 and the Legislature has adjourned, the requirements to fund these paragraphs of the Remedial Order implicate a reallocation of funds in the Mississippi Department of Mental Health's budget, which constitutes irreparable injury to Mississippi and fundamental alterations of Mississippi's mental health system, structurally and fiscally. Irreparable injury also occurs when a party must go to the effort and expense of furnishing the district court a plan in connection with a remedial order. The Remedial Order requires Mississippi to go to the effort and expense of furnishing the district court with at least three plans. Paragraphs 10.b, 11.b., 23., 25., and 26. of the Remedial Order, in particular, will cause Mississippi irreparable injury absent a stay of those provisions. This factor favors partially staying the Remedial Order pending the outcome of the appeal.

### b. Factor Two: A partial stay of the Remedial Order will not impose irreparable injury on the United States.

The Fifth Circuit in *Ruiz* considered whether granting a stay of a remedial order would substantially harm other parties. In doing so, the Fifth Circuit considered the programs the prison implemented since the trial concluded and reasoned that granting a stay, relative to the programs that the state had already began remedying, "would not substantially harm the class of inmate plaintiffs." *Ruiz*, 650 F.2d at 572. This is because, among other things, the "overcrowded conditions at [the prison] ha[d] already been ameliorated by the temporary housing of numerous inmates in military tents while permanent construction [was] planned and implemented." *Id.* at

573. The Fifth Circuit's decision, in that respect, highlighted that the conditions of an ideal environment for prisoners "properly are weighed by the legislatures and prison administration rather than the court." *Id.* at 569 (citing *Rhodes v. Chapman*, 452 U.S. 337, 349-50 (1981)).

To begin with, this case is not a class action, nor are there any individual plaintiffs. A partial stay of the Remedial Order will not irreparably injure the United States or any Mississippian with SMI because Mississippi has expanded its community-based services since the close of trial, and is in compliance, or at least substantially in compliance, with the ADA.[3] As established by *Ruiz*, Mississippi's expansion of community-based services shows that the partial stay requested by Mississippi will not impose irreparable injury on the United States. In this regard, it bears emphasizing that Mississippi is not seeking a stay of the core services provisions of the Remedial Order (paragraphs 4-11) except for 10.b (Peer Support Services at CMHC satellite offices) and 11.b. (CHOICE housing vouchers). This factor favors partially staying the Remedial Order pending the outcome of the appeal, especially since Mississippi plans to ask the Fifth Circuit to expedite the appeal—which would further alleviate any alleged harms.

### c. Factor Three: A partial stay of the Remedial Order best serves the public's interest.

Where "the state is the appealing party, its interest and harm merge with that of the public." *Veasey v. Abbott*, 850 F.3d 387, 391 (5th Cir. 2017) (citing *Nken*, 556 U.S. at 435). Because Mississippi is the appealing party, its interest and harm merge with that of the public, which should conclude the "public interest" analysis in Mississippi's favor as a matter of law. Nonetheless, Mississippi notes that "the grant of a stay pending appeal is preventive or protective in that it seeks to maintain the status quo pending a final determination on the merits of the suit." *Ruiz*, 650 F.2d at 565. To maintain the status quo in *Ruiz*, the Fifth Circuit considered how the remedial order's

---

[3] See ECF 262, Mississippi's Response to the Court's Order, pp 5-11 and ECF 262-2, Declaration of Wendy Bailey.

requirements affected the prisoners and individuals who maintained and operated the Texas prisons. The remedial order required that no prisoner "be confined in any cell for more than ten days during any thirty-day period." The Fifth Circuit stayed this provision to best serve the public interest since the temporary rotation requirement had "the potential to create a dangerous situation for all inmates involved" because it "would greatly reduce the capacity of staff in each prison unit." *Id.* at 560. The Court emphasized that "the public is best served by not placing on the state the personnel and monetary burdens of implementing the single-celling requirements in time to meet the deadlines imposed in the court order." *Id.* at 569. Ultimately, the court found that the public "was best served by leaving the details of reducing overcrowding in [the prison] to Texas prison officials" and that "it [was] sufficient that the district court ha[d] ordered the overcrowding be eliminated." *Id.* at 572. *Ruiz*'s analysis squarely applies here – "the public is best served by not placing on the state the personnel and monetary burdens" of implementing paragraphs 10.b., 11.b., 23., 25., and 26. of the Remedial Order before a final review on appeal. The balance of equities tilts strongly in favor of partially staying the Remedial Order pending the outcome of the appeal.

**Relief Requested**

Mississippi respectfully requests that this Court enter a partial stay of the Remedial Order (ECF 278) pending the outcome of Mississippi's forthcoming appeal. The Court should stay the following paragraphs of the Remedial Order during the pendency of Mississippi's forthcoming appeal: ¶ 10.b. (requiring Mississippi by the end of FY22 to implement a plan to provide Peer Support Services at satellite CMHC offices), ¶ 11.b. (requiring Mississippi to fund an additional 250 CHOICE housing vouchers in FY22 and an additional 250 CHOICE housing vouchers in FY23 and to sustain funding for those services), ¶ 23. (requiring Mississippi to develop and implement a Clinical Review Process beginning now), and ¶¶ 25. and 26. (requiring Mississippi to develop an Implementation Plan within 120 days of the issuance of the Remedial Order).

13

Dated:  September 27, 2021.

        Respectfully submitted,

        PHELPS DUNBAR LLP

BY:  */s/ James W. Shelson*
        Reuben V. Anderson, MB 1587
        W. Thomas Siler, MB 6791
        James W. Shelson, MB 9693
        Nash E. Gilmore, MB 105554
        4270 I-55 North
        Jackson, Mississippi 39211-6391
        Post Office Box 16114
        Jackson, Mississippi 39236-6114
        Telephone: 601-352-2300
        Email: reuben.anderson@phelps.com
             tommy.siler@phelps.com
             jim.shelson@phelps.com
             nash.gilmore@phelps.com

        Douglas T. Miracle, MB 9648
        Assistant Attorney General
        General Civil Division
        Walter Sillers Building
        550 High Street
        Jackson, MS 39201
        Telephone:  601-359-5654
        Email:  doug.miracle@ago.ms.gov

        Mary Jo Woods, MB 10468
        Special Assistant Attorney General
        Mississippi Attorney General's Office
        Walter Sillers Building
        550 High Street
        Jackson, MS 39201
        Telephone:  601-359-3020
        Email:  Mary.Woods@ago.ms.gov

        Attorneys for the State of Mississippi

**CERTIFICATE OF SERVICE**

      I certify that on September 27, 2021, I electronically filed this document with the Clerk of the Court using the ECF system, which sent notification of such filing to all ECF counsel of record in this action.

                                           */s/ James W. Shelson*
                                           JAMES W. SHELSON